**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ALISON FRIEND,

      Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

Case No. 26-cv-05581

Judge Charles P. Kocoras

Magistrate Judge Beth W. Jantz

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION**

This Court should reject Defendant No. 22 aomiss.com's ("Defendant") Response [49] in Opposition to the Preliminary Injunction ("PI") [50] ("Defendant's Opposition"). On June 10, 2026, this Court entered a preliminary injunction against the Defendant. [48]. Defendant now asks the Court to undo it, pressing three objections—service, joinder, and the scope of the asset restraint. The record refutes each argument, and none affect the merits of Plaintiff's copyright claim.

Pursuant to the Court's expedited-discovery order [18], PayPal produced the account records for Defendant's e-commerce store, and those records contradict, point for point, the Xinyu Zou declaration (the "Zou Declaration") Defendant filed in support of its Opposition. Mr. Zou swears that Defendant's aomiss.com storefront is operated by a single household-goods store (长沙市雨花区意泰生活用品馆) in Changsha city ([50] at ¶¶3, 5, 6), that it made exactly one United States sale of the accused product for $38.48 ([50] at ¶30), and that the physical address displayed on its website was available for service all along. See [50]. PayPal's records tell a different story. The account is held in the name of a different entity, in a different city—Shenzhen Jijin Technology Co., Ltd. (深圳市极尽科技有限公司)—carries a restrained balance of $17,625.67,

is tied to a United States bank account at JPMorgan Chase, and lists not the Changsha address aomiss.com now invokes, but at least four other addresses spread across two districts of Shenzhen, in a different province hundreds of miles away. *See* **Exhibit 1** (PayPal Production from Subpoena). A defendant whose own financial records expose this many inconsistencies is in no position to dissolve an injunction on the strength of the very declaration those records contradict.

Service was proper because Defendant's address was not "known" within the meaning of Article 1 of the Hague Service Convention: the address on its website is one that the site itself disclaims as "not a returning address," it cannot be located on Baidu or Amap, the leading Chinese-language mapping services, and it is contradicted by the multiple, conflicting addresses in Defendant's PayPal records. Joinder is proper on the face of the Complaint, and, in any event, the remedy for any misjoinder is severance, not the dismissal Defendant seeks. *See* Fed. R. Civ. P. 21. And the injunction satisfies every governing factor: Defendant's mid-litigation delisting and its promise not to resume does not erase Plaintiff's copyright claim and does not cure the irreparable harm Plaintiff has suffered. Defendant's unsupported, self-contradicted declaration comes nowhere near carrying its burden to loosen the asset restraint, which requires it to produce transaction-level documentary proof showing that the universe of its infringing activity was less than what is currently frozen. For these reasons, the Court should reject Defendant's Opposition.

## ARGUMENT

### I.     Email Service on the Defendant Was Proper Because Its Address Was Not Known.

Defendant's lead argument reads *Kangol* for more than it holds. *Kangol* held that the Hague Service Convention "prohibits email service in China" but only where "the Convention applies," and the Seventh Circuit was emphatic that "the district court must decide whether the Convention applies at all." *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, No. 25-2205, 2026 WL

1502198, at *1, *6 (7th Cir. May 29, 2026). The Convention "shall not apply where the address of the person to be served with the document is not known." *Id.* at *4 (quoting Hague Service Convention art. 1, 20 U.S.T. at 362). Far from resolving the question in Defendant's favor, *Kangol* reversed and remanded precisely because the district court had never determined whether the plaintiff's diligence rendered the defendant's address unknown. *Id.* at *7.

A plaintiff shows an address is "not known" by making "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address." *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A,"* 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021); accord *Kangol*, 2026 WL 1502198, at *4. The test is conjunctive—ascertain *and* verify—and "bare assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props.*, 549 F. Supp. 3d at 796. A party invoking the Convention must come forward with more than a self-serving citation to its own storefront. *See Roadget Bus. Pte. Ltd. v. Individuals*, No. 23-cv-17036, 2024 WL 1858592, at *5 (N.D. Ill. Apr. 29, 2024) (storefront screenshots did not rebut showing that the address was unknown). Here, Defendant's address was not known, and the Convention never applied. At the time of filing, the only information available was Defendant's own website, which named an unregistered entity and listed the Changsha address—an address the site itself disclaimed as "not a returning address." [50] at ¶ 6; [50-1]; Jiang Decl. ¶¶ 3–4. An address that the seller itself disclaims for return mail is not a verified, serviceable location.

Additionally, the Defendant's later-subpoenaed payment records eventually surfaced a registered Shenzhen domicile, but that discovery does not retroactively make the Changsha address "known"; if anything, it confirms the Defendant displayed an unregistered operator name in place of its true, registered identity. Plaintiff did the diligence; Defendant did not. Plaintiff ran

3

Defendant's address on Baidu Maps (百度地图) and Amap (高德地图)—the leading Chinese-language mapping services, used precisely because "Google's search products do not consistently work in China." *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* 347 F.R.D. 316, 327 (N.D. Ill. 2024). *Peanuts Worldwide* is this case's mirror image: there, the defendant produced Baidu screenshots showing a result at the listed address, which the court found "sufficient…to establish that Defendant has at least one 'known' address." 347 F.R.D. at 328. Here, the same tool that the *Peanuts* court found sufficient to establish a "known" address establishes the opposite: Baidu and Amap return only unrelated businesses at the address, never the Defendant's claimed store, confirming that the Defendant's address was not known.

The maps did not return the Defendant's claimed store (意泰生活用品馆) at the address. Instead, the base address (石燕湖 59-7 号) resolved only to unrelated businesses bearing different unit suffixes—on Baidu, a pest-control shop ("灭绝师泰") at suffix -D401; on Amap, a design gallery at suffix -N0209, an SF Express depot, and a residential building—none of which is the Defendant's claimed household-goods store. The same base address is shared by numerous unrelated businesses under rotating unit suffixes, consistent with a shared cluster-registration address rather than a single serviceable storefront, and the location (石燕湖 / Shiyanhu) is a scenic lake and tourist area. The same address is even published by other, unrelated storefronts—lacewave.com and jenqor.com—carrying the identical "not a returning address" disclaimer, confirming that No. 59-7 is a shared address rather than the Defendant's serviceable location. Jiang Decl. ¶¶ 9–11; **Exhibit 2** (Table Showing Investigation into Defendant's Addresses).

Defendant's PayPal records and the PRC corporate registry confirm there was no address to serve in the first place. PayPal's production lists the storefront's account under a different entity

4

than the one Mr. Zou swears to, and associates it with at least four addresses across the Baoan and Longgang Districts of Shenzhen—not the Changsha address aomiss.com now says made Hague service mandatory. *See* Exhibit 1. Additionally, the entity aomiss.com names as its operator—长沙市雨花区意泰生活用品馆 ("Changsha Yuhua District Yitai Household Products Store")—does not exist in China's official corporate registry. *See* Jiang Decl. ¶¶ 5–6. The *only* registered entity tied to the storefront is the one PayPal disclosed—Shenzhen Jijin Technology Co., Ltd. (深圳市极尽科技有限公司)—whose sole shareholder and legal representative is Mr. Zou himself, the very declarant who swears the business is a single unregistered Changsha shop. Jiang Decl. ¶¶ 7–8. Nor is the Changsha address the Defendant's only undisclosed identity: its Contact Us page lists a Hong Kong operator, "Mgoat Technology Limited," at a Mong Kok address it likewise disclaims as "not a returning address"—an address that is not even Mgoat's registered office on the Hong Kong company register. Jiang Decl. ¶¶ 12–13. A defendant that cannot identify, in a sworn declaration, which of its (at least) three corporate names and five addresses is its true, serviceable location has not shown that *any* address was "known"; it has shown the opposite.

Where Plaintiff's address investigation could not verify any address belonging to the Defendant, and Defendant's own records point in five directions at once, Defendant's address was not known, and email service under Rule 4(f)(3) is proper. *See Strabala v. Zhang,* 318 F.R.D. 81, 115 & n.36 (N.D. Ill. 2016). Defendant bears the consequences of that contradiction, not Plaintiff. Plaintiff has carried its burden on a Rule 12(b)(5) challenge by documenting a multi-source investigation consisting of the website's own disclaimer, Baidu and Amap verification, and the Defendant's PayPal records. Defendant answers with nothing but its website address, which it disclaimed as not a returning address on its own page, and is contradicted by its own PayPal records.

Even if the Court were to conclude that one of these addresses was "known," the relief Defendant requests—dismissal and dissolution of the injunction—does not follow. The settled course for a curable service defect is to permit the plaintiff to perfect service, not to dismiss. *See Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996); *United States v. Park,* 389 F. Supp. 3d 561, 567 (N.D. Ill. 2019). Plaintiff stands ready to perfect service through the PRC Central Authority should the Court deem it necessary, and the injunction should remain in place while it does. Vacating an injunction entered on the merits, on the basis of a curable service question, would hand Defendant a windfall the law does not support. Accordingly, the Court should reject Defendant's Opposition.

## II.     Joinder is Proper; To the Extent the Court Finds Joinder Lacking, the Proper Remedy Is Severance or Targeted Discovery, Not Dismissal.

Defendant's joinder challenge is moot because Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action" and authorizes courts to "drop a party" rather than dismiss claims entirely. *See* Fed. R. Civ. P. 21; *see also Dorsey v. Varga,* 55 F.4th 1094 (7th Cir. 2022); *UWM Stud. Ass'n v. Lovell,* 888 F.3d 854, 864 (7th Cir. 2018). Here, Defendant's request to dismiss this case on misjoinder grounds is foreclosed by the Rule's plain text.

Joinder under Fed. R. Civ. P. 20 is a procedural "device centrally concerned with the economies of aggregating small claims" meant to "enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). It has no effect on substantive rights, *McGilvray v. Powell,* 186 F.2d 909, 911 (7th Cir. 1951), and must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966) ("the impulse [under the Rules] is toward entertaining the broadest possible scope of

6

action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged."); *Bose Corp. v. P'ships et al.*, 334 F.R.D. 511, 512–13 (N.D. Ill. 2020).

Under Rule 20(a)(2), multiple defendants may be joined in a single action if: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there is at least one question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2); *see Bose*, 334 F.R.D. at 516 (interpreting "occurrence" broadly as "something that simply happens or appears," and "is not necessarily the product of joint or coordinated action"); *see also Estée Lauder Cosmetics Ltd. v. P'ships*, 334 F.R.D. 182, 190 n.6 (N.D. Ill. 2020) ("…coordination between all defendants is not a necessary element of joinder…").

Here, Defendant's conduct, like the other named defendants, occurred contemporaneously online and involved the unauthorized reproduction and display of Plaintiff's copyrighted works, and derivatives thereof. *See* [1] at ¶ 7; [15]. This is not a case where multiple sellers happen to infringe a grab-bag of different artists; it is a cluster of sellers all gravitating toward the same small portfolio of copyrighted works owned by Plaintiff. It is a single, bounded "swarm" of online sellers trafficking under the cloak of anonymity in the same copyrighted works, copied wholesale, and deployed across the same or similar categories of consumer goods in the online e-commerce space. That repetition – in both the choice of Plaintiff's artwork and the manner in which they are used without authorization to sell pirated products online – is precisely the type of "shared, overlapping facts" that transforms concurrent infringement into the same occurrence or series of infringing occurrences that inflicts a significant mass harm to Plaintiff. *See Bose*, 334 F.R.D. at 516; *see United States v. Mississippi*, 380 U.S. 128, 142 (1965) (finding joinder proper even though defendants were independent actors and did not directly interact with each other because their actions were part of the same series of transactions or occurrences).

Each defendant's conduct also presents the same core legal and factual questions; whether the use infringes Plaintiff's works, whether it was willful, and what remedies apply under 17 U.S.C. §§ 502, 504, and 505, which is more than Rule 20(a) requires. *See* Fed. R. Civ. P. 20(a); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). These common legal issues, combined with the shared facts surrounding each defendant's concurrent infringement, support joinder in this case. Defendant, like the other named defendants, is "taking advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's copyrights] with impunity." *Bose Corp.*, 334 F.R.D. at 516); *see also* [1] at ¶ 7 ("Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation."); *Aidong Zou v. the Entities et al.*, No. 23 C 16600, Dkt. 60 (N.D. Ill. Mar. 8, 2024) (Kendall, J.) (noting that "there is a clear logical relationship between Defendants' actions, as each Defendant copied [Plaintiff's] work, manufactured counterfeit versions, and set up online stores to sell the counterfeits under a cloak of anonymity."); *Milwaukee Elec. Tool Corp. v. the Individuals et al.*, No. 24 C 12487, Dkt. 156 (N.D. Ill. May 28, 2025) (upholding joinder over 80 different defendants).

Notably, courts have also declined to dismiss for misjoinder precisely because dismissal would dissolve an existing injunction and free the defendant to dissipate restrained funds. *See Roadget Bus. Pte. Ltd. v. P'ships*, 735 F. Supp. 3d 981, 987–88 (N.D. Ill. 2024) (severing rather than dismissing, and preserving the asset freeze, to avoid "gratuitous harm"). Because the PI is already "in place," dismissing Defendant would improperly "dissolve" the PI and "inflict gratuitous harm" on Plaintiff. *Laika, LLC v. P'ships*, No. 25 C 10829, 2026 WL 1353809, at *3 (N.D. Ill. May 15, 2026) (citing *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)). Defendant, on the other hand, has identified no prejudice from joinder and no inefficiency from

8

collective adjudication. At most, the proper remedy is severance to a new docket with prior filings preserved, not the wholesale dismissal Defendant demands.

And "[t]o the extent Defendant[] can point to prejudice of joinder at a later time in either discovery or at trial, or the facts elicited through discovery confirm that joinder is inappropriate, the Court [may] revisit this decision." *Greg Alexander v. the P'ships et al.,* No. 25-cv-07026, Dkt. 63 (N.D. Ill. Mar. 25, 2026) (Alonso, J.). Thus, if the Court finds joinder lacking, it should permit Plaintiff to take targeted discovery into Defendant's ties with the rest of the defendants in this case. *See Anderson Design Group,* No. 1:25-cv-11640, at Dkt. 55 (allowing limited discovery as to the relationships among the moving defendants); *Bicycle Peddler, LLC v. Does 1-12*, 295 F.R.D. 274, 277 (N.D. Ill. 2013) (a misjoinder finding is "premature" before identity discovery).

Because Rule 20(a)'s requirements are satisfied, and because Rule 21 makes misjoinder no ground for dismissal in any event, the Court should reject Defendant's joinder challenge. Should Defendant persuade the Court otherwise, the Court should sever Defendant to a new docket with prior filings and the existing injunction intact, or permit targeted discovery into Defendant's ties to the swarm, rather than dismiss.

### III.    The Preliminary Injunction Should Stand.

#### A.  Plaintiff's Likelihood of Success Is Unrebutted.

To prevail, Plaintiff must show ownership of a valid copyright and copying of original constituent elements, *JCW Invs., Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007), and the threshold at this stage is "low," *Aidong Zou v. Entities*, No. 23 C 16600, 2024 WL 1013976, at *3 (N.D. Ill. Mar. 8, 2024). Plaintiff owns thirteen registered copyrights in the Alison Friend Works. [1] ¶ 5; [1-1]; Vogt Decl. ¶ 2. Defendant listed and sold infringing products bearing Plaintiff's

9

work (*see* **Exhibit 3**; Vogt Decl. ¶ 3), and nowhere disputes that the work is Plaintiff's or that its listing copied it.

### B. Defendant's Mid-Litigation Delisting Does Not Defeat Irreparable Harm.

Courts in this District consistently recognize that irreparable harm is the natural consequence of copyright infringement. *See Antsy Labs, LLC v. Individuals, et al.,* 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022) (adequate showing of irreparable harm where plaintiffs showed "potential harm to goodwill, reputation, brand confidence, [and] potential lost market share"); *Aidong Zou,* No. 23 C 16600, 2024 WL 1013976, at *3-4 (refusing to vacate a preliminary injunction in part because Plaintiff expended substantial time and resources developing its copyrighted products); *Redbox Automated Retail, LLC v. Xpress Retail LLC,* 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018); *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862 (7th Cir. 1983) ("…loss of control over [] reputation justifies a finding of irreparable harm even if it could demonstrate no loss of sales or market share."). These principles apply fully here

Defendant argues there is no irreparable harm because it delisted the accused product and swore it will not resume. The law is to the contrary. "[C]essation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing." *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 762 (7th Cir. 2012). A defendant claiming its voluntary stop defeats relief "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013); accord *N. Tex. Equal Access Fund v. Thomas More Soc'y,* 728 F. Supp. 3d 887, 905 (N.D. Ill. 2024). A unilateral delisting and a bare promise—unlike the irrevocable, judicially enforceable covenant under the PI [48]—come nowhere close. And Defendant cannot have it both ways: if it has truly stopped, "an order restraining [it] from [resuming] would impose no hardship." *Antsy*

10

*Labs,* 2022 WL 17176498, at \*5. The harm the injunction guards against—loss of control over the Works, goodwill, and licensing—remains, and constitutes irreparable harm. *See Life Spine, Inc. v. Aegis Spine, Inc.,* 8 F.4th 531, 546 (7th Cir. 2021); *see JH v. P'ships*, No. 24 C 9385, 2025 WL 1262503, at \*3 (N.D. Ill. Apr. 29, 2025). Because Plaintiff's success on the merits is all but certain, only a "minimal" showing of irreparable harm is required, and Plaintiff has made it. *Antsy Labs*, 2022 WL 17176498, at \*3. This Court, therefore, should reject Defendant's Opposition to the PI [48]

        C.   <u>The Balance of Equities and the Public Interest Favor Maintaining the Asset Restraint.</u>

The asset restraint should remain in full. An asset restraint exists to "ensure that permanent equitable relief will be possible"—here, the accounting of Defendant's profits. *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03 C 4844, 2005 WL 3115892, at \*16 (N.D. Ill. Nov. 8, 2005); *see Johnson & Johnson*, 2020 WL 8260381, at \*4–5; *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014) (an accounting is an equitable action "imposing on a defendant the obligation to disclose and return profits"). Such relief "must also be broad enough to be effective," *HD Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012), especially where a defendant shows "a proclivity for unlawful conduct," *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (quoting *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192 (1949)).

To exempt assets from an asset freeze, the burden is on the defendant "to present documentary proof that particular assets are not the proceeds of [infringing] activities," *Monster Energy Co. v. Wensheng,* 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015)—that is, to produce "something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen," *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.,* No. 20-cv-3471, 2020 WL

8260381, at *5 (N.D. Ill. July 20, 2020). And "[w]here there is a commingling of gains, [the defendant] must abide [by] the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp.,* 309 U.S. 390, 406 (1940).

Defendant offers only Mr. Zou's say-so and a single screenshot to assert that there was a single infringing sale. That declaration and evidence are unsupported by transaction-level records and are affirmatively refuted by PayPal, which reported a restrained balance of $17,625.67 USD, a different operating entity, and a United States bank account. [50] at ¶¶ 30–37; Vogt Decl. ¶¶ 4–6. The public record refutes the declaration as well. The registry shows the account belongs to Mr. Zou's own Shenzhen company, whose business scope expressly includes internet sales (Jiang Decl. ¶¶ 7–8), and the storefront itself is priced in U.S. dollars, processes orders on U.S. Pacific Time, transfers customer data to the United States, and runs on a full U.S. payment stack tied to a U.S. Chase account (Jiang Decl. ¶ 14; Vogt Decl. ¶ 5). A declaration contradicted by other [record] evidence cannot carry the defendant's burden. *Antsy Labs,* 2022 WL 17176498, at *4.

The Copyright Act entitles Plaintiff to a full accounting of *all* of Defendant's sales activities – not solely the single accused product discovered by Plaintiff, and is not capped at the $17,625.67 currently frozen. The relevant "universe" more likely spans Defendant's lifetime sales generated through its PayPal account, along with any other marketplace accounts through which it sold infringing products. Absent a complete transaction log with pictures showing all product sales, all sales facilitated through its PayPal account, including the $17,625.67, and proof that Defendant's aomiss.com e-commerce store is in fact Defendant's only sales channel, Defendant cannot carry its burden of proving that the full universe of its infringing activities is less than what is currently frozen.

12

The risk that a foreign online seller like Defendant will move frozen funds beyond reach is acute, and federal circuit courts have consistently upheld the freezing of assets precisely to prevent it. *SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) (noting that the asset restraint was "essential to prevent the dissipation of assets[.]"); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 194–95 (3d Cir. 1990); *Gucci Am., Inc.*, 768 F.3d at 132–33; *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1990), *aff'd*, 970 F.2d 552, 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987–88 (11th Cir. 1995). Releasing the restraint on the strength of a contradictory declaration and untested screenshot evidence without transaction-level proof separating infringing sales from non-infringing sales would invite that very dissipation

When courts have confronted similarly incomplete and contested evidentiary showings on a motion to modify an asset restraint, they have consistently allowed plaintiffs to take targeted discovery before entertaining any modification. *See Antsy Labs.*, 2022 WL 17176498, at *5 (denying modification "without prejudice" and declining to reconsider the freeze until the defendant supplied "more reliable records"); *see also Skechers U.S.A., Inc. II v. The P'ships et al.*, No. 24-cv-07333, Dkt. 144 (N.D. Ill. Dec. 10, 2025) (Valderrama, J.); *see also North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3–4 (S.D.N.Y. Mar. 30, 2006) (keeping asset freeze in place when the parties disputed the sales numbers and profit margins). Thus, should the Court be inclined to entertain any modification, it should first grant Plaintiff leave to take targeted discovery to test Defendant's evidence and uncover the full scope of its infringing sales.

Until then, the existing restraint should remain in place to preserve Plaintiff's ability to obtain an equitable accounting; loosening it now, on an incomplete record, would reward the very gamesmanship the burden-shifting rule is designed to prevent. Accordingly, if the Court is inclined

to entertain any modification, it should reject Defendant's challenge to the asset restraint and grant

Plaintiff leave to engage in fact discovery to test the veracity of Defendant's claims and evidence.

## **CONCLUSION**

The Convention does not reach an address Defendant's own records disclaim, an

investigation cannot find, and its bank records contradict; joinder is proper and, at worst, calls for

severance or discovery that leaves the injunction intact; and Defendant's delisting and unsupported

declaration neither erase irreparable harm nor carry its burden to loosen the freeze. For these

reasons, Plaintiff respectfully requests that the Court reject Defendant's Opposition and maintain

the PI [48] in full. To the extent the Court chooses to entertain Defendant's joinder and asset

restraining challenges, it should first permit Plaintiff to take targeted discovery into Defendant's

relationship with the defendants and into the full universe of its infringing activity.

DATED: July 1, 2026 Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on July 1, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt