Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OUYEINC LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 3490 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| | ) | |
| ALUCY et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Ouyeinc, Ltd. filed a complaint for trademark infringement against a large number of defendants on June 15, 2020. On June 17, 2020, the court granted plaintiff's motion for a temporary restraining order and for alternative service. Plaintiff served many defendants by email, using the email addresses registered with defendants' eBay accounts. On November 18, 2020, plaintiff filed a motion for default judgment against several defendants, which the court granted on November 24, 2020. Following a hearing on damages, the court entered a final judgment order on January 14, 2021. On April 9, 2021, defendants Hailitech and Hxl_tech moved to set aside the default judgement under Fed. R. Civ. P. 55(c), arguing that they received insufficient service, and that the court lacks personal jurisdiction over the two defendants. Based on the materials submitted by the parties, the court agreed and dismissed the two defendants from the suit on May 14, 2021. (Doc. 134). Plaintiff has filed a motion to reconsider the May 14, 2021, order. (Doc. 135). Nine additional defendants also have moved to set aside the default judgment. (Doc. 144). For the reasons set forth below, plaintiff's motion is granted, and defendants' motions are denied.

## DISCUSSION

### I.      Plaintiff's Motion to Reconsider

To prevail on a Rule 59(e) motion, a party must "clearly establish" that: (1) the court committed a manifest error of law or fact; or (2) newly discovered evidence precluded entry of judgment.  Harrington v. City of Chi., 433 F.3d 542, 546 (7th Cir. 2006).  A manifest error "is not demonstrated by the disappointment of the losing party."  Oto v. Metropolitan Life Ins., 224 F.3d 601, 606 (7th Cir. 2000).  Indeed, a motion to reconsider under Rule 59(e) should be granted only in rare circumstances.  Scott v. Bender, 948 F.Supp.2d 859, 865 (N.D. Ill. 2013).  A Rule 59(e) motion for reconsideration is not an appropriate vehicle for re-litigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration.  Caisse Nationale de Credit Agricole v. CBI Indus., 90 F.3d 1264, 1270 (7th Cir. 1996).

Almost all of plaintiff's arguments are an attempt to relitigate the personal jurisdiction issue that the court ruled on in its May 14, 2021, order.  Plaintiff disagrees with the court's interpretation of Illinois v Hemi Group LLC, 622 F.3d 754 (7th Cir. 2010), and the court's reliance on cases such as Sun Chenyan v. The Partnerships and Unincorporated Assoc's Identified on Schedule "A", 2021 WL 1812888, (N.D. Ill. May 6, 2021).  Plaintiff had an opportunity to raise many of these arguments in the earlier round of briefing; indeed, plaintiff half-heartedly raised many arguments regarding personal jurisdiction, and the court rejected them.[1]  Ordinarily,

---

[1] Plaintiff is advised that filing an underdeveloped brief, and then providing the court with robust arguments and caselaw after the court rules against it, results in a waste of judicial resources.  Plaintiff was well aware of defendants' personal jurisdiction arguments during the original round of briefing, and plaintiff had the opportunity to research the issue and respond.

2

the court would decline to consider arguments that could have been brought in the earlier motion.

However, the court is persuaded that plaintiff's current arguments are indeed correct.

Plaintiff has provided Seventh Circuit authority, as well as additional district court cases, indicating that personal jurisdiction over these two defendants is proper because they directed their activities to Illinois. In Curry v. Revolution Labs., LLC, 949 F.3d 385, 392-93 (7th Cir. 2020), the Seventh Circuit determined that personal jurisdiction was proper over a non-resident defendant operating through e-commerce store operators, including eBay:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois…Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its product requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming the order, and listing the Illinois shipping address.
>
> Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful. Preparing to engage in commercial activity, Revolution created an interactive website and explicitly provided that Illinois residents could purchase its products through that website. It further arranged for the sale of its products through third-party websites. After the sales…Revolution shipped [the product] to its customers who were in Illinois.

949 F.3d at 399.

Courts within this district routinely follow Curry and exercise personal jurisdiction over international e-commerce store operators, specifically eBay storefronts. See, for example, Tommy Hilfiger Licensing, LLC, et al. v. The P'ships, et al., No. 20 C 7477 (N.D. Ill. March 24, 2021) (Dkt. 46) ("Hilfiger has offered evidence tending to show that [defendant], though not physically located in Illinois or even in the United States, operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products would be shipped, including

3

Illinois as one of the options. This is enough to amount to [defendant] having purposefully availed itself of doing business in Illinois."); Mori Lee v. P'ships, No. 19 C 7555 (N.D. Ill. May 14, 2020) (Dkt. 60) (same); Volkswagen AG v. iman365-usa, No. 18 C 6611, 2020 WL 977969, at *4 (N.D. Ill. Feb. 28, 2020) (same).

Plaintiff further notes that when users create an eBay storefront, the user must select specific shipping locations where the seller whishes to ship their products. According to eBay's international selling policy, sellers are required to select the location of where they wish to sell their products, which includes providing specific shipping options for the locations. Thus, the sellers here set up an online storefront that specifically targets Illinois residents.

In addition, plaintiff has provided newly discovered evidence[2] that defendants sold and shipped five products to addresses in Illinois. In ruling on the original motion, the court was persuaded, in part, by the fact that defendants Hlx_tech and Hailitech had effectively made no sales to Illinois, making this case indistinguishable from Chenyan, 2021 WL 1812888, at *5.[3] Importantly, the newly discovered evidence indicates that five products were shipped to actual paying customers in Illinois, not merely to plaintiff's investigator.[4] These sales further confirm that defendant affirmatively selected Illinois as a shipping target.

---

[2] Plaintiff states that prior to the court's May 14, 2021, ruling, plaintiff's counsel had communicated with eBay's counsel to acquire sales records for the defendants. Plaintiff should have informed the court of these communications and plaintiff's attempt to secure the records. The court would have delayed ruling on the personal jurisdiction issue until plaintiff could present more information.

[3] When the court ruled on the original motion, plaintiff stated that the only sale to Illinois was made to plaintiff's investigator. Such a sale on its own is insufficient for purposes of personal jurisdiction. See Walden v. Fiore, 571 U.S. 277, 285 (2014) (for personal jurisdiction, "the plaintiff cannot be the only link between the defendant and the forum"); Haggerty Enterprises, Inc. v. Lipan Indus. Co., Ltd., 2001 WL 968592, at *4 (N.D. Ill. 2001) ("Jurisdiction cannot be manufactured by the conduct of others.").

[4] In defendants' original motion to vacate the default judgment, they argued that they had not made a single sale to Illinois, providing an affidavit to that effect. In response, plaintiff identified the one product sent to plaintiff's investigator. Defendants acknowledged that they had made an error, but blamed it on their record keeping and provided an additional affidavit that they sold only that one product to plaintiff's investigator, and that there were no other sales to Illinois. Now, plaintiff has identified five other sales. This evidence causes the court to doubt the veracity of defendants' affidavits, and to conclude that plaintiff has met its burden of proving multiple sales to Illinois residents.

4

In response, defendants argue that these five sales all occurred in 2017, before plaintiff registered its trademark. However, while the early date of the sales may affect plaintiff's trademark infringement claim, it does not affect the court's inquiry into personal jurisdiction. Defendant presents no authority that earlier sales of an item are insufficient for personal jurisdiction purposes, and the court is aware of none.

The court's earlier ruling relied on the fact that defendants made no sales to Illinois and that eBay storefronts are not sufficiently interactive under Seventh Circuit precedent. Plaintiff has presented new evidence and new caselaw indicating that this is not so. The court finds that defendants have purposefully availed themselves of doing business in Illinois. Consequently, Plaintiff's motion to reconsider is granted, and the court reinstates the judgement against defendants Hailitech and Hlx_tech.

## II.     Storefront Defendants' Motion to Vacate

Defendants Tomorrowhome, Outletstore, Seacoolr, Anderlink, Bestgeeker, Fansfunny, Nativish, Rowaction, and Usbkits (the "storefront defendants") have moved to vacate the default judgement under Federal Rule of Civil Procedure 60(b). (Doc. 144). The storefront defendants make two main arguments: (1) service was improper; and (2) the court lacks personal jurisdiction.

### a.  Service

Five of the storefront defendants (Tomorrowhome, Outletstore, Seacoolr, Anderlink, and Bestgeeker) argue that service was improper because plaintiff bypassed the procedures required by the Hague Convention, and that the Hague Convention prohibits service by email. Not so. The single case cited by the storefront defendants for that proposition held that service by email was improper because plaintiff failed to exercise reasonable diligence to determine the

5

defendants' mailing addresses. Luxottiva Group S.P.A. v. Partnerships and Unincorporated Assoc's Identified on Schedule "A", 391 F.Supp.3d 816 (N.D. Ill 2019). Nowhere does Luxottiva Group suggest that service by email is prohibited, by the Hague Convention or otherwise. In fact, courts have routinely upheld service by email in situations similar to the instant case. See, e.g., Strabala v. Zhang, 318 F.R.D. 81, 115-16 (N.D. Ill. 2016) (Rule 4(f)(3) permits the court to order service by any means not prohibited by international agreement, so long as the method of service comports with constitutional notions of due process); Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1018 (9th Cir. 2002) ("When faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process."); MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) (granting leave to serve a defendant located in China by email and facsimile, and noting that because the "Hague Convention does not prohibit service by e-mail or facsimile, such means may be authorized under Rule 4(f)(3)"); Tommy Hilfiger Licensing LLC, No. 20 C 7477 (N.D. Ill. March 24, 2021) (Dkt. 46) (authorizing service of process by email in trademark action where online stores did not pose any physical address and defendant's business appear[ed] to be conducted entirely through electronic communications, including eBay storefronts).

Consequently, service by email was proper. However, defendants Tommorowhome and Outletstore claim that their respective email addresses were full, and an email sent to those addresses would have ultimately "bounced back."[5] In its response, plaintiff confirms that it received the bounce back notification, and did not take any steps to remedy the situation. But

_____

[5] These two storefront defendants do not explain why the email address that they use to sell the infringing items was "full."

plaintiff notes that those two defendants had actual notice of the judgment against them after receiving an email from Paypal and eBay indicating that their accounts would be frozen pursuant to an infringement action and judgment against them.

Despite plaintiff's inability to effectively manage and monitor a case of this magnitude, plaintiff provided notice reasonably calculated under all the circumstances. Service complied with Rule 4(f)(3) and international law, and plaintiff used the best email address it could find. Consequently, service was proper, and the court will not set aside the default judgment on this basis.

Finally, the same five defendants challenging personal jurisdiction complain that plaintiff withdrew money from defendants' PayPal accounts upon receiving the default judgment. The storefront defendants do not make any requests regarding the money, and they merely claim that plaintiff is withholding the money to force a higher settlement. Plaintiff responds that it agrees to hold the funds in abeyance in their attorney-client trust account, apparently while the parties are engaged in settlement negotiations. Neither party provides legal authority for the court. At this time, the court sees no need to interfere in this matter. Indeed, as the court has decided to uphold the default judgment against the storefront defendants, plaintiff is entitled to these funds.

### b. Personal Jurisdiction

The storefront defendants argue that the default judgment should be vacated because the court lacks personal jurisdiction over them. "When a district court enters default judgment without personal jurisdiction over the defendant, the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that default judgment." Be2 LLC v. Ivanov, 642 F.3d 555, 557 (7th Cir. 2011). The storefront defendants have the burden of demonstrating the absence of personal jurisdiction. Id.

7

The storefront defendants argue that they have not directed any of their activities toward Illinois and note that they are based in China. Plaintiff responds that the storefront defendants have directed activities toward Illinois because Illinois residents were able to purchase items through defendants' eBay stores and have the items shipped to Illinois. For all storefront defendants, the only contact with Illinois was the sale and shipment of a single product to an Illinois address—a product bought by plaintiff's investigator. The court is unpersuaded by plaintiff's arguments that a single sale to plaintiff's investigator is sufficient for minimum contacts purposes. Courts have repeatedly affirmed that a plaintiff cannot manufacture personal jurisdiction through their own conduct. See Walden v. Fiore, 571 U.S. 277, 285 (2014) (for personal jurisdiction, "the plaintiff cannot be the only link between the defendant and the forum"); Haggerty Enterprises, Inc. v. Lipan Indus. Co., Ltd., 2001 WL 968592, at *4 (N.D. Ill. 2001) ("Jurisdiction cannot be manufactured by the conduct of others.").

That being said, the sales to the investigator confirm that the storefront defendants' ecommerce storefronts specifically and affirmatively targeted Illinois as a shipping location. Under the Seventh Circuit precedent discussed above, and based on the interactive nature of the ecommerce storefronts, the storefront defendants have purposefully availed themselves of doing business in Illinois. Consequently, personal jurisdiction is proper over these defendants.

### C. Timing of Infringing Sales

The storefront defendants make one final argument in passing. In their reply brief, the storefront defendants argue that the infringing sales were from June and July of 2019, before plaintiff's trademark was registered in November 2019, and consequently the court should not have assessed statutory damages. See, e.g., New Name, Inc. v. The Walt Disney Co., 2008 WL 5587487, at *6 (C.D. Ca. July 23, 2008) ("[M]any other courts have held that statutory damages

8

are not retroactively available for infringement occurring between application and registration."); GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 300 (S.D.N.Y. 2002) ("[F]or much of the period in which [defendant] engaged in infringing conduct, the mark was unregistered and thus not protectable under the anti-counterfeiting provisions of the Lanham Act."). This argument fails. Plaintiff's evidence establishes that the storefront defendants continued to offer the infringing products for sale through their interactive eBay storefronts after registration, which is sufficient to establish a trademark violation, even if there were no actual sales of the infringing product. See Christian Dior Couture, S.A., v. Liu, 2015 U.S. Dist. LEXIS 158225, at *6-7 (N.D. Ill. Nov. 17, 2015) ("[W]hether the jewelry in question was actually sold is not pertinent to [defendant's] liability since a mere offer to sell infringed merchandise is sufficient to establish liability under the Lanham Act.") (citing 15 U.S.C. § 1114).

## CONCLUSION

For the reasons stated above, plaintiff's motion to reconsider (Doc. 135) is granted and the default judgment against defendants Hailitech and Hxl_tech is reinstated. The storefront defendants' motions to vacate the default judgment (Doc. 144) is denied.[6]

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: June 25, 2021**

---

[6] The motion to file an amicus brief (Doc. 140) is denied as moot.

9

eUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERCIS, B.V.,  )
 )
          Plaintiff,  )
 )      No. 24 C 5853
      v.  )
 )      Judge Sara L. Ellis
THE INDIVIDUALS, CORPORATIONS,  )
LIMITED LIABILITY COMPANIES,  )
PARTNERSHIPS, AND  )
UNINCORPORATED ASSOCIATIONS  )
IDENTIFIED ON  )
SCHEDULE A HERETO,  )
 )
          Defendants.  )

## OPINION AND ORDER

Plaintiff Mercis, B.V. ("Mercis"), which manages MIFFY merchandise, sued 202 entities for infringing on its federally registered copyright and trademarks by selling counterfeit products. The Court granted Mercis' motion for a temporary restraining order ("TRO") on July 18, 2024, Doc. 36, and entered a preliminary injunction order on August 14, 2024, Doc. 47. Four defendants—Jiangxi Qianhe Maternal and Child Products Co., Ltd. (#139), Xiamen Packrich Imp. And Exp. Co., Ltd. (#172), Yiwu Geofair Import & Export Co., Ltd. (#177), and Yiwu Speedbag Co., Ltd. (#183) (collectively, the "Moving Defendants")—move to dismiss Mercis' claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failure to state a claim pursuant to Rule 12(b)(6), Doc. 59. The Moving Defendants also move to vacate the preliminary injunction or, alternatively, lift the asset restraint, Doc. 60. The Court finds that Mercis has made out a *prima facie* case of jurisdiction over the Moving Defendants in Illinois. However, the Court grants the Moving Defendants' motion to dismiss because Mercis has not plausibly alleged a likelihood of

confusion nor substantial similarity.  Because the Court dismisses all claims against the Moving

Defendants, the Court grants the Moving Defendants' motion to vacate the preliminary

injunction.

## BACKGROUND[1]

Mercis, a Dutch company, is the registered owner of the MIFFY trademarks (the

"MIFFY Trademarks"), Reg. Nos. 2,210,029; 2,482,597; 4,248,049; 5,516,174; 5,652,014;

5,663,554; 5,663,610; 5,706,279; 5,706,346; 5,706,199 and 6,727,656, and the MIFFY copyright

(the "MIFFY Copyright"), Reg. No. VA0001054563.  The MIFFY character was "born" in 1955

and is Dick Bruna's best known and most popular character.  Mercis has featured the MIFFY

character in picture books, television series, a movie, and merchandising items worldwide.  The

MIFFY Trademarks and Copyright have been the subject of substantial and continuous

marketing and promotion by Mercis.

The Moving Defendants are business entities that conduct business solely on

www.Alibaba.com.  Among other products, the Moving Defendants have offered for sale tote

bags and reusable diapers that bear counterfeits of the MIFFY Trademarks and Copyright (the

"Counterfeit Products").  The Moving Defendants have never owned, leased, or utilized an office

in Illinois, have no agents, employees, or contractors in Illinois, and have never advertised, held

a telephone listing, or maintained bank accounts in Illinois.  The Moving Defendants have never

---

[1] In addressing personal jurisdiction, the Court is not limited to the pleadings.  *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties for purposes of resolving the Moving Defendants' Rule 12(b)(2) challenge.  The Court resolves all factual conflicts and draws all reasonable inferences in Mercis' favor.  *Id.* at 782–83.  In addressing the Moving Defendants' Rule 12(b)(6) challenge, the Court takes the facts in the background section from the complaint and exhibits attached thereto and presumes them to be true.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

shipped the Counterfeit Products to Illinois or anywhere else in the United States, nor have they specifically marketed, advertised, or otherwise promoted the Counterfeit Products in Illinois.

Mercis' investigator placed orders for the Counterfeit Products on June 13 and 20, 2024 using an Illinois address as the shipping address. The investigator received an order number and confirmation of payment on July 4 and 8, 2024. As of October 2024, Mercis had not yet received the Counterfeit Products.

## ANALYSIS

### I. Personal Jurisdiction

The Moving Defendants contend that the Court lacks personal jurisdiction over them. When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, as it does here, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id*. at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-*

3

*Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Neither the Lanham Act nor the Copyright Act authorizes nationwide service of process, and so the Court may exercise jurisdiction over the Moving Defendants only if authorized both by the United States Constitution and Illinois law. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal

4

jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state."
*North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780
("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the
unilateral activity of the plaintiff or some other entity").

Personal jurisdiction may be either general or specific.[2] *See Daimler AG v. Bauman*, 571
U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).
Neither side argues that the Court can exercise general jurisdiction over the Moving Defendants,
so the Court focuses on specific jurisdiction. Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting
*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[T]he suit must
arise out of or relate to the defendant's contacts with the forum," meaning "there must be 'an
affiliation between the forum and the underlying controversy, principally, an activity or an
occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"
*Id*. (quoting *Goodyear*, 564 U.S. at 919). Here, to establish minimum contacts that create
specific personal jurisdiction, the Moving Defendants must have purposefully directed their
activities at Illinois or purposefully availed themselves of the privilege of conducting business in
Illinois, and Mercis' alleged injury must arise out of or relate to the Moving Defendants' forum-related activities. *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Mercis claims that these requirements are satisfied here. In its complaint, Mercis alleged
that the Moving Defendants hold themselves out as willing and able to sell the Counterfeit
Products to Illinois and that, on information and belief, had sold the Counterfeit Products to

---

[2] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction
exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122,
138 (2023). Because Mercis does not argue that the Moving Defendants consented to suit in Illinois, the
Court need not address the implications of *Mallory* further.

customers in Illinois. Further, Mercis produced evidence that it purchased Counterfeit Products for shipment to Illinois, though the orders have yet to arrive. The Moving Defendants argue that because they never actually shipped the Counterfeit Products to Mercis in Illinois, however, this Court does not have jurisdiction over it.

In *NBA Properties, Inc. v. HANWJH*, the Seventh Circuit confronted the question of what sufficed to subject foreign e-commerce stores like the Moving Defendants to personal jurisdiction in Illinois with respect to claims of online counterfeiting. 46 F.4th 614 (7th Cir. 2022). The Seventh Circuit found purposeful direction at Illinois where the defendant established an online storefront, indicated a willingness to sell to Illinois, and fulfilled an order by "intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624. The court refused to require more than a single sale of the allegedly infringing product to Illinois and further rejected the defendant's argument that a test sale should not suffice because it amounted to an effort by the plaintiff to manufacture jurisdiction, noting that "what matters is [the defendant's] structuring of its own activities so as to target the Illinois market," not the plaintiff's motivations in making the purchase. *Id.* at 624–25.

Here, Mercis has presented evidence that its investigator placed four orders for the Counterfeit Products in U.S. dollars for shipment to an Illinois address, receiving order numbers and payment confirmations thereafter. The Moving Defendants presented no evidence to refute receipt of these orders and payments. Though the Moving Defendants deny shipping the Counterfeit Products to Illinois, they accepted payment in U.S. dollars from Mercis' investigator and agreed to ship the Counterfeit Products to an Illinois address. The fact that the Moving Defendants have not yet shipped the Counterfeit Products does not allow them to avoid jurisdiction when they clearly structured their activities to accept orders from and ship to Illinois.

Taken together, then, the Court concludes that Mercis has sufficiently demonstrated that the Moving Defendants purposefully directed their activities at Illinois. *See NBA Props.*, 46 F.4th at 625 ("Here, HANWJH shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its 'customers in Illinois and tell us, It was all their idea.'" (quoting *uBID, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010)).

The Court also has no issue finding the remaining requirements for personal jurisdiction met. The contacts at issue clearly relate to this suit. *See id.* ("This requirement is met when direct sales from the defendant in the forum state involve the infringing product."). And while the Moving Defendants are foreign entities, courts have found "no unfairness in making a seller defend a suit in a state where it structures its business to 'easily serve the state's consumers.'" *Id.* at 627 (quoting *Curry*, 949 F.3d at 402). Here, the Moving Defendants have done just that, taking steps to make their products, including the Counterfeit Products at issue in this case, available to Illinois customers. Therefore, the Court finds it does not offend traditional notions of fair play and substantial justice for the Moving Defendants to defend against Mercis' claims in this forum. *See uBID, Inc.*, 623 F.3d at 433 ("There is no unfairness in requiring GoDaddy to defend that lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much."); *Hemi*, 622 F.3d at 760 ("Hemi wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure. There is nothing constitutionally unfair about allowing Illinois, a state with which Hemi has had sufficient minimum contacts, to exercise personal jurisdiction over Hemi.").

In summary, the Court finds that Mercis has established a *prima facie* case of personal jurisdiction over the Moving Defendants. The Moving Defendants structured their activities to

target United States and Illinois consumers by accepting payment in U.S. dollars, and they accepted the test orders with an Illinois shipping address. Therefore, the Court moves on to the Moving Defendants' remaining challenges.

## II.     Sufficiency of the Allegations

Next, the Court turns to the Moving Defendants' argument that the complaint fails to state a claim against them. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A.     Trademark, False Designation of Origin, and Deceptive Trade Practices Claims (Counts I, II, and IV)

Mercis brings a claim for trademark infringement and counterfeiting under 15 U.S.C. § 1114. Under the Lanham Act, a defendant is liable for trademark infringement if the defendant, without the trademark registrant's consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

8

15 U.S.C. § 1114(1)(a); *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 879–80 (N.D. Ill. 2013). Counterfeiting is a particular type of trademark infringement under § 1114(1)(a) where the defendant uses "a spurious mark [that] is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (defining "counterfeit"); *N. Am. Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*, No. 1:18-CV-196, 2020 WL 703178, at *3–4 (N.D. Ind. Feb. 10, 2020) ("Trademark infringement, including counterfeiting, is prohibited under 15 U.S.C. § 1114[(1)](a) . . . . However, not all trademark infringement is counterfeiting.").

Mercis also brings claims for false designation of origin under 15 U.S.C. § 1125(a) and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.* Though the Moving Defendants do not move explicitly to dismiss the false designation of origin or deceptive trade practices claims, a plaintiff must show the same elements as the trademark infringement claim to prevail at the motion to dismiss stage, and so the Court analyzes the three claims together. *See Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (analyzing trademark infringement and false designation of origin claims together); *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012) (IUDTPA is "a statute generally thought indistinguishable from the Lanham Act except of course in its geographical scope"); *Monster Energy Co. v. Zheng Peng*, No. 17-cv-414, 2017 WL 4772769, at *3 (N.D. Ill. Oct. 23, 2017) (false designation of origin and IUDTPA claims "involve the same elements").

To prevail on their trademark, false designation of origin, and deceptive trade practices claims, Mercis must demonstrate that the Moving Defendants' use of a protectable mark "is likely to cause confusion among customers." *Phoenix Ent.*, 829 F.3d at 822; *Packman v. Chi.*

*Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001). Mercis need not prove likelihood of confusion at this stage of the litigation, but it still must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of [their] claim." (alterations in original) (citation omitted)). The Moving Defendants argue that Mercis' complaint fails to plausibly allege likelihood of confusion.

In considering the plausibility of Mercis' trademark, false designation of origin, and deceptive trade practices claims, the Court employs the Seventh Circuit's seven-factor test for determining likelihood of confusion. *E.g.*, *Fortres Grand*, 763 F.3d at 701–02; *Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, No. 17-cv-05875, 2020 WL 635904, at *6–7 (N.D. Ill. Feb. 11, 2020) (using the likelihood of confusion factors to address the defendant's argument on a motion to dismiss that the plaintiff did not allege likelihood of confusion); *Mon Aimee Chocolat, Inc. v. Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *5–6 (N.D. Ill. Oct. 22, 2015) (same); *Top Tobacco*, 101 F. Supp. 3d at 789–92 (same); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013, 1015–18 (N.D. Ill. 2014) (same). The Seventh Circuit "uses the following seven factors to determine [ ] likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to

10

'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but the Seventh Circuit has recognized that the marks' similarity, the defendant's intent, and actual confusion "are especially important." *Id.*; *Packman*, 267 F.3d at 643. With these factors in mind, the Court now turns to Mercis' complaint.

*Factor 1*: With respect to the marks' similarity, the test is "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen*, 792 F.3d at 726 (citation omitted). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed, or was otherwise affiliated with the product." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted).

Mercis' complaint attaches images of the MIFFY Trademarks and the Moving Defendants' motion to dismiss embedded images of the Counterfeit Products, as they were found on the Moving Defendants' online marketplace accounts.[3] Below are images of one of the MIFFY Trademarks, No. 5,663,554, and the Counterfeit Products:

---

[3] Because Mercis did not include information specific to the Moving Defendants in its complaint (i.e., links to or screenshots of the Moving Defendants' Counterfeit Products), the Court questions whether Mercis adequately pleaded any of its four claims. However, because the Moving Defendants do not raise this argument, the Court considers the screenshots of the Counterfeit Products included in the Moving Defendants' motion to dismiss in resolving their Rule 12(b)(6) challenge. The Court places Mercis on notice that it should provide more specific details regarding each named defendant's allegedly infringing products in future pleadings.

| **MIFFY Trademark** | **Counterfeit Products** |
|:---:|:---:|



 



Doc. 1-1 at 9; Doc. 59-1 at 10–11.  The Moving Defendants argue that differences in the bunnies' mouths, ears, and heads render the marks dissimilar.  Doc. 59-1 at 13-14.  However, a jury viewing these marks could plausibly find that the marks are similar and likely to make a consumer associate the product offered for sale by the Moving Defendants with the source of the MIFFY Trademarks.  Thus, this factor weighs in favor of Mercis.

*Factor 2*: For similarity between products, "courts ask 'whether the products are the kind the public attributes to a single source.'"  *KJ Korea*, 66 F. Supp. 3d at 1015 (citation omitted).  The Moving Defendants argue that Mercis has failed to allege that it sells products like the Counterfeit Products.  Doc. 59-1 at 14.  Mercis does not address this point in its response, though the complaint alleges generally that the "MIFFY character's popularity has led to a wide range of merchandising items such as clothes, toys, stationery and household items featuring the character."  Doc. 1 ¶ 7.  Also, Mercis registered the MIFFY Trademark for Class 18, which covers weekend, travel, overnight, beach, tote, and shoulder bags, Class 24, which covers textiles

12

and textile goods, and Class 25, which covers clothing. Doc. 1-1 at 10. However, without specific products to compare, the Court finds that this factor does not support a likelihood of confusion.

*Factor 3*: With respect to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). To answer this question, the Court considers the "relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels." *Top Tobacco*, 101 F. Supp. 3d at 790. Mercis does not address any of these considerations. Instead, Mercis broadly alleges that the MIFFY Trademarks have been featured in books, television series, and movies that are sold and aired worldwide. Also, Mercis alleges that it "has and continues to widely market and promote the MIFFY Trademarks." Doc. 1 ¶ 8. Absent more detailed allegations about Mercis' area and manner of use of the MIFFY Trademarks, the Court finds that this factor does not support a likelihood of confusion.

*Factor 4*: Generally, courts considering this factor assume that "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). When customers use a lesser degree of care, this supports a finding of a likelihood of confusion. *Sorensen*, 792 F.3d at 731. In its complaint, Mercis included a screenshot of and a link to a website, https://miffytown.com/toys, and alleged that Mercis is the official source of MIFFY products. Doc. 1 ¶ 7. However, the screenshot only shows toys, and the complaint does not include any additional allegations concerning the

13

accessibility or cost of Mercis' products.  Because Mercis' complaint does not include allegations that address this factor, the Court finds that this factor does not support a likelihood of confusion.

*Factor 5*: For the strength of the plaintiff's mark, "courts examine 'the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source.'" *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted).  "A mark's strength ordinarily corresponds to its economic and marketing strength." *Sorensen*, 792 F.3d at 731.  Mercis alleges that the MIFFY Trademarks have been "the subject of substantial and continuous marketing and promotion by [Mercis].  [Mercis] has and continues to widely market and promote the MIFFY Trademarks and Copyright in the industry and to consumers."  Doc. 1 ¶ 8.  Mercis also alleges that "products bearing the MIFFY Trademarks and Copyright are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from [Mercis]," *id.* ¶ 11, and "[c]onsumers have come to expect the highest quality from [Mercis'] products provided under the MIFFY Trademarks," *id.* ¶ 24.  These allegations, which indicate continuous (and economically successful) use of the MIFFY Trademark for several years, distinctiveness based on quality and reputation, and substantial efforts to maintain recognition and awareness of the brand through advertising and promotion, suggest that the fifth factor weighs in favor of likelihood of confusion.  *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (finding that the plaintiff's use of its mark for six years and its good reputation warranted weighing the fifth factor in favor of a likelihood of confusion); *Mighty Deer Lick*, 2020 WL 635904, at *7 (allegation that the plaintiff's mark was "widely recognized as being associated with [the plaintiff] and high-quality goods" satisfied the fifth factor).

*Factor 6*: The Moving Defendants contend that Mercis has failed to allege actual confusion, which Mercis does not refute. Nonetheless, "the absence of factual allegations demonstrating actual confusion is not dispositive," *KJ Korea*, 66 F. Supp. 3d at 1016, because "evidence of actual confusion . . . is not required to prove that a likelihood of confusion exists," *CAE*, 267 F.3d at 685.

*Factor 7*: This last factor primarily looks to whether "the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644. Mercis alleges that the Moving Defendants' "willful, intentional, and unauthorized use of the MIFFY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public." Doc. 1 ¶ 26. These allegations address the Moving Defendants' intent, but they "do not weigh particularly heavily in favor of or against likelihood of confusion" because they are conclusory and not supported by factual allegations from which the Court can reasonably infer the alleged intent and knowledge. *See Top Tobacco*, 101 F. Supp. 3d at 791–92 (finding that unsupported allegations that the defendant was intentionally using its mark "to profit off of the goodwill and consumer recognition of" the plaintiff's trademark and "deliberately and willfully used [its] mark . . . to pass its tobacco product off as those of" the plaintiff are "not especially strong" (citations omitted)).

In sum, Mercis has alleged sufficient facts pertaining to only two of the seven likelihood of confusion factors: the first and fifth factors. By doing so, Mercis has not raised the possibility of likelihood of confusion "above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (citation omitted), especially given the fact-intensive nature of weighing the different factors, *see Packman*, 267 F.3d at 643; *Top Tobacco*, 101 F. Supp. 3d at 790.

15

Therefore, the Court dismisses the trademark, false designation of origin, and deceptive trade practices claims (Counts I, II, and IV).

### B. Copyright Claim (Count III)

"A plaintiff alleging copyright infringement must establish two elements: '(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Because the Moving Defendants do not challenge Mercis' copyright ownership, the Court focuses its analysis on the second element.

The Court may infer copying from allegations that the Moving Defendants had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work."[4] *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012). Courts determine whether two works are substantially similar by applying the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994) (quoting *Atari, Inc. v. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). That is, courts look to whether the ordinary observer would tend to overlook the disparities, unless setting out to detect them, and to regard the aesthetic appeal of the two works as the same. *Id.*

---

[4] The Moving Defendants do not challenge the access element of copying, and so the Court does not address that here.

Courts may find that a copyright is entitled to only "thin" copyright protection. *See Feist*, 499 U.S. at 349 (recognizing that the thin copyright in a factual compilation means that, "[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement"). Important here, the depiction of an animal requires "a copyright holder [to] prove substantial similarity to those few aspects of the work that are expression not required by the idea." *Wildlife Exp. Corp.*, 18 F.3d at 508. "[A]s a work embodies more in the way of particularized expression, it moves away from" the necessary elements "and receives broader copyright protection." *Id.* (citation omitted). "At the other end of the spectrum, creative complex artistic expressions are more fully protected." *Id.*

The Moving Defendants argue that Mercis has not sufficiently alleged that the Moving Defendants copied the original product because the MIFFY Copyright is "thin" with only two protectable elements, from which the Counterfeit Products differ. Specifically, the Moving Defendants contend that the MIFFY Copyright's bunny's outfit and "x" shaped mouth are the only unique features not attributable to all cartoon bunnies. And, when comparing these protectable elements between the works, the Moving Defendants argue that the works are not substantially similar because (1) the Counterfeit Products only depict a bunny's head, while the MIFFY Copyright includes a bunny's body wearing clothes; and (2) the Counterfeit Products' bunnies' "x" mouth shapes and locations differ from the MIFFY Copyright's bunny. Mercis responds that all elements of the Counterfeit Products' bunny and the MIFFY Copyright's bunny are "nearly identical," both having oval heads with extending vertical ears, two large black dots

17

for eyes, and a distinct "x" for a mouth.  Doc. 66 at 12.  Below are images of the MIFFY

Copyright and the Counterfeit Products:

**MIFFY Copyright**     **Counterfeit Products**

Doc. 1-2 at 4; Doc. 59-1 at 10–11.

The MIFFY Copyright is a simple cartoon sketch of a bunny with almost no detail.  The

images the Moving Defendants employ are similar, insofar as cartoon depictions of bunnies will,

of necessity, always be similar.  There is little copying of the MIFFY Copyright's bunny, aside

from what is necessary to depict a cartoon bunny in the first place.  In fact, the Counterfeit

Products' bunnies do not portray the most unique element of the MIFFY Copyright—the

bunny's body and outfit.  While both the MIFFY Copyright's bunny and the Counterfeit

Products' bunnies have an "x" shaped mouth, that is the only protectable element that is similar

between the two.  In the context of the "thin copyright", that is not enough for the Court to find

that the two bunnies are substantially similar.  *See Hangzhou Aoshuang E-Com. Co. v.*

*008fashion*, No. 19 C 4565, 2020 WL 11401648, at *14-15 (N.D. Ill. Aug. 10, 2020) (finding

18

two "childlike" images of giraffes are not substantially similar because, while the defendants' images were similar to plaintiff's copyright, "there is little creativity or originality to [the copyright] that is not a necessary element of a giraffe"). Accordingly, Mercis has not made out a *prima facie* case of copyright infringement, and the Court dismisses Mercis' copyright claim against the Moving Defendants.

### III. Motion to Vacate the Preliminary Injunction

TROs and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Laby's v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily

in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Although the Court has already granted Mercis a preliminary injunction, it did so on an *ex parte* basis under circumstances that closely resembled a TRO, and without the benefit of adversarial briefing. Thus, Mercis bears the burden of persuading the Court that it should not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, No. 21 C 973, 2021 WL 4498654, at *3 n.3 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a temporary injunction is issued under circumstances resembling a temporary restraining order, the burden of proof may be on the party seeking the order.")).

Ordinarily, "[p]laintiffs can only establish a likelihood of success on the merits of their [ ] claim"—a core threshold issue—"if that claim survives [a] motion to dismiss." *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 44 (D.D.C. 2019). There are a handful of rare circumstances in which courts have denied motions to vacate a preliminary injunction despite granting without prejudice a simultaneous motion to dismiss. *See*, *e.g.*, *Sharp Healthcare v. Leavitt*, No. 08 CV 0170, 2009 WL 790113, at *6 (S.D. Cal. Mar. 25, 2009) (dismissing plaintiffs' complaint as moot but preserving a preliminary injunction because plaintiffs' desire to amend their complaint creates the possibility that they will succeed on the merits and because the "possible harm to the plaintiffs is very great"). But Mercis does not argue that such an unusual remedy would be appropriate here. The Court therefore grants the Moving Defendants' motion to vacate the preliminary injunction because Plaintiff has failed to establish that it is likely to succeed on the merits of its claims.

**CONCLUSION**

For the foregoing reasons, the Court grants the Moving Defendants' motion to dismiss [59]. The Court dismisses Mercis' complaint as to the Moving Defendants without prejudice. The Court also grants the Moving Defendants' motion to vacate the preliminary injunction [47]. The Court vacates the preliminary injunction as it relates to the Moving Defendants.

Dated: February 6, 2025

_____
SARA L. ELLIS
United States District Judge

21

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MANCHESTER UNITED FOOTBALL CLUB
LTD.,

        Plaintiff,

      v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

        Defendants.

No. 24 CV 5692

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Manchester United Football Club Limited is a soccer club in the English Premier League that owns various trademarks related to the club. It filed this action under the Lanham Act, 15 U.S.C. § 1051, et seq., against the defendants listed in Schedule A of the complaint. Manchester United alleged that these defendants, including defendants Guangzhou DOY Label Co., Shandong Longxiang Textile Co., and Zhuji Dule Textile Co. Ltd., infringed Manchester United's trademarks by selling counterfeit products or using trademarks in connection with the sale of goods to Illinois residents. Defendants Guangzhou DOY Label Co., Shandong Longxiang Textile Co., and Zhuji Dule Textile Co. move to dismiss the complaint for lack of jurisdiction. For the reasons discussed below, the motion is denied.

## I.     Legal Standard

When a defendant challenges jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). Where the decision on jurisdiction is based solely on written materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendants. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). If the defendants submit evidence opposing the exercise of jurisdiction, the plaintiffs must also submit affirmative evidence in support of jurisdiction. *Id.* I take as true "all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.* (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

## II.    Background

Manchester United Football Club Limited is a professional soccer club in the English Premier League. [1] ¶¶ 3, 5.[1] The club produces, manufactures, and distributes athletic apparel, accessories, and other products. [1] ¶ 6. It owns several federally registered trademarks, including Reg. No. 2,556,390; Reg. No. 2,864,029; Reg. No. 3,214,435; Reg. No. 4,843,291; Reg No. 5,887,591; and Reg. No. 5,899,493.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1]; the evidence submitted by the defendants in opposition to the exercise of jurisdiction, [78-1], [78-2], [78-3], [80-1], [80-2], [80-3], [82-1], [82-2], [82-3], [82-4], [82-5]; and the evidence submitted by plaintiff in response and in support of the exercise of jurisdiction, [92], [92-1], [92-2], [92-3], [92-4], [92-5], [92-6], [93], [93-1], [93-2], [93-3], [93-4], [93-5], [93-6], [93-7], [93-8], [93-9], [93-10], and [93-11].

2

[1] ¶ 9. The club incorporates these trademarks in the design of the items it produces. [1] ¶ 9.

Defendants are businesses operating in China. [1] ¶ 16; [78-1] ¶¶ 6–9, 16; [80-1] ¶¶ 6–9, 16; [82-1] ¶¶ 6–9, 16. They all sell products via online storefronts at Alibaba.com. [78-1] ¶¶ 17–18; [80-1] ¶¶ 17–18; [82-1] ¶¶ 17–18.

Defendant Guangzhou has offered for sale custom products including garment accessories, gifts and crafts and bar accessories, packaging and printing products, and printing consumables to primarily business purchasers, using Manchester United registered trademark no. 2,864,029; no. 3,214,435; no. 2,556,390; and no. 5,887,591 on its product listing. [82-1] at 17–18; [93] ¶ 3. Plaintiff's investigator placed an order on April 10, 2024, for a product to be shipped to Illinois. [93] ¶ 6. Plaintiff's investigator received the product. [93] ¶ 6; [93-1] at 6; [93-2]. The product received was not itself infringing. [93-2]. Manchester United has presented evidence that Guangzhou has made sales of at least 108 products to Illinois residents. [93] ¶ 11.

Defendant Shandong Longxiang has offered for sale custom towels to primarily business purchasers, using Manchester United registered trademark no. 2,864,029; no. 3,214,435; no. 5,887,591; and no. 5,899,493 on its product listing. [80-1] ¶ 17–18; [93] ¶ 4. Plaintiff's investigator placed an order on April 13, 2024, for a product to be shipped to Illinois. [93] ¶ 7. Plaintiff's investigator received the product. [93] ¶ 7; [93-4]. The product received was not itself infringing. [93-4]. Manchester United has

presented evidence that Shandong Longxiang has made sales of at least 10 products to Illinois residents. [93] ¶ 11.

Defendant Zhuji Dule has offered for sale custom socks to primarily business purchasers, using Manchester United registered trademark no. 2.864,029; no. 4,843,297; no. 5,887,591; no. 2,556,390; and no. 5,899,493 on its product listing. [78-1] ¶¶ 17–18; [93] ¶ 5. Plaintiff's investigator placed an order on April 7, 2024, for a product to be shipped to Illinois. [78-2] at 15; [93] ¶ 8. The investigator paid for the product and received a confirmation email. [93] ¶ 8. On April 17, 2024, Zhuji Dule emailed the investigator to initiate a refund request. [93] ¶ 8; [93-5] at 4. Manchester United also presents evidence that Zhuji Dule had completed at least one sale to an Illinois resident. [93] ¶ 11.

According to Manchester United, a search on Baidu.com (a Chinese search engine equivalent to Google), provides dozens of websites that explain tactics to identify test orders by a rights owner, including known addresses of test orders. [93] ¶ 9. This includes the address of the investigator's firm. [93] ¶ 9.

Manchester United has also provided declarations and supporting materials that show that when opening an online storefront on Alibaba, a seller must affirmatively choose where it will sell and ship products. [92] ¶¶ 3, 5–6, 10. This can include North America, and specifically the United States. [92] ¶ 5, 10. A seller can also choose what currency it accepts, including USD. [92] ¶ 6.

III.   Analysis

Defendants argue that the court lacks personal jurisdiction over them. In a federal question case, "a federal court has personal jurisdiction over the defendant if

4

either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry*, 949 F.3d at 393 (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex*, 623 F.3d 440, 443 (7th Cir. 2010)). Because the Lanham Act does not grant personal jurisdiction, I look to Illinois law to determine whether I can exercise personal jurisdiction over the defendants. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022).

The Illinois long-arm statute confers personal jurisdiction if "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Illinois long-arm statute is "coextensive with the Federal Constitution's Due Process Clause." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020); *see also Mobile Anesthesiologists Chi.*, 623 F.3d at 443 (noting that "there is no operative difference" between the Illinois and United States Constitutions for purposes of limiting personal jurisdiction). The question is whether exercising personal jurisdiction on defendants "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

Federal due process requires that the defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). These "minimum contacts" fall into two categories: "specific" and "general" jurisdiction. *J.S.T. Corp.*, 965 F.3d at 575. General jurisdiction requires the "defendant's connection to the forum" state be "so continuous and systematic as to render [it] essentially at home." *Id.* (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Manchester United asserts only specific jurisdiction.

Specific jurisdiction "focuses on the sufficiency of the defendant's contacts with the forum that 'also give rise to the liabilities sued on.'" *Curry*, 949 F.3d at 395 (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction analyzes the connection between the defendant, the forum, and the underlying controversy. *Id.* The defendant's "suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. It is a "defendant-focused" inquiry. *See id.* Jurisdiction is proper when the defendant "take[s] 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The "minimum contacts" analysis requires courts to look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Curry*, 949 F.3d at 397 (quoting *Walden*, 571 U.S. at 285). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919).

These principles are equally applicable to online sellers. *NBA Props.*, 46 F.4th at 622. Selling items over the internet into the forum state is enough to confer personal jurisdiction. *Id.*; *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424, 427–28 (7th Cir. 2022); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–60 (7th Cir. 2010); *Curry*, 949 F.3d at 399–400. "If the defendant exploits the forum market, it is subject to the jurisdiction of the forum." *NBA Prop.*, 46 F.4th at 623. However, courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *Hemi Grp.*, 622 F.3d at 760.

There are three elements that must be met for the court to exercise specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

Defendants argue that none of these elements are met.

### A.    Purposeful Direction

None of the defendants have a physical presence in Illinois, though this is not a bar to finding sufficient minimum contacts for jurisdiction. *NBA Prop.*, 46 F.4th at

7

624. Creating a website, providing that Illinois residents could purchase products through the website, selling products through third-party websites, sending written confirmation of the sales and including Illinois shipping addresses, and shipping the product to Illinois residents are circumstances sufficient to find a business purposely avails itself of the privilege of conducting business in Illinois. *Id.*; *Curry*, 949 F.3d at 399.

Here, all three defendants have created an online storefront using the third-party retailer Alibaba.com. Through the storefronts, they have asserted a willingness to ship goods to Illinois by affirmatively choosing to ship products to North America and accepting USD as a currency. [92] ¶¶ 3, 5–6, 10. When plaintiff's investigator, an Illinois resident, placed orders, the defendants acknowledged the order with an email confirmation that stated the order and payment had been received. [93-1] at 2; [93-3] at 2–3; [93-5] at 2. Defendants Guangzhou and Shandong Longxiang shipped the products, which were received by plaintiff's investigator. [93-1] at 6; [93-2]; [93-4]. After the plaintiff's investigator had already paid for the order from Zhuji Dule, Zhuji Dule canceled the ordered and initiated a refund request. [93-5] at 4.

Defendants Shandong Longxiang and Guangzhou argue that a single sale does not confer jurisdiction on this court. [80] at 6–7; [82] at 6–7. However, a single sale can be enough to establish personal jurisdiction. *NBA Props.*, 46 F.4th at 624. Here, Shandong Longxiang and Guangzhou placed items for sale on a third-party site, took orders from an Illinois resident, confirmed the orders, and shipped the products. Manchester United has also put forth evidence that Shandong Longxiang and

8

Guangzhou sent multiple products—at least 10 and 108, respectively—to Illinois residents. [93] ¶ 11. This is sufficient to show these defendants purposefully availed themselves of conducting business in Illinois. *Id.*

Defendant Zhuji Dule argues that it made no sales and shipped no infringing items to Illinois, and therefore the court cannot exercise jurisdiction. [78] at 4–5. It cites three cases in support. In *Shenzhen Dejiayun Network Technology Co., Ltd. v. The P'ships and Unincorporated Ass'ns Identified on Schedule A*, No. 21-cv-6607, [143] at 2–3 (N.D. Ill. Feb. 15, 2024), the court found no personal jurisdiction where the defendants submitted a declaration saying that the defendants did not make sales of any infringing products to Illinois, and the plaintiff's only evidence otherwise was inputting the court's address on the defendant's website to demonstrate the defendants stood "ready and willing to ship counterfeit goods" to Illinois. In *Emoji Co. GmbH v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, and Unincorporated Ass'ns Identified on Schedule A*, No. 23-cv-1112, [54] at 1 (N.D. Ill. Sept. 16, 2023), the court found no personal jurisdiction where the defendants did not ship any infringing products and plaintiff did not respond to the motion to dismiss at all. Finally, in *KTM AG v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, and Unincorporated Ass'ns Identified on Schedule A*, No. 20-cv-06743, [177] at 1 (N.D. Ill. Apr. 13, 2022), the court granted the defendant's motion to dismiss for lack of jurisdiction where the plaintiff provided no evidence that the defendants had made "even one sale into the State of Illinois."

9

Zhuji Dule's own evidence shows that an order was made, Zhuji Dule attempted to communicate with an Illinois resident about the order, and then later Zhuji Dule canceled the order. [78-1] ¶ 21, [78-1] at 6. Manchester United has also provided evidence, unlike the plaintiffs in the cited cases, that show that Zhuji Dule accepted the investigator's order, received payment, and then later issued a refund request. [93] ¶ 8; [15-1] at 117–21; [93-5] at 2–4. Plaintiff has also put forth evidence that Zhuji Dule completed a sale to an Illinois resident. [93] ¶ 11. Through these actions, Zhuji Dule has "asserted a willingness to ship goods to Illinois and established the capacity to do so." *NBA Prop.*, 46 F.4th at 624.

Because the defendants all offered products for sale to, and accepted and confirmed sales for Illinois residents—whether shipped and received or later canceled—Manchester United has made out a prima facie case that each defendant purposefully availed itself of doing business in Illinois.

### B. Relatedness

The defendants also argue that because the products sent to plaintiff's investigator did not bear any infringing marks, there is no harm to Manchester United due to any activities in Illinois. [80] at 7–8; [82] at 8–9.

However, the Lanham Act bars the "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark *in connection with the sale, offering for sale, distribution, or advertising* of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (emphasis added). It further bars a person from "reproduc[ing], counterfeit[ing], copy[ing], or colorably imitat[ing] a registered mark"

10

and apply the same to "labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or *in connection with the sale, offering for sale, distribution, or advertising* of goods or services." 15 U.S.C. § 1114(1)(b) (emphasis added). An offer to sell an infringing or counterfeit item is itself a violation of the act. *Monster Energy Co. v. Wensheng*, 136 F.Supp.3d 897, 904 (N.D. Ill. 2015); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997). Moreover, the requirement of relatedness is "met when direct sales from the defendant in the forum state involve the infringing product." *NBA Props.*, 46 F.4th at 625.

Manchester United alleges that each defendant used various registered trademarks in connection with the sale of its products and puts forth evidence showing how the trademarked images were used in the product listing of each defendant. Zhuji Dule's own evidence admits that it "displayed a small product image of socks with the asserted Manchester United trademarks," though says this was accidental. [78-1] ¶ 21. Similarly, Guangzhou's evidence states that it displays the asserted trademarks but argues it "merely illustrates our custom services." [82-1] ¶ 23. The use of Manchester United's trademarks on the product listing of each product is "in connection with" the sale of those products. These listings were made available to Illinois residents, and each defendant accepted orders and payment from an Illinois resident. Manchester United has made a prima facie case that the harm to Manchester United arises from the defendants' activities—the sale and offer for

11

sale to Illinois residents—of products that attract customers by using Manchester United trademarks on the web listing.

### C. Traditional Notions of Fair Play and Substantial Justice

The defendants also argue that Manchester United cannot show that subjecting these defendants to this court's jurisdiction fosters fair play and substantial justice. The factors relevant to this question are: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Felland*, 682 F.3d at 677 (quoting *Burger King Corp.*, 471 U.S. at 477). The defendants argue that the plaintiffs have "lured" the businesses into Illinois to establish personal jurisdiction over them. They cite *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019) in support of this argument.

In *Matlin*, the defendants moved to dismiss for lack of jurisdiction where a Virginia defendant refused to pay royalties on nationwide sales of products that the plaintiffs had designed. *Id.* at 703–04. This included at least one sale of a product in Illinois. *Id.* at 704. The Seventh Circuit noted, however, that the injury was not about the sales of the products themselves, but about royalty claims "from a non-party's contractual obligation and the defendants' alleged complicity in supposed fraud committed by that non-party." *Id.* at 707. The underlying contracts included forum selection and choice of law clauses that did not select or choose Illinois. *Id.* And importantly, the defendant's contacts with Illinois came *after* the suit was filed; in

12

fact, the contacts came after the defendant's motion to dismiss for lack of jurisdiction. *Id.* The Seventh Circuit made clear that it could "not allow plaintiffs to base jurisdiction on a contact that did not exist at the time they filed suit." *Id.*

Here, unlike *Matlin*, the suit is based on the conduct that provides jurisdiction—the offer and sale of allegedly infringing products by defendants. There is "no unfairness in making a seller defend a suit in a state where it structures its business to 'easily serve the state's consumers.'" *NBA Props.*, 46 F.4th at 627 (quoting *Curry*, 949 F.3d at 402). The defendants offered to sell, made sales to, and accepted payment from an Illinois resident. They have set up their businesses to allow shipments to Illinois and accept USD. It does not offend traditional notions of fair play and substantial justice for the defendants to be haled into court in this forum.

Defendants also cite *Walden*, 571 U.S. at 284–85, to claim that plaintiff's lawyer is the "only link" to the jurisdiction, and that link cannot be the basis for jurisdiction. But the link is not the plaintiff; it is the use of Manchester United's trademarks in connection with the sale of a product to plaintiff's investigator in Illinois that creates the link. The use of the trademarks by the defendants to sell products to Illinois residents is evidence of defendants' own connection to the forum state.

Finally, Defendants argue that subjecting a Chinese defendant to an Illinois court's jurisdiction is not fair, because there is a heavy burden on the defendants to litigate in Illinois; that Illinois does not have a strong interest in adjudicating this dispute because the companies have no physical presence in the state; and that

13

litigating would not be efficient. There is no doubt a burden on the defendants in litigating here. But the defendants' own activities have opened them up to litigation in this district. *See uBid, Inc.*, 623 F.3d at 433 ("There is no unfairness in requiring GoDaddy to defend that lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much."); *Hemi*, 622 F.3d at 760 ("Hemi wants to have its cake and eat it, too: It wants the benefit of a nationwide business model with none of the exposure."). It is not unfair to litigate this dispute in this forum, where defendants have purposely availed themselves of conducting business in Illinois and are alleged to have used that business to violate the Lanham Act by using trademarks to sell products to Illinois residents.

**IV.    Conclusion**

Defendants' motions to dismiss for lack of jurisdiction, [78], [80], [82], are denied. Because there was no need to conduct jurisdictional discovery to find jurisdiction proper, Manchester United's motion for jurisdictional discovery, [86], is denied as moot.


ENTER:

Manish S. Shah
United States District Judge

Date: December 23, 2024

14

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PIT VIPER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 14761 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| XI'AN JIAYE TENGDA TRADING CO., | ) | |
| LTD., d.b.a. BYTEBYTE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Pit Viper, LLC ("Pit Viper"), which designs, manufactures, and sells

performance eyewear, sued 138 entities for infringing its federally registered trademarks by

selling counterfeit sunglasses. The Court granted Pit Viper's motion for a temporary restraining

order ("TRO") on October 17, 2023, Doc. 21, and entered a preliminary injunction order on

November 13, 2023, Doc. 35. Pit Viper settled with some defendants and obtained a default

judgment against the remaining defendants on January 17, 2024. Doc. 57. Defendant Xi'an

Jiaye Tengda Trading Co., Ltd., d.b.a. bytebyte ("Bytebyte") filed an appearance on May 16,

2024, seeking to vacate the default judgment against it. The Court vacated the default judgment

against Bytebyte on May 29, 2024. Doc. 68. Bytebyte now moves to dismiss Pit Viper's claims

against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)

or, alternatively, for a more definite statement pursuant to Rule 12(e), Doc. 82.[1]  Because Pit

---

[1] In its reply brief, Bytebyte raises arguments concerning the validity of Pit Viper's trademarks. Bytebyte notes, however, that it does "not expect[ ] this Court to find the trademarks invalid at this stage" and instead offers the argument "simply to show that a strong case can be made for invalidity and [Bytebyte] should be allowed to make the case." Doc. 94 at 3. Pit Viper moved to strike the portions of Bytebyte's reply addressing the validity of Pit Viper's trademarks [95], arguing that Bytebyte improperly raised these only in reply. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) ("This argument is waived, however, as the plaintiff failed to raise it until his reply brief, leaving the defendants no chance to

Viper has made out a prima facie case of jurisdiction over Bytebyte in Illinois, the Court denies Bytebyte's motion to dismiss. And because Pit Viper sufficiently provided Bytebyte with notice of the claims it asserts against Bytebyte, including the specific trademarks allegedly infringed by Bytebyte's product, the Court denies Bytebyte's alternative motion for a more definite statement.

**BACKGROUND**[2]

Pit Viper designs, manufactures, and sells performance eyewear. It owns several federally registered trademarks, including Reg. No. 6,903,760 and Reg. No. 6,903,761.

Bytebyte is a Chinese company registered in China, with all of its operations based in China. It operates an online storefront on Amazon, through which it has made sales to consumers in the United States, including Illinois. Between December 2020 and December 2023, Bytebyte has completed at least 422 transactions with Illinois residents and over 11,000 transactions with United States residents. The parties disagree on how much revenue Bytebyte has derived from Illinois, with Pit Viper claiming it amounts to almost $5,000 and Bytebyte maintaining it totals $3,502.62. According to Bytebyte, the revenue from its Illinois sales, $3,502.62, amounts to 3.38% of the total revenue from sales of all products it has offered on its Amazon storefront.

Among other products, Bytebyte has offered for sale sunglasses that bear counterfeits of the Pit Viper trademarks (the "Counterfeit Product"). Bytebyte represents that it added the listing for the Counterfeit Product on August 11, 2023, with the product warehoused in and

---

respond."). The Court agrees that arguments concerning the validity of the trademarks are not properly before the Court, and so grants Pit Viper's motion to strike and does not consider arguments related to the validity of the trademarks in ruling on Bytebyte's motion to dismiss.

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Pit Viper's favor. *Id.* at 782–83.

2

shipping from China. The listing on Amazon for the Counterfeit Product indicated it was a seller-fulfilled listing. The Counterfeit Product was removed from Bytebyte's online storefront on October 22, 2023, several days after the TRO issued in this case.

According to Bytebyte, Pit Viper's investigator placed the only one order it received for the Counterfeit Product on August 15, 2023. Pit Viper's investigator ordered the Counterfeit Product, which cost $21.99, from Bytebyte, using Pit Viper's counsel's address as the shipping address. The investigator received an order confirmation. But on August 20, 2023, the investigator received a notification that the order had been cancelled.

Bytebyte contends that it would not have known where to ship the Counterfeit Product, providing a historical screenshot of the order from its Amazon seller portal, which does not display the shipping address because the order had been cancelled. Bytebyte claims that it did not actively monitor the email account associated with its Amazon storefront, instead conducting its business through the Amazon seller portal. Pit Viper has submitted information about Amazon's online platform that shows that, at the time that Bytebyte received the order for the Counterfeit Product, Bytebyte would have seen the shipping address in the seller portal.

According to Pit Viper, a search on Baidu.com, a Chinese search engine similar to Google, reveals websites that provide e-commerce operators with tactics for how to identify if a rights owner places a test order. The various postings include shipping addresses that are often associated with such orders, including the Chicago, Illinois address that Pit Viper's investigator used to purchase the Counterfeit Product. The websites advise sellers to refuse to ship to those addresses.

Pit Viper has also provided declarations and supporting materials that indicate that, when opening an online storefront on Amazon, a seller must affirmatively select the locations to which

3

it will ship products. Bytebyte had the option to choose not to ship to particular states. Given the availability of the Counterfeit Product for shipment to Illinois, it affirmatively chose to allow Illinois consumers to purchase that and other of its products. Bytebyte also used coupon campaigns and targeted advertising on Amazon to drive sales to products listed on its online storefront.

## ANALYSIS

### I.  Personal Jurisdiction

Bytebyte has moved to dismiss Pit Viper's complaint, contending that the Court lacks personal jurisdiction over it. When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, as it does here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id*. at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

4

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The Lanham Act does not authorize nationwide service of process, and so the Court may exercise jurisdiction over Bytebyte only if authorized both by the United States Constitution and Illinois law. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780

5

("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction may be either general or specific.[3] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Neither side argues that the Court can exercise general jurisdiction over Bytebyte, so the Court focuses on the specific jurisdiction analysis. Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[T]he suit must arise out of or relate to the defendant's contacts with the forum," meaning "there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. (quoting *Goodyear*, 564 U.S. at 919). Here, to establish minimum contacts that create specific personal jurisdiction, Bytebyte must have purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois, and Pit Viper's alleged injury must arise out of or relate to Bytebyte's forum-related activities. *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Pit Viper claims that these requirements are satisfied here. In its complaint, Pit Viper alleged that Bytebyte holds itself out as willing and able to sell the Counterfeit Product to Illinois and that, on information and belief, had sold the Counterfeit Product to customers in Illinois. Further, Pit Viper produced evidence that it purchased a Counterfeit Product for shipment to Illinois, only to have the purchase cancelled several days later. Bytebyte argues that because it

---

[3] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Pit Viper does not argue that Bytebyte consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

6

never actually shipped the Counterfeit Product to Pit Viper in Illinois, however, this Court does not have jurisdiction over it.

In *NBA Properties, Inc. v. HANWJH*, the Seventh Circuit confronted the question of what sufficed to subject a foreign e-commerce store like Bytebyte to personal jurisdiction in Illinois with respect to claims of online counterfeiting. 46 F.4th 614 (7th Cir. 2022). The Seventh Circuit found purposeful direction at Illinois where the defendant established an online storefront, indicated a willingness to sell to Illinois, and fulfilled an order by "intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624. The court refused to require more than a single sale of the allegedly infringing product to Illinois and further rejected the defendant's argument that a test sale should not suffice because it amounted to an effort by the plaintiff to manufacture jurisdiction, noting that "what matters is [the defendant's] structuring of its own activities so as to target the Illinois market," not the plaintiff's motivations in making the purchase. *Id.* at 624–25.

Here, Pit Viper has presented evidence that its investigator placed an order for the Counterfeit Product for shipment to an Illinois address, receiving a confirmation email shortly thereafter. But five days later, the investigator received notification that the order had been cancelled. While Bytebyte contends that the investigator cancelled the order, it presents no evidence to support this supposition, while Pit Viper presents declarations and supporting materials that suggest that Bytebyte cancelled the order, likely in an attempt to avoid the potential jurisdictional implications of fulfilling such an order. Pit Viper has also presented evidence of the extensive steps that Bytebyte would have had to take to establish an online storefront on Amazon that allows for shipment to Illinois. At this stage, Pit Viper need only make out a prima facie case of jurisdiction, and the Court must take all factual allegations in its

complaint as true unless refuted by Bytebyte and must resolve all factual conflicts in Pit Viper's favor. *Curry*, 949 F.3d at 392–93; *Felland*, 682 F.3d at 672. Using this standard, taken together, Pit Viper's evidence sufficiently demonstrates purposeful direction.[4] *See NBA Props.*, 46 F.4th at 625 ("Here, HANWJH shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its 'customers in Illinois and tell us, It was all their idea.'" (quoting *uBID, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010))); *Monster Energy Co.*, 136 F. Supp. 3d at 906 (defendants "expressly elected to do business with the residents of all fifty states, including Illinois," where they "intentionally created and operated commercial, fully interactive AliExpress Internet stores" and "affirmatively selected a shipping template to ship" products to Illinois); *see also Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277–78 (2d Cir. 2024) (the defendant's acceptance of orders with New York shipping addresses sufficed for jurisdictional purposes even though the defendant cancelled the orders and refunded the purchase price to the customer).

The Court also has no issue finding the remaining requirements for personal jurisdiction met. The contact at issue clearly relates to this suit. *See NBA Props.*, 46 F.4th at 625 ("This requirement is met when direct sales from the defendant in the forum state involve the infringing product."). And while Bytebyte is a foreign entity, courts have found "no unfairness in making a

---

[4] Pit Viper also argues that Bytebyte's sales of other products to Illinois support the exercise of personal jurisdiction in this case. While one court in this district has found personal jurisdiction over defendant e-commerce businesses where they sold non-accused goods in Illinois, *see Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 24 CV 607, 2024 WL 3338942, at *4 (N.D. Ill. July 9, 2024), the Court disagrees that specific jurisdiction can be founded on such unrelated contacts. *See Curry*, 949 F.3d at 400 ("The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be '*suit-related*'" (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014))); *see also Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *B.D. v. Samsung SDI Co.*, 91 F.4th 856, 863 (7th Cir. 2024) (sales of batteries other than the accused model did not relate to the alleged injury and so could not support specific personal jurisdiction); *Advanced Tactical*, 751 F.3d at 801 ("The only sales that would be relevant are those that were related to [the defendant's] allegedly unlawful activity.").

seller defend a suit in a state where it structures its business to 'easily serve the state's consumers.'" *Id.* at 627 (quoting *Curry*, 949 F.3d at 402). Here, Bytebyte has done just that, taking steps to make its products, including the Counterfeit Product at issue in this case, available to Illinois customers. Therefore, the Court finds it does not offend traditional notions of fair play and substantial justice for Bytebyte to defend against Pit Viper's claims in this forum. *See uBID, Inc.*, 623 F.3d at 433 ("There is no unfairness in requiring GoDaddy to defend that lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much."); *Hemi*, 622 F.3d at 760 ("Hemi wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure. There is nothing constitutionally unfair about allowing Illinois, a state with which Hemi has had sufficient minimum contacts, to exercise personal jurisdiction over Hemi.").

In summary, the Court finds that Pit Viper has established a prima facie case of personal jurisdiction over Bytebyte. Bytebyte structured its activities to target United States and Illinois consumers, and it initially accepted the test order with an Illinois shipping address. The Court cannot allow Bytebyte to avoid this Court's jurisdiction by apparently cancelling a test order for the Counterfeit Product five days after it was placed, particularly where Pit Viper's proffered evidence suggests that the cancellation occurred because Bytebyte realized that Pit Viper's investigator had purchased the Counterfeit Product in order to file suit against Bytebyte.

## II.     Bytebyte's Request for a More Definite Statement

Alternatively, Bytebyte asks that the Court order Pit Viper to provide a more definite statement in an amended complaint with more specific information about the acts that Bytebyte took that constitute trademark infringement and which of Pit Viper's trademarks Bytebyte allegedly infringed. Rule 12(e) permits a party to request a "more definite statement of a

pleading" if it is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) motions are appropriate when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Wright v. Vill. of Phoenix*, No. 97 C 8796, 2000 WL 246266, at *9 (N.D. Ill. Feb. 25, 2000) (quoting *Dimensions Med. Ctr., Ltd. v. Principal Fin. Grp., Ltd.*, No. 93 C 6264, 1995 WL 51586, at *3 (N.D. Ill. Feb. 6, 1995)). Rule 12(e) is "designed to strike at unintelligibility rather than want of detail." *Scholz Design, Inc. v. Buralli*, No. 01 C 3650, 2001 WL 1104647, at *4 (N.D. Ill. Sept. 18, 2001).

Here, Pit Viper has sufficiently provided Bytebyte with notice of the nature of its claim, with additional specificity provided through the jurisdictional discovery in which the parties engaged and Pit Viper's additional filings. Pit Viper has identified the trademarks it claims Bytebyte infringed, as well as the Counterfeit Product that allegedly infringed those trademarks. This suffices at the pleading stage to allow Bytebyte to formulate a response; "[a] full description of the facts that will prove the plaintiff's claim comes later." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (plaintiffs need only "to plead *claims* rather than facts corresponding to the elements of a legal theory"); *Remien v. EMC Corp.*, No. 04 C 3727, 2004 WL 2381876, at *2 (N.D. Ill. Oct. 19, 2004) ("Rule 12(e) motions do not function as substitutes for discovery, requiring a party to flesh out its preliminary assertions to the satisfaction of its opponent before the case can proceed out of the pleadings stage."). The Court therefore denies Bytebyte's request for a more definite statement.

## CONCLUSION

For the foregoing reasons, the Court denies Bytebyte's motion to dismiss or, in the alternative, for a more definite statement [82]. The Court grants Pit Viper's motion to strike portions of Defendant's reply [95].

Dated: December 9, 2024

_____
SARA L. ELLIS
United States District Judge

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUBIK'S BRAND, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 20-cv-5338 |
| | ) | |
| THE PARTNERSHIPS AND | ) | Judge John J. Tharp, Jr. |
| UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE A, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

"Once only seen in flea markets and sidewalk stalls, counterfeit products are now prevalent in the virtual world."[1] With the rise of online counterfeit products, cases aiming to stem their tide have become prevalent in this district. Seeking to abate online sales of counterfeit Rubik's products, Plaintiff Rubik's Brand, Ltd. ("Rubik's") sued 676 online sellers for trademark infringement under the Lanham Act and the Illinois Deceptive Trade Practices Act. Following this Court's issuance of a preliminary injunction, one of the defendants, known by the seller alias "Yoyoly," has moved to dismiss this claim for lack of personal jurisdiction, improper service of process, damage to the public interest, and improper restraint on account. Finding the issue of personal jurisdiction dispositive, Yoyoly's motion to dismiss is granted.

---

[1] *About Online Counterfeiting*, INT'L ANTI-COUNTERFEITING COALITION (last visited Feb. 25, 2021), www.iacc.org/online-initiatives/about.

**BACKGROUND[2]**

Online counterfeiting cases in this district typically follow the same life cycle: plaintiffs file an *ex parte* temporary restraining order, seeking expedited discovery on the defendants' identities as well as a freeze on their online marketplace platforms and corresponding funds. After the court grants the temporary restraining order and, usually, an extension for another 14-day period, plaintiffs move for a preliminary injunction, and finally, a default judgment. Along the way, some original defendants are voluntarily dismissed (presumably on the basis of settlements), new defendants may be added, and a default judgment is ultimately entered as to defendants who have not been dismissed from the case. Because the vast majority, if not all, of the defendants are located abroad, the initial proceedings are *ex parte*, and service by electronic means is usually permitted, it is rare for defendants to appear and contest the claims asserted in these cases.

This is one of those rare cases. Rubik's filed this case on September 10, 2020, alleging that hundreds of defendants, Yoyoly among them, were selling unauthorized, counterfeit Rubik's products on their online marketplace platforms. ECF No. 1. This Court granted Rubik's initial motion for leave to file the initial pleadings and related documents under seal, which was requested to prevent Defendants from prematurely destroying relevant evidence and transferring assets prior to the entry of the temporary restraining order. ECF No. 9. On September 21, 2020, this Court granted Rubik's *ex parte* motion for a temporary restraining order, allowing for expedited discovery, disabling the marketplace accounts, and freezing funds connected to those accounts. ECF No. 17. The Court concurrently granted Rubik's motion for electronic service of process. *Id.* After extending the temporary restraining order, the Court unsealed the pleadings and granted

---

[2] For the purposes of this motion, the court accepts all of the plaintiffs' factual allegations as true and draws all reasonable inferences in their favor.

2

Rubik's motion for a preliminary injunction. ECF No. 31.[3] Yoyoly now moves to dismiss the claim against it in its entirety.

## DISCUSSION

Yoyoly argues that this Court cannot exercise personal jurisdiction over it and that it should accordingly be dismissed from this action. Plaintiffs are not required to set out facts alleging personal jurisdiction in the complaint. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). If a defendant moves to dismiss on personal jurisdiction grounds, however, the burden shifts to the plaintiff to demonstrate that personal jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court relies on written materials in its determination, without an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing of personal jurisdiction. *Id.* at 782.

"In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Because the Lanham Act does not allow for nationwide service of process, the Court looks to Illinois's long-arm statute to determine the reach of personal jurisdiction. Under the Illinois long-arm statute, personal jurisdiction is coextensive with the Illinois Constitution and the Federal Constitution. *Id.* The Seventh Circuit recognizes no meaningful difference between the two, and therefore this Court may exercise personal jurisdiction as long as doing so does not violate federal due process. *Id.* Specifically, the Court must find that it has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

---

[3] Shortly thereafter, the case was reassigned to this Court. ECF No. 40.

3

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A plaintiff may choose to establish either general or specific personal jurisdiction over a defendant. General jurisdiction exists only where a defendant is "at home," and Rubik's rightly does not attempt to argue for its application here. By contrast, specific jurisdiction exists where (1) "the defendant . . . purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state"; (2) the plaintiff's injury stemmed from the "defendant's forum-related activities"; and (3) the exercise of personal jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Notably, the Seventh Circuit has declined to formulate a special jurisdictional test for internet-based cases, like this one. *See Curry v. Rev. Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020).

Here, Yoyoly argues that this Court does not have personal jurisdiction over it because it is a China-based online store and has never sold any products to Illinois residents. Rubik's counters that personal jurisdiction over Yoyoly is proper because Yoyoly was "ready, willing, and able" to ship its products to Illinois, as proven by screenshots of its Amazon order page. The screenshots depict an order—at the stage just before it is entered—to buy Yoyoly's Smart Rubik's Cube. It shows a shipping address in Illinois and reflects that the only remaining step to enter the order is clicking the "Place Your Order" link. Yoyoly disputes the evidentiary value of the screenshot, asserting that it "firmly believes that before clicking the 'plan [sic] your order' button, the plaintiff could not verify and prove whether the relevant products could be sold or offered to be sold to Illinois." Mot. to Dismiss at 3, ECF No. 50. According to Yoyoly, in other words, the screenshot doesn't prove that the order would have been accepted and actually fulfilled.

4

This is an evidentiary dispute, but not one that requires a hearing to address. Even accepting Rubik's premise that the screenshot shows that an order ***could*** be placed by an Illinoisan, displaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois. That alone cannot confer personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an interactive website . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."). In *Advanced Tactical*, the Seventh Circuit rejected the proposition that an interactive website available to Indiana customers, even accompanied by two email blasts to a list including Indiana residents and several fulfilled product orders to Indiana residents, sufficed for personal jurisdiction. *Id.* at 801. Even though the defendant's conduct reached a substantial number of Indiana residents, the court still found that its website and email blasts were impermissible bases for jurisdiction because neither evinced that the defendant had purposefully targeted or exploited the Indiana market in some way, as is required to establish minimum contacts. *Id.* at 802-03. Rubik's brief does not cite, much less address, *Advanced Tactical.*

Rubik's relies instead on *Illinois v. Hemi Group*, 622 F.3d 754, 758 (7th Cir. 2010), in fashioning its personal jurisdiction argument, specifically for its language that the defendant seller "stood ready and willing to do business with Illinois residents" through its interactive website. But *Hemi* does not stand for the proposition that maintaining an interactive website on which a forum resident can place an order is sufficient, standing alone, to establish personal jurisdiction over the seller. The *Hemi* court made that point explicitly: "[W]e affirm the district court's conclusion that Hemi is subject to personal jurisdiction in Illinois, not merely because it operated several 'interactive' websites" but because it had sufficient minimum contacts with the state. *Id.*

at 760. The court found that Hemi's sales of 300 packs of cigarettes (a heavily regulated product) to an Illinois resident, combined with its exclusion of New York state from its customer pool (evincing that it made an affirmative choice to sell to other states), justified the exercise of personal jurisdiction in an Illinois court.

*Hemi* is just one in a line of Seventh Circuit cases confirming that the maintenance of an interactive website, without more, is insufficient to vest a court with personal jurisdiction. *See Curry*, 949 F.3d at 400 ("Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state."); *Advanced Tactical*, 751 F.3d at 802 (declining to exercise personal jurisdiction because defendant seller had not targeted Indiana "beyond simply operating an interactive website accessible in the forum state and sending emails" to potential residents); *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market."); *Mobile Anesthesiologists*, 623 F.3d at 446 (a plaintiff cannot establish personal jurisdiction "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website").

To be sure, evidence of extensive sales through an interactive website may suffice to show that a defendant has targeted the jurisdiction at issue, as in *Curry*, where the defendant conceded that it had made sales to 767 customers through multiple interactive websites (its own- and third-party sites). 949 F.3d at 399. But a "miniscule" number of transactions won't do. In *be2 LLC*, the Seventh Circuit found evidence that 20 Illinois residents had opened accounts on the defendant's interactive website to be inadequate given the miniscule number of customers and the absence of

6

evidence of further interaction with them. 642 F.3d at 559. And, particularly apropos here, in *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019), the Seventh Circuit held that personal jurisdiction was lacking where a sale had been made, but it was "a single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing jurisdiction over the defendants."

Here, we don't have even that much. Yoyoly has averred that it has made no sales to Illinois residents[4] and the plaintiff has provided no evidence to rebut that claim. The single episode on which Rubik's supports its personal jurisdiction claim documents not a sale but—at most—the possibility that a sale could be made in Illinois, based on a screenshot taken by the plaintiff not for a commercial purpose but "for the exclusive purpose of establishing jurisdiction over the defendants." So far as the information presented to the Court establishes, no Illinois resident has ever purchased any product (much less a Rubik's knock-off) from the Yoyoly website. Indeed, so far as the record shows, no Illinoisan has ever even ***viewed*** the Yoyoly website with an eye to purchasing a product offered there. That an Illinoisan might someday find Yoyoly's website and decide to purchase a counterfeit Rubik's product from the site simply does not suffice to vest the Court with personal jurisdiction over Yoyoly.

Rubik's argues, however, that displaying an infringing product for sale is a tort and a single tortious act in Illinois empowers this Court to exercise personal jurisdiction over a defendant. But the Seventh Circuit appears to have rejected the proposition that "any plaintiff may hale any defendant into court . . . where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Mobile Anesthesiologists*, 623

---

[4] Reply at 2, ECF No. 63 ("[T]he defendant searched the sales records of related products, and found no products were sold to Illinois, and the defendant's sales of related products were zero.")

7

F.3d at 445. Rather, "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Id*. As discussed, Rubik's has not made that showing here. And in any event, the cases that Rubik's cites for this proposition all involve some conduct beyond the mere display of an infringing product for sale on a website accessible in Illinois. *See Monster Energy v. Wensheng*, 136 F. Supp. 3d 987, 906 (N.D. Ill. 2015) (personal jurisdiction was proper because, though a counterfeit product was never sold to Illinois, at least three Illinois residents attempted to purchase them and one Illinois resident communicated with defendant regarding payment); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, No. 10-CV-4535, 2010 WL 4877708, at *1, 7 (N.D. Ill. Nov. 23, 2010) (finding personal jurisdiction where defendant sold infringing dental products through its website to Illinois consumers, deriving 1.2% of its gross revenue from Illinois); *Store Décor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd.*, 767 F. Supp. 181, 183-84 (N.D. Ill. 1991) (personal jurisdiction was appropriate where defendant sold $400 worth of infringing products in Illinois).

It is true that other district courts have come out differently on this question, in large part because their guiding case law does not require more than the maintenance of an interactive website to establish personal jurisdiction. *See WowWee Group Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019) (finding personal jurisdiction over defendant online merchants because "the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers"); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 293 F. Supp. 3d 232, 238 (D. Me. 2017), *aff'd*, 905 F.3d 1, 4 (1st Cir. 2018) (personal jurisdiction existed over a German online service provider for operating an interactive website where the First Circuit had not decided a case on the issue). That is not the

8

situation in the Seventh Circuit, where the case law has been clear that more than an interactive website is needed.

At bottom, Rubik's argument boils down to a contention that because Yoyoly maintains a website that an Illinoisan can access to purchase counterfeit Rubik's products, it has sufficient contacts with Illinois to satisfy due process. But the Seventh Circuit has not extended specific personal jurisdiction quite that far; maintenance of an interactive website, unaccompanied by evidence of any sales or other activity targeting Illinois, does not establish that Yoyoly has sufficient minimum contacts with Illinois to support the exercise of personal jurisdiction.

*    *    *

Accordingly, Yoyoly's motion to dismiss is granted with prejudice and Yoyoly is dismissed from this case.

Date: March 4, 2021

John J. Tharp, Jr.
United States District Judge

9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COLLECTANEA J. LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 3821 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Collectanea J. Limited ("Collectanea") sued 190 entities listed in an amended

Schedule A to its complaint for infringing a copyrighted photograph that depicts the steps of

beading a necklace, as well as 490 copyrighted photographs that depict beaded jewelry

(collectively, the "Beadnova Works"). The Court granted Collectanea's motion for a temporary

restraining order ("TRO") on May 24, 2024, Doc. 17, and entered a preliminary injunction

against Defendants on June 20, 2024, Doc. 33. Defendants ANGGREK K-US, Bnjni-US,

efancy, Cxfutai-US, Fchecy-US, FUGACAL, Henzhtcu-US, hongzhizhi-US, Jadpes mg, Jazutaq,

kearabq, KnowStore, Liyust-US, Mirandalong-US, Mseinope-US, Naroote, nusind, Prexey,

Pulamuse-US, Rutiy, Senhee, Sunxihui-US, Taiddad, Vinnat us, Wandisy, Youheje-US,

youthink us, Zaltgag-US, Zhoubinshop-US, accessories_mall, coolshopping888, EOTVIA

STORE, Fanhongtan, Hengxinshuo, Mengmengyu, Sudi Store, and TRF STORE (collectively,

the "No Sale Defendants") filed a motion to dismiss for lack of personal jurisdiction and

improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3).[1] They, along

---

[1] Collectanea argued in its response that the Court should not consider the motion to dismiss because the No Sale Defendants had not filed their affiliate disclosures as required by Local Rule 3.2 at the time

with Defendants Zeoo, Suntaskw, Salmue, jakuer-US, Cimennn, Canyita, Alucy, Yokuna, Blurte432, Rotekt1740, Qkissi, Zhihuida, and DROLE Life (collectively, the "Answering Defendants"), also filed a motion to dissolve the preliminary injunction. The Court finds that the Court does not have personal jurisdiction over the No Sale Defendants, excluding efancy, and so dismisses Collectanea's claims against these defendants without prejudice. The Court also finds that Collectanea's delay in pursuing its claims and preliminary injunctive relief against efancy and the Answering Defendants precludes a finding of irreparable harm and so dissolves the preliminary injunction entered against them.

## BACKGROUND[2]

Collectanea has registered the Beadnova Works, consisting of a single image (the "Six Steps Photo") and a collective series of 490 photographs (the "Group Series"), with the United States Copyright Office. The Beadnova Works depict six steps for making a bracelet or necklace with beads, bead wire, and polyester cord, with the Group Series also including photographs of

---

Collectanea filed its response to the motion to dismiss. The No Sale Defendants subsequently filed the required disclosures. *See* Doc. 108. Over two weeks later, and only days before the Court had indicated it would rule on the No Sale Defendants' motion, Collectanea filed a motion to compel complete affiliate disclosures and for leave to file a sur-reply in response to the motion to dismiss [117].

Although the No Sale Defendants should have filed their disclosures at the time counsel initially appeared in the case, the Court does not find that the belated filing has prejudiced Collectanea or otherwise warrants denial of the motion to dismiss. That said, the Court agrees with Collectanea that the No Sale Defendants' disclosure does not comply with Local Rule 3.2(a): the No Sale Defendants' notification of affiliates focuses only on publicly owned affiliates, while the rules require notification of any affiliates regardless of their ownership structure. *See* N.D. Ill. LR 3.2(a) ("For purposes of this rule, 'affiliate' is defined as any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party."). Therefore, the Court grants Collectanea's motion to compel complete affiliate disclosures and orders the No Sale Defendants to file an amended notification of affiliates that complies with Local Rule 3.2. The Court also allows Collectanea to file its sur-reply and considers the arguments made therein in deciding the motion to dismiss.

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Collectanea's favor. *Id.* at 782–83.

beaded jewelry. Collectanea registered the Six Steps Photo on May 22, 2023, claiming a date of publication of August 31, 2016. Collectanea also registered the Group Series on May 22, 2023, with a publication date range of August 22, 2017 to December 9, 2017. In both registrations, Collectanea claimed authorship as an "employer for hire." Doc. 1-1 at 2; Doc. 1-2 at 2.

The No Sale and Answering Defendants are storefronts that offer the Accused Products for sale on various e-commerce platforms, including Amazon.com, eBay.com, and Walmart.com. Each platform assigns unique identification numbers to the Accused Product listings (the "Listing IDs"). Shenzhen Puweiya Technology Co., Ltd. ("Puweiya"), based in China, operates all the No Sale and Answering Defendants but DROLE Life. Yiwu City Zhuozhuang E-Commerce Co., Ltd., also based in China, operates DROLE Life.

In its complaint, Collectanea asserted that the No Sale and Answering Defendants target their business activities toward United States consumers, including those in Illinois, and, on information and belief, had sold and shipped products that infringe the Beadnova Works to Illinois. Collectanea provided screenshot evidence showing that each of the No Sale and Answering Defendants was ready, willing, and able to ship the Accused Products to Illinois. Collectanea did not provide evidence, however, that it had purchased the Accused Products from the No Sale or Answering Defendants. While the Answering Defendants acknowledge having made sales to the United States and so consent to jurisdiction in Illinois, the No Sale Defendants present evidence that they have not sold the Accused Products to the United States. Jazutaq and Sunxihui-US admit to each making two sales of the Accused Products to Canada, however. In response to the motion to dismiss, Collectanea submitted Amazon sales data for efancy that shows that efancy made thirteen sales of the Accused Products, totaling $123.03. Collectanea later obtained more detailed information from Amazon about these sales, which shows that

3

efancy shipped twelve of these sales to the United States, though none to Illinois. The records the No Sale Defendants produced to show that efancy did not sell the Accused Products use a different Listing ID than that identified by Collectanea when it named efancy as a Defendant and in responding to this motion. *Compare* Doc. 75-1 at 16 (the No Sale Defendants' record using Listing ID "BOC3X32TZK"), *with* Doc. 8 at 37 (Schedule A identifying efancy as defendant number 37 with a store url containing the Listing ID "B0C3X19BVB"); Doc. 103-1 at 5 (Amazon record for Listing ID "B0C3X19BVB").

The Answering Defendants, excepting DROLE Life, sold 303 Accused Products, totaling $2,837.90, in the United States, which includes orders that they refunded or that buyers later canceled. DROLE Life sold 4,689 Accused Products, totaling $31,850.70. The preliminary injunction has restrained approximately $1,569,016.43 of the No Sale and Answering Defendants' assets.

**ANALYSIS**

I.      **Motion to Dismiss**

The No Sale Defendants have moved to dismiss Collectanea's complaint, contending that the Court lacks personal jurisdiction over them. When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, as it does here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in

4

favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).  However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  The Copyright Act does not authorize nationwide service of process, and so the Court may exercise jurisdiction over the No Sale Defendants only if authorized both by the United States Constitution and Illinois law.  *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015).  The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions.  *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)).  This standard effectively merges the federal constitutional and state statutory inquiries.  *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices.  *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction may be either general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Neither side argues that the Court can exercise general jurisdiction over the No Sale Defendants, so the Court focuses on the specific jurisdiction analysis. Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[T]he suit must arise out of or relate to the defendant's contacts with the forum," meaning "there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). Here, to establish minimum contacts that create specific personal jurisdiction, the No Sale Defendants must have purposefully directed their activities at Illinois or purposefully availed themselves of the privilege of conducting business in

6

Illinois, and Collectanea's alleged injury must arise out of or relate to the No Sale Defendants' forum-related activities. *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

In its complaint, Collectanea alleged that the No Sale Defendants hold themselves out as willing and able to sell the Accused Products to Illinois and that, on information and belief, had made sales to customers in Illinois. The No Sale Defendants submitted evidence that they have not sold any Accused Products in the United States. Collectanea only provided evidence to the contrary with respect to efancy, contending that Amazon's records show that efancy made thirteen sales of the Accused Products, although Collectanea acknowledges that it does not have information as to the location of the customers who received these products.

Turning to the parties' arguments, initially, the Court rejects Collectanea's argument that the Court's issuance of the TRO and preliminary injunction order, both of which it granted without adversarial presentation, *see* Doc. 17 at 1; Doc. 33 at 2, compel the conclusion that the Court has jurisdiction over all named Defendants. Because the No Sale Defendants have challenged the Court's jurisdiction over them and presented evidence calling into question Collectanea's jurisdictional allegations, the Court cannot simply accept Collectanea's allegations, which conflict with the No Sale Defendants' evidence, as established. *Matlin*, 921 F.3d at 705. For that reason, the allegations that the No Sale Defendants had made sales to Illinois, now challenged with contradictory evidence, do not require a finding of personal jurisdiction; instead, Collectanea must submit "affirmative evidence supporting the court's exercise of jurisdiction." *Id.*

The Court also rejects Collectanea's reading of *NBA Properties, Inc. v. HANWJH*, in which the Seventh Circuit found personal jurisdiction proper where an online store not only asserted a willingness to ship goods to Illinois but also shipped the allegedly infringing product

7

to an Illinois customer. 46 F.4th 614, 624 (7th Cir. 2022). According to Collectanea, in *NBA Properties*, the Seventh Circuit recognized that a defendant need not make the sale for jurisdiction to lie because it noted that "merely listing for sale a product that is likely to cause confusion violates the Lanham Act." *Id.* at 626 n.18. But this footnote addressing the elements of a trademark infringement claim had no impact on the Seventh Circuit's conclusion that the defendant purposefully directed its activities at Illinois by shipping the allegedly infringing product to Illinois. *See id.* at 625 ("HANWJH knew it could be subject to the jurisdiction of Illinois when it shipped a counterfeit product to the forum."). District courts have similarly required evidence of at least one sale to Illinois to show the required minimum contacts. *See, e.g.*, *Roadget Bus. PTE. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 23 CV 16262, 2024 WL 4333289, at *3 (N.D. Ill. Sept. 27, 2024) ("Based on the unrefuted evidence before the Court, defendant no. 28 has done nothing more than *offer* its products for sale to residents of Illinois through its website – which is patently insufficient."); *Roblox Corp. v. Bigfinz*, No. 23 C 5346, 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023) (collecting cases requiring an online retailer to have "sold at least one product in Illinois for personal jurisdiction to exist" in an infringement case); *see also Rubik's Brank, Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20-CV-5338, 2021 WL 825668, at *3 (N.D. Ill. Mar. 4, 2020) ("[D]isplaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois. That alone cannot confer personal jurisdiction."). The Court agrees that, under *NBA Properties*, a defendant must have shipped at least one product to Illinois to have purposefully directed its activities here. *See NBA Props.*, 46 F.4th at 625.

8

Faced with the evidence that the No Sale Defendants did not make any sales to Illinois, Collectanea argues that the Court should treat the No Sale Defendants and the Answering Defendants as one operation and impute the Answering Defendants' Illinois sales to the No Sale Defendants. Collectanea bases this argument on the No Sale and Answering Defendants' acknowledgment that Puweiya operates all but one of their respective storefronts. Even if the Court treats Puweiya as the parent of the No Sale and Answering Defendants, as the Court previously explained in denying Collectanea's request for jurisdictional discovery, *see* Doc. 116 at 3, the Court cannot impute the Answering Defendants' sales to the No Sale Defendants solely on the basis that Puweiya operates all of them. *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20 C 4806, 2022 WL 2208827, at *2 (N.D. Ill. June 21, 2022) (allegations of affiliation or association with other defendants who made sales in Illinois through, for example, unity of ownership "alone is insufficient to demonstrate that one entity is the alter ego of another"); *Flaccus v. Advanced Disposal Servs., Inc.*, No. CV 17-4808, 2018 WL 3731095, at *4 (E.D. Pa. Aug. 6, 2018) ("Plaintiff fails to cite any authority—binding or persuasive—which supports the lateral imputation of contacts from one corporate subsidiary to another, solely on the basis of the siblings' relationships with their shared parent.").

The Court also disagrees with Collectanea that it can exercise jurisdiction over the No Sale Defendants because they generally conduct business in Illinois. Although one court in this district has found personal jurisdiction over defendant e-commerce businesses where they sold non-accused goods in Illinois, *see Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 24 CV 607, 2024 WL 3338942, at *4 (N.D. Ill. July 9, 2024), the Court disagrees that specific jurisdiction can be

9

founded on such unrelated contacts. Specific jurisdiction requires that the "defendant's minimum contacts with the forum state be '*suit-related*,'" *Curry*, 929 F.3d at 400 (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)), and sales of non-accused goods do not relate to the specific claims at issue, *see Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *B.D. v. Samsung SDI Co.*, 91 F.4th 856, 863 (7th Cir. 2024) (sales of batteries other than the accused model did not relate to the alleged injury and so could not support specific personal jurisdiction); *Advanced Tactical*, 751 F.3d at 801 ("The only sales that would be relevant are those that were related to [the defendant's] allegedly unlawful activity.").

Finally, Collectanea asserts that Rule 4(k)(2) provides a basis for exercising jurisdiction over the No Sale Defendants. Rule 4(k)(2) provides courts with the right to exercise personal jurisdiction over "persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). To establish jurisdiction under Rule 4(k)(2), the plaintiff must show: "(1) the plaintiff's claims [are] based on federal law; (2) no state could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction [is] consistent with the laws of the United States; and (4) the exercise of jurisdiction [is] consistent with the Constitution." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

The parties do not dispute that federal law, namely the Copyright Act, underlies Collectanea's claims. The No Sale Defendants do not identify any state that can exercise jurisdiction over them. *Cf. ISI Int'l*, 256 F.3d at 552 ("A defendant who wants to preclude use of

10

Rule 4(k)(2) has only to name some other state in which the suit could proceed.").  As for

whether exercise of jurisdiction over the No Sale Defendants is consistent with the Constitution,

the Court must consider "a defendant's contacts with the nation as a whole." *Shenzhen Wanfan

Tech. Co. v. Orbital Structures Pty Ltd.*, No. 23-CV-02330, 2024 WL 325339, at *5 (N.D. Ill.

Jan. 29, 2024).  "While Rule 4(k)(2) applies a broader geographic standard for which contacts

are relevant, the minimum in the 'minimum contacts' that are constitutionally sufficient to

support general or specific jurisdiction is the same." *Abelesz v. OTP Bank*, 692 F.3d 638, 660

(7th Cir. 2012).  Here, Collectanea has only provided evidence regarding efancy's sales to the

United States.  Without any evidence of sales of the Accused Products in the United States as to

the remaining No Sale Defendants, then, Collectanea has not carried its burden to show that the

Court can exercise jurisdiction over these defendants under Rule 4(k)(2).  *See Reimer Express*,

230 F.3d at 946 (declining to exercise jurisdiction under Rule 4(k)(2) where the plaintiff "has not

brought to [the court's] attention any contacts that [defendant] itself had with the United States

other than those with Illinois").  Because Collectanea has provided evidence that efancy sold the

Accused Products in the United States, but efancy has refused to identify any other state in which

it is subject to jurisdiction, the Court finds it appropriate to exercise jurisdiction over efancy

under Rule 4(k)(2).  *See ISI Int'l*, 256 F.3d at 552 ("If, however, the defendant contends that he

cannot be sued in the forum state and refuses to identify any other where suit is possible, then the

federal court is entitled to use Rule 4(k)(2).").

The Court thus dismisses all the No Sale Defendants but efancy for lack of personal

jurisdiction.  As for efancy, which the Court finds subject to personal jurisdiction in Illinois

based on Rule 4(k)(2), its improper venue argument fails.  Under 28 U.S.C. § 1391(c)(3), a

"defendant not resident in the United States may be sued in any judicial district," meaning that Collectanea may proceed against it here.

## II.     Motion to Dissolve the Preliminary Injunction

The Court next turns to the motion to dissolve or modify the preliminary injunction, addressing it only as it relates to efancy and the Answering Defendants (collectively, the "Injunction Defendants").  Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief.  *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023).  If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted).  "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009).  The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win

the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364.

Finally, the Court considers whether the injunction is in the public interest, which includes

considering any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068

(7th Cir. 2018).

Although the Court has already granted Collectanea a preliminary injunction, it did so on

an *ex parte* basis under circumstances that closely resembled a TRO and without the benefit of

adversarial briefing. Thus, Collectanea bears the burden of persuading the Court that it should

not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, No. 21 C 973, 2021 WL

4498654, at \*3 n.3 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a

temporary injunction is issued under circumstances resembling a temporary restraining order, the

burden of proof may be on the party seeking the order.")).[3]

The Injunction Defendants contend that Collectanea has not shown a strong likelihood of

success and cannot show irreparable harm.[4] Alternatively, they argue that the Court should

modify the asset restraint. The Court addresses these arguments in turn.

A.      **Likelihood of Success**

To meet the likelihood of success requirement, the plaintiff must present a "strong"

showing, which "normally includes a demonstration of how the applicant proposes to prove the

---

[3] For this reason, the Court does not find Collectanea's arguments about the untimely nature of the
Injunction Defendants' contentions or the scope of what the Injunction Defendants can challenge
persuasive.

[4] The No Sale Defendants also raised the argument that the Court should dissolve the preliminary
injunction because it does not have jurisdiction over them. As the Court has already found it appropriate
to dismiss the No Sale Defendants except for efancy for lack of personal jurisdiction, the Court does not
address this argument further. And because the No Sale and Answering Defendants only make the
argument about the validity of service of process in a footnote, the Court does not entertain that argument
as a basis for dissolving the injunction. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013)
("[A] party can waive an argument by presenting it only in an undeveloped footnote."); *Schrock v.
Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 n.1 (N.D. Ill. 2010) ("Undeveloped arguments and
arguments raised in footnotes are waived.").

key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The Injunction Defendants challenge only Collectanea's ability to succeed on the first element.

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)). But this presumption of validity applies only to those certificates "made before or within five years after first publication of the work," with "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter . . . within the discretion of the court." 17 U.S.C. § 410(c). Because Collectanea registered the Beadnova Works over five years after their first publication, the presumption of validity does not automatically attach. *See* 17 U.S.C. § 410(c).

While acknowledging that the presumption of validity does not attach, the Injunction Defendants fail to meaningfully challenge the validity of the copyrights. They argue that the certificates do not identify the actual author, and that Collectanea's legal representative's declaration includes a scrivener's error as to the date of the Group Series' registration and does not explain the legal basis for his role as Collectanea's alleged legal representative. But the Injunction Defendants do not explain why the certificates, which identify the Beadnova Works as works for hire, need to identify the actual author, given that "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author." 17 U.S.C. § 201(b). The Court views the scrivener's error as irrelevant, given that Collectanea attached the certificates of registration and the complaint contains the correct dates. Finally, the

14

Injunction Defendants have failed to explain how the legal status of the declarant used by Collectanea in support of the TRO and preliminary injunction motions affects the validity of the copyrights. Because the Injunction Defendants did not present any argument calling into question the validity of the copyrights, the Court at this stage continues to find it appropriate to treat the certificates of registration as prima facie evidence of copyright validity, particularly given the low standard required for originality. *See LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 596 (D. Conn. 2019) (collecting cases finding certificates of registration issued more than five years after the date of first publication to constitute prima facie evidence of copyright validity); *see also Feist*, 499 U.S. at 345 ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." (citations omitted)).

## B. Irreparable Harm

To maintain the preliminary injunction, Collectanea also must show irreparable harm. Although in copyright cases the Supreme Court "made clear that there is no . . . presumption" of irreparable harm simply by showing the defendant infringed a copyrighted work, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), "it is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm," *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)). "[I]f a plaintiff is more likely to win [on the merits of its case], the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364.

15

The Injunction Defendants argue that Collectanea cannot show irreparable harm because it delayed in filing suit against them. As the Seventh Circuit has noted, the "irreparable harm [inquiry] takes into account how urgent the need for equitable relief really is." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Here, the Injunction Defendants point to the printouts that Collectanea included in connection with its request for a TRO, which show that Collectanea found the Injunction Defendants' allegedly infringing products as early as June 2023, and, in the case of DROLE Life, in November 2022. Despite this, Collectanea delayed in raising claims against the Injunction Defendants until May 2024. Collectanea does not provide any explanation for this delay, instead merely arguing that the dates that it gathered evidence should not be dispositive of its entitlement to injunctive relief. But Collectanea's actions smell of gamesmanship, particularly because it originally only filed suit against nine defendants and then increased that number to 190 after seeing the judge to whom its case was assigned. *Compare* Doc. 5 (initial Schedule A filed on May 10, 2024, listing nine defendants selling products on Walmart.com), *with* Doc. 8 (amended schedule A filed on May 16, 2024, listing 190 defendants selling products on various e-commerce platforms). Because Collectanea has failed to provide an explanation justifying its delay in filing despite knowing of the alleged infringement by the Injunction Defendants almost eleven months before filing suit, the Court finds that the delay undermines Collectanea's claims of irreparable harm. *See Int'l Star Registry of Ill., Ltd. v. RGIFTS Ltd.*, No. 21 CV 6446, 2024 WL 3398333, at *4 (N.D. Ill. July 12, 2024) (two-year delay in seeking injunctive relief after filing action precluded finding of irreparable harm where the plaintiff offered no explanation for its delay); *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018) (eighteen-month delay in seeking relief defeated claim of irreparable harm, noting that "[s]everal courts of appeals have affirmed

denials (or reversed grants) of preliminary injunctions because of much shorter delays in filing suit" and that "[t]he longest such delay ever permitted by the Seventh Circuit appear[ed] to be nine months" (collecting cases)); *Ixmation, Inc v. Switch Bulb Co.*, No. 14 C 6993, 2014 WL 5420273, at *7–8 (N.D. Ill. Oct. 23, 2014) (four-and-a-half month delay precluded finding of irreparable harm); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 441 (E.D.N.Y. 2013) (five-month delay in seeking preliminary injunction after filing suit indicated that the plaintiff faced no threat of irreparable harm because it "undermine[d] the sense of urgency that typically accompanies a motion for preliminary injunction").[5]  Given the lack of irreparable harm, then, the Court finds it appropriate to dissolve the preliminary injunction as to the Injunction Defendants.[6]  *See Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 294 (7th Cir. 1997) (affirming the denial of a preliminary injunction because the plaintiff "ha[d] not demonstrated that [she] will suffer 'irreparable harm' by the denial of this injunction").

## CONCLUSION

For the foregoing reasons, the Court grants the No Sale Defendants' motion to dismiss [75], except as to Defendant efancy.  The Court grants the Injunction Defendants' motion to dissolve or modify the preliminary injunction [76].  The Court dismisses Collectanea's claims against the No Sale Defendants, except for efancy, without prejudice for lack of personal jurisdiction.  The Court dissolves the preliminary injunction as to the Injunction Defendants.

---

[5] Collectanea attempts to argue that the delay cannot defeat irreparable harm because the Injunction Defendants have not shown that they detrimentally relied on the delay. *See* Doc. 104 at 8 (collecting cases).  But the Court respectfully disagrees with those decisions on which Collectanea relies that have factored detrimental reliance into the irreparable harm analysis because, as the *Redbox* court noted, "whether the *defendant* has detrimentally relied on a delay does not affect whether the *plaintiff* has suffered irreparable harm." *Redbox*, 310 F. Supp. 3d at 953.

[6] Because the Court dissolves the preliminary injunction against the Injunction Defendants, the Court need not address their alternative arguments as to modification of the asset restraint and an increase in the bond amount.

The Court grants Collectanea's opposed motion to compel complete affiliate disclosures and for leave to file a sur-reply [117]. Collectanea should file its proposed sur-reply [117-3] as a separate document on the docket. The Court orders the No Sale Defendants to file amended affiliate disclosures that comply with Local Rule 3.2 by November 8, 2024.

Dated: October 29, 2024

SARA L. ELLIS
United States District Judge

18

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 24 C 12487 |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, | ) | Judge Charles P. Kocoras |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | | |

## ORDER

Defendant JINNAN-US's motion to dismiss [85] is denied.  See Statement.

## STATEMENT

This case arises out of the alleged infringement of Plaintiff's trademarks by over 80 defendants, including Defendant A3K19X9DNOLWWZ ("JINNAN-US").  Before the Court is JINNAN-US's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and improper joinder.

The following facts come from the Complaint and are assumed true for the purposes of this motion.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).  The Court accepts as true well-pleaded facts and draws all reasonable inferences in Plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Plaintiff is the owner of Milwaukee Electric Tool Corporation ("Milwaukee"), a company that develops, manufactures, and markets power tools. Plaintiff owns various registered trademarks in connection with its business. Plaintiff's trademarks are distinctive and used to identify its merchandise as authentic products.

Defendants, including JINNAN-US, are international entities that engage in the business of selling counterfeit Milwaukee products to consumers via interactive commercial websites and online marketplaces such as Amazon, iOffer, and Temu. Defendants' business extends across the United States, including here in Illinois. Defendants use the Milwaukee trademarks for the advertisement, distribution, offering for sale, and sale of their counterfeit products.

Defendants design their online stores to appear as though they are selling genuine Milwaukee products. The stores often contain images and designs that could lead a consumer to believe that they are purchasing products from an authorized website. Defendants also use Milwaukee trademarks in the content and meta tags of their website to attract traffic to their website. Plaintiff emphasizes that it has not licensed or authorized Defendants to use Milwaukee trademarks and that none of the Defendants are authorized retailers of Milwaukee tool products.

To protect its brand, Plaintiff filed this suit against 84 defendants alleging: (1) federal trademark infringement and counterfeiting; (2) false designation of origin; and (3) violation of the Illinois Uniform Deceptive Trade Practices Act. Defendant JINNAN-US moves to dismiss the claims against it, contending that the Complaint fails

2

to attribute any unlawful conduct specifically to JINNAN-US and that Plaintiff improperly joined the parties in this action.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the Complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotations omitted).

## DISCUSSION

### I. Sufficient Pleading under F.R.C.P. 8(a)

JINNAN-US first argues that Milwaukee failed to meaningfully differentiate among the Defendants in its Complaint, leading to confusion as to which claims pertain to which Defendant. Put differently, JINNAN-US takes issue with Plaintiff's group pleading. *See Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 997 (N.D. Ill. 2024) ("Group pleading, in which a plaintiff refers to a collective group of defendants as opposed to specifically identifying individual action, can run afoul of these pleading requirements.") (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

Rule 8(a) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the. . .

3

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The key to satisfying Rule 8 is that [a plaintiff] "put[s] the defendants on notice of what exactly they might have done to violate [its] rights." *Kuri v. City of Chicago*, 2014 WL 114283, at *7 (N.D. Ill. 2014). Because the Complaint fails to tie any of Plaintiff's trademarks to JINNAN-US specifically, JINNAN-US argues that the Complaint fails to put it on notice of the claims brought against it.

"Group pleading, however, is not per se improper. A complaint survives if any group pleadings, taken along with any individual pleadings, create the plausible inference that each defendant is liable." *Gorgas v. Amazon.com, Inc.*, 2023 WL 4209489, at *3 (N.D. Ill. 2023). "Under Federal Rule of Civil Procedure 8, collective pleading is permissible so long as the complaint places each defendant on notice of why they are being sued." *Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*, 2020 WL 5545700, at *2 (N.D. Ill. 2020). We find that the Complaint meets this standard.

The Complaint "notified [JINNAN-US] which trademark registrations were infringed, how the trademark allegations were infringed, and that the infringement was done without authorization." Dkt. # 124 at 4. The Complaint also alleges that Defendants, including JINNAN-US, "deceive unknowing consumers by using the MILWAUKEE Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MILWAUKEE TOOL products" and that Defendants "knowingly and willfully used and continue to use the MILWAUKEE

4

Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit MILWAUKEE TOOL products into the United States and Illinois over the Internet." *Id*. ¶ 16, 21. These allegations make it plausible that JINNAN-US infringed on Plaintiff's trademark rights. That is all the *Twombly/Iqbal* plausibility pleading standard requires. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly,* 550 U.S. at 570). JINNAN-US's motion to dismiss is denied on this issue.

## II. Nominal Fair Use

JINNAN-US next argues that Plaintiff's claims against it should be dismissed because its use of the "MILWAUKEE" trademark is nominal fair use. Nominal fair use "occurs when the alleged infringer uses the trademark holder's mark to describe the trademark holder's product, even if the alleged infringer's ultimate goal is to describe his own product." *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, 2021 WL 5833986, at *3 (N.D. Ill. 2021) (internal quotations omitted).

The Seventh Circuit has yet to recognize the nominal fair use defense. *Slep–Tone Entertainment Corporation v. Coyne*, 41 F.Supp.3d 707, 717 (N.D. Ill. 2014) ("[i]t does not appear that any circuit has joined the Ninth Circuit's recognition of the nominative fair use defense."). We decline to adopt that defense here.

### III. Improper Joinder

JINNAN-US's closing argument is that it was improperly joined as a party. Under Rule 20(a)(2), defendants may be joined in a single action only if: (1) the claims against them are asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)-(B). "A party that seeks joinder bears the burden of demonstrating that joinder is proper under [Rule] 20(a)(2)." *Damian v. EIN CAP, Inc.*, 2023 WL 2561586, at *2 (N.D. Ill. 2023) (internal quotations omitted).

Plaintiff alleges that Defendants are operating under the same transaction, occurrence, or series of transactions or occurrences "because (1) defendants use nondescript Seller Aliases; (2) no credible information regarding defendants' physical addresses is provided; and (3) defendants show evidence of market coordination, *i.e.*, using the same advertising and marketing strategies to target consumers while attempting to evade enforcement." Dkt. # 124 at 18. Plaintiff also argues that "[e]ven if defendants are not directly coordinating, Plaintiff alleges that defendants take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] designs with impunity." *Id*. at 19. Plaintiff also states that joinder at this stage serves to conserve judicial resources, as requiring Plaintiff to file cases against each Defendant

6

individually would be extremely cumbersome and would not benefit either the party or the Court. We agree.

The principles governing joinder guide us here. The purpose of the joinder doctrine is to conserve judicial resources, reduce redundancy, and to save costs. *See In re BitTorrent Copyright Infringement Cases*, 2013 WL 501443, at *1 (C.D. Ill. 2013). Forcing Plaintiff to file separate cases against 80 different defendants would be an undue burden for both Plaintiff and the courts. Plaintiff has met its burden of establishing that joinder is proper in this case. JINNAN-US's motion to dismiss for misjoinder is denied.

## IV. Attorney's Fees

The Court denies JINNAN-US's motion for attorney fees, because it has not shown that this case is exceptional as required by 15 U.S.C. § 1117. Each party is responsible for their own expenses.

## CONCLUSION

For the foregoing reasons, Defendant JINNAN-US's motion to dismiss [85] is denied. It is so ordered.

Dated: 5/28/2025

Charles P. Kocoras
United States District Judge

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Your True Nature, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-11162 |
| | ) | |
| | ) | |
| The Individuals, | ) | |
| Partnerships, and | ) | |
| Unincorporated Associations | ) | |
| Identified in Schedule A | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Order

The amended complaint in this case asserts, against a list of 302 individuals, partnerships, and unincorporated associations, claims of trademark infringement under 15 U.S.C. § 1114 and the common law; false designation of origin under 15 U.S.C. § 1125(a); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, et seq.; and copyright infringement under 17 U.S.C. §106(1), (2) and/or (5). Am. Compl., ECF 20. Currently pending are a motion to sever for misjoinder brought collectively by defendants Triency, zoxix, KOIXA, Mymi store, CUBICER, and MYMISOR [81]; and motions for summary judgment by defendant zoxix [108] and KOIXA,

CUBICER, and MYMISOR[1] [111]. The motions are denied for the reasons that follow.

The motion to sever is denied because Fed. R. Civ. P. permits joinder of multiple defendants alleged to have participated in the same "occurrence." That criterion is satisfied in a case such as this, where each defendant is alleged to have participated in a "swarm" of intellectual property infringements. *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 511, 516 (N.D. Ill. 2020) (common "occurrence" requirement of Rule 20 is satisfied where defendants "allegedly take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [a plaintiff's] trademarks with impunity").

The motions for summary judgment argue that the moving defendants' use of plaintiff's trademarks qualifies as fair use under the Lanham Act and that the complaint against them should be dismissed on this basis. At the outset, even assuming that undisputed evidence established that defendants' use of plaintiff's trademarks satisfied the Lanham Act's criteria for fair use, defendants offer neither argument nor evidence to show that they are entitled to summary judgment on plaintiff's non-Lanham Act claims.[2] For that

---

[1] This defendant states that it and defendant "Mymi store" are one and the same. ECF 111 at n.1.
[2] While Copyright Act also recognizes fair use as an affirmative defense, *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 574

reason alone, they are not entitled to dismissal of the amended complaint under Fed. R. Civ. P. 56.

As for plaintiff's Lanham Act claim, the statute "allows individuals to use otherwise trademarked language in a descriptive sense." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). Whether a word or phrase is descriptive, whether the defendant used it in good faith, and whether consumers are likely to be confused are ordinarily questions of fact that can be resolved at summary judgment only "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 637 (7th Cir. 2001). Yet, the moving defendants identify no evidence at all to support their fair use defense. Instead, they merely incorporate images of the allegedly infringing items into their L.R. 56.1 statements. But these images facially tend to support plaintiff's claims, not the moving defendants' fair use defense.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 10, 2025

---

(1994) (copyright), defendants do not address that defense or explain how the undisputed record shows that they satisfy its elements as a matter of law.

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEMAN BROTHERS & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 05666 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED IN | ) | |
| SCHEDULE A, | | |
| | | |
| Defendants. | | |

**ORDER**

For the reasons set forth in the Statement below, the defendant Ranphee's motion to dismiss the complaint and strike service of process [60] and motion to modify the preliminary injunction [62] are both denied.

**STATEMENT**

The plaintiff Neman Brothers & Associates, Inc. holds federal copyright registrations for two-dimensional textile designs and has sued 20 defendants for alleged copyright infringement. Neman alleges the defendants operate online stores via Amazon, TEMU, and Walmart, through which they sell products that feature, without license or permission, Neman's copyrighted designs. Defendant Ranphee is one of the defendants.

On August 5, 2024, the Court entered a temporary restraining order [17] which allowed Neman to serve the defendants by electronically publishing links to any filings in the case on a website, to be distributed to the defendants via email. The order also directed the Clerk of Court to issue a "single original summons" that would apply to all Defendants. In doing so, the Court decided that "[t]he combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." The TRO also ordered all third-party platforms, including Amazon, to freeze any financial accounts connected to the defendants. Ranphee filed an appearance in this case on October 10, 2024 [53] and since then has apparently corresponded via email with plaintiff's counsel. Decl. of Trevor W. Barrett (hereinafter, "Barrett Decl."), ¶ 8, ECF No. 82. The Court entered a preliminary injunction against all defendants on September 4, 2024 [33]. The preliminary injunction also authorized email and website publication service and continued the freeze on the defendants' financial accounts.

Ranphee now moves to dismiss the complaint for failure to state a claim, improper joinder, and lack of personal jurisdiction based on alleged improper service and insufficient contacts with Illinois. Ranphee separately moves to modify the preliminary injunction to limit the asset freeze to $10,000.

## I.        Personal Jurisdiction

Ranphee cites a number of alleged deficiencies in Neman's service of process and argues that because Neman did not serve Ranphee in compliance with Federal Rule of Civil Procedure 4, this Court does not have personal jurisdiction over it. Ranphee further argues that the Court cannot exercise personal jurisdiction because Neman has not alleged the "minimum contacts" necessary to subject Ranphee to suit in Illinois. The Court addresses both lines of argument in turn.

### A.        *Service of Process*

#### 1.        Hague Convention

Ranphee first contends that service via email, which this Court authorized in the TRO, is improper under Federal Rule of Civil Procedure 4(f)(3) because it is prohibited by "international agreement" – here, the Hague Convention. Ranphee is located in China, which, as a signatory to the Hague Convention, objected to the portion of the Convention which provides: "Provided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention Art. 1, 20 U.S.T. 361; *see also NBA Properties, Inc. v. Schedule A*, 549 F. Supp. 3d 790, 798 (N.D. Ill. 2021), *aff'd sub nom. NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022). Ranphee argues that by objecting to that provision, China has precluded service by email on persons or entities located in China.

Neman responds that 1) the Hague Convention does not apply here because Ranphee's address was not known to Neman at the time of service (20 U.S.T. 361 ("This convention shall not apply where the address of the person to be served with the document is not known")), and 2) even if it did, China's objection to service by "postal channels" does not encompass service by email or electronic publication.

On the first point, plaintiffs must make "reasonably diligent efforts to ascertain and verify [a] defendant's mailing address" before courts will accept that the defendant's address is "not known" for service purposes. *NBA Properties*, 549 F. Supp. 3d at 796. When Neman moved for service of process via email, it argued that e-commerce stores such as the defendants' often use false physical addresses to conceal their locations, and primarily use electronic communication to communicate with their platforms and customers. The Court accepted that argument then and still does. Ranphee argues that Neman could have obtained its address through reasonable diligence but does not point to any evidence indicating that is the case, such as a website clearly showing its physical address. Ranphee asserts: "While … the supporting papers for the Renewed Motion for Temporary Restraining Order[] remain[] under seal, we believe [they] will show the name and address of the Moving Defendant[] was on the website and would be possible to obtain with reasonable diligence." Def. Ranphee's Mot. to Dismiss, 2, ECF No. 61. This speculation is confusing, as Ranphee has been served with unsealed versions of the supporting TRO materials

2

filed by the plaintiff, and therefore should be able to see that they do *not* show an address. Decl. of Trevor W. Barrett, ¶ 3, ECF No. 82; Ex. B to Complaint, 13, ECF No. 13-1.

Even assuming Ranphee's address could have been discovered by the plaintiff with reasonable diligence, and was therefore "known" for purposes of the Hague Convention, the Court is persuaded by the majority of courts in this jurisdiction which have held that even where the Hague Convention does apply, and a defendant is located in China, email service is an acceptable and sufficient method of service. *See NBA Properties*, 549 F. Supp. 3d at 798; *Peanuts Worldwide LLC v. Schedule A*, 347 F.R.D. 316, 330 (N.D. Ill. 2024); *Hangzhou Chic Intelligent Tech. Co. v. Schedule A*, No. 20-cv-4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021); *Oakley, Inc. v. Schedule A*, No. 20-cv-05049, 2021 WL 2894166, at *4 (N.D. Ill. Jul. 9, 2021). Recognizing that there is no controlling precedent on the issue, and that some courts have viewed it differently (*see Luxottica Grp. S.p.A. v. Schedule A*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019)), the "overwhelming majority of courts in this district" have concluded that nothing in the text of the Convention (including objection to service by "postal channels") prohibits email service on foreign defendants at unknown locations. *Klauber Brothers, Inc. v. Schedule A*, No. 23-cv-10407, 2024 WL 182209, at *3 (N.D. Ill. Jan. 17, 2024). The Court agrees that is the logical reading of the Convention's text.

### 2. Form of Summons

Ranphee also argues that Neman failed to perfect service because it did not obtain an individual summons for each and every defendant, which, it contends, is required by Rules 4(b) and 10(a). But—as multiple courts have already noted in response to this same argument—Rule 4(b) specifically contemplates a single summons "addressed to multiple defendants." *See Peanuts*, 347 F.R.D. at 323; *Klauber*, 2024 WL 182209 at *3. Further, Rule 10(a) requires only that the "title of the ***complaint*** … name all the parties"—not the summons. Here, the summons and complaint properly referenced the parties via the Schedule A filed on the docket, which was both sufficient under Rule 4 and consistent with the Court's order.

### 3. Translation

Ranphee also contends that Neman should have served the summons and pleadings with a "local language translation." In support, Ranphee cites to two out-of-circuit cases in which courts used their discretion to order service via local language notices published in newspapers. Both cases involved extremely different sets of facts from those at issue here. *See Langford v. Juárez Cartel, et al.*, No. 20-cv-00132, Dkt. No. 19 (D.N.D. Oct. 28, 2020) (requiring a notice to alleged cartel members be published in Spanish in Mexican newspaper); *Mwami v. U.S., et al.*, No. 1:99-cv-00125, Dkt. No. 23 (D.D.C. Aug. 2, 1999) (requiring service of Osama bin Laden via publication of Arabic notice in international newspapers). No authority, other than a court's discretionary order, requires plaintiffs to provide translations to defendants. *See Peanuts*, 347 F.R.D. at 323; *Klauber*, 2024 WL 182209 at *3. Nor has Ranphee indicated in any way that it required such translation, given that its counsel has been corresponding with the plaintiff in English.

3

4.      Confirmation of service

Finally, Ranphee argues that Neman should have confirmed in its affidavit of service that the emails sent to the defendants did not result in any "bounce back" messages, and were sent six times, in line with the requirement that service by publication be effected by six separate publications. Again, no authority requires Neman to do either in this case, and Ranphee does not point to any. Ranphee cites to cases in which courts have ruled that the lack of a bounce back message verified the validity of an email address. *See, e.g.*, *Chanel, Inc. v. Qi*, No. C-11-0362, 2011 WL 13244512, at *2 (N.D. Cal. Jan. 27, 2011) (where email to defendant did not bounce back, email was "valid and operational" and could be used for service). But that does not mean that Neman must affirmatively represent that it did not receive bounce back message. Further, and most significantly, Ranphee has been corresponding with the plaintiff *via email*; no further validation of its email address is needed.

As to the argument that the email should have been sent six times because that is how service via newspaper is completed, the Court echoes the ruling in *Klauber*: "Comparing service by sending an email to an individual email address that indisputably belongs to the defendant to service by publishing a notice in a newspaper where the defendant may be among hundreds of thousands of readers defies logic." 2024 WL 182209 at *5.

Raphee has been served in compliance with the Federal Rules of Civil Procedure and the Court denies both its motion to strike service of process and motion to dismiss for lack of personal jurisdiction on that basis.

B.      *Minimum Contacts*

Ranphee next argues that Neman has not alleged that Ranphee actually sold its products to Illinois customers, and that even if it had alleged some de minimis sales, that would be insufficient to confer personal jurisdiction over Ranphee. The latter argument been squarely rejected in this Circuit. *See NBA Properties*, 46 F.4th at 624 (just one sale to a buyer in Illinois showed that a defendant was "target[ing] the Illinois market" and was therefore sufficient to establish personal jurisdiction). As to the former, Ranphee is correct that while Neman attached to its TRO motion screenshots showing an Illinois address entered as the "deliver to" address during an attempted order, those screenshots do not show confirmation of an actual shipment to Illinois. At least one court in this jurisdiction has held that similar evidence at the pleading stage is insufficient to make a *prima facie* showing of personal jurisdiction. *See Unicolors, Inc. v. Shewin Flagship Shops*, No. 1:24-cv-2987, 2024 WL 4567268, at *8-*9 (N.D. Ill. Oct. 24, 2024).

However, Neman has responded to Ranphee's motion with evidence, obtained from Amazon during the expedited discovery granted by the TRO, that Ranphee sold nearly 600 units of the infringing products to Illinois buyers. Barrett Decl. ¶ 10. Ranphee has not disputed the veracity or propriety of that evidence, except to say that it was not in the record at the time its motion was filed. The Court will therefore consider Neman's evidence. Six hundred sales to Illinois are more than enough "contacts" to establish personal jurisdiction over an out-of-state defendant under *NBA Properties*, which found that a single sale to the relevant jurisdiction was enough. 46 F.4th at 624. There is therefore no question that Ranphee "purposefully directed" its conduct at Illinois. *Id*.

4

Neman has established personal jurisdiction over Ranphee, and so Ranphee's motion to dismiss the complaint on that basis is denied.

## II.     Joinder

Ranphee has raised a thin argument that Ranphee has not properly alleged facts supporting permissive joinder under Rule 20, arguing generally that it is insufficient for Neman to argue only that the defendants are all located in close proximity in China. That is true, but as Neman points out, it has alleged much more in support of its contention that the defendants' alleged wrongdoing arises out of the "transaction or occurrence." Fed. R. Civ. P. 20(a)(2)(A). Neman alleges that the defendants use the same third-party marketplace platforms (Amazon, Temu, and Walmart), and maintain similar profiles on their online stores. Their listings feature similar, and in some cases identical, product photos, obscure the sellers' identities, and use similar SEO tactics. While the defendants may be operating independently, these allegations suggest that the defendants "take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [the plaintiff's copyrights] with impunity." *Bose Corp. v. Schedule A*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). This common, surreptitious conduct is the "defining aspect of the harm" alleged by Neman and creates a logical relationship among the parties and claims in the case. *Id*. 517.

Ranphee also does not point to any prejudice or expense it will incur if joinder is permitted, nor does the Court see any. Ranphee is still free to litigate its claims to the extent it wishes, or settle with the plaintiff, and the fact of joinder will not prevent or impede it from doing so. The Court therefore declines to sever the parties.

## III.    Failure to State a Claim

In issuing the TRO and Preliminary Injunction, the Court found that Neman had presented enough facts and evidence to demonstrate a likelihood that it would succeed on the merits of its infringement claim. That ruling was based on the complaint, TRO and PI motions, and supporting evidence showing evidence of infringement by all defendants, including Ranphee. Ranphee makes a disingenuous argument that it cannot tell from the sealed exhibits what evidence Neman has set forth. But Neman served Ranphee via email with all material case documents on August 26, 2024 (Barrett Decl. ¶ 3), and Ranphee otherwise offers no arguments to persuade the Court that it should reconsider its prior determination.

Ranphee's motion to dismiss for failure to state a claim is denied.

## IV.    Cap on Asset Restraint

Ranphee has separately moved to modify the preliminary injunction to cap the asset freeze at $10,000. It posits in its motion—without any documentary evidence or supporting declaration—that the amount frozen now totals $48,661 but that it is "prepared to testify and submit an affidavit" demonstrating that while its sales over the last two years totaled $205,505.00 in revenue, its profits were only $8,313.70. The Court shares Neman's skepticism of those figures, particularly given Neman's early discovery suggesting that Ranphee has collected over $475,000 in revenue from infringing sales.

In any event, Ranphee will need to present far more than what it has put forward in its motion, and more than an affidavit, to secure a modification of the asset freeze. While it is true that where the amount of profits is known and quantifiable, an asset freeze should apply only to that amount, in order "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Weensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (cleaned up); *see also Deckers Outdoor Corp. v. Schedule A*, No. 13-cv-07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Ranphee will therefore need to provide specific, detailed records, supported by a sworn declaration, clearly identifying its profits from the allegedly infringing sales. *See Luxottica USA LLC v. Schedule A*, No. 14-cv-9061, 2015 WL 3818622, at *5 (declining to modify asset restraint where transactions spreadsheet proffered by defendant was unsupported by declaration, did not include quantities associated with sales, and contradicted other evidence in record); *Antsy Labs, LLC v. Schedule A*, 21-cv-3289, 2022 WL 17176498, at *5 (N.D. Ill. Nov. 23, 2022) (declining to modify asset restraint where defendant proffered incomplete sales records and a declaration contradicted by other evidence).

Ranphee is free to renew its motion with such supporting evidence. For now, it has not met its burden to show that a modification to the asset restraint is warranted, and so its motion is denied.

\*\*\*

Ranphee's motion to dismiss the complaint and strike service of process [60] and motion to modify the preliminary injunction [62] are both denied.

Date: December 10, 2024

John J. Tharp, Jr.
United States District Judge

6

### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AIDONG ZOU, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 C 16600 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| THE ENTITIES AND INDIVDUALS | ) | |
| IDENFIED IN ANNEX A, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### ORDER

Plaintiff Aidon Zou filed this action against 149 defendants alleging violations of federal copyright law pursuant to 17 U.S.C. § 501 *et seq*. (Dkt. 2). A subset of the defendants—Duailipin (#5), Alayger (#6), VRPQ (#8), OLDSH (#1), RRGIOH (#2), Shenzhen Tinff Technology Co., Ltd. (#11), and SUMMERJOY's (#143) (hereinafter "Defendants")—moved to sever Zou's claims against them from his claims against the remaining defendants. For the reasons discussed below, the Court denies Defendants' Motion to Sever [38].

### BACKGROUND

Zou holds copyrights for two teddy bear slipper products, which protect the "[s]culptural features" that are "capable of existing independently of the utilitarian aspects" of the slipper. (Dkts. 2 at ¶¶ 62–63, 2-1, 2-2). The copyrights were both registered in November 2023, but they bear dates of first publication in July 2019 and July 2020 respectively. (Dkts. 2-1, 2-2).

At some point after making his slippers available for purchase online, Zou realized that online merchants were selling similar products. (*Id*. at ¶ 3). Zou filed this action in December 2023, alleging that a group of 149 foreign individuals and entities violated his copyrights. (*Id*. at ¶ 4).

Defendants operate various "e-commerce stores" on third-party online platforms wherein they sell allegedly unauthorized reproductions Zou's copyrighted slippers. (*Id*. ¶¶ 3-6). Zou claims that Defendants all purchase their infringing products from one or more major manufacturers in China. (*Id*. at ¶ 5). Defendants now move to sever the claims against them. (Dkt. 38).

### LEGAL STANDARD

Under Rule 20, "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question

1

of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In addition to the two requirements of Rule 20(a)(2), the Court also considers whether joinder would prejudice any party or result in needless delay. At root, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Though not binding on this Court, in many courts such requirements for joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action." *Lane v. Tschetter*, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). An examination of each of these requirements shows that joinder is proper at this time.

## DISCUSSION

Defendants filed a motion to sever claims against them from those against the other remaining defendants. (Dkt. 38). Defendants' motion asserts that joinder is improper because Zou has not met the requirements for permissive joinder under Federal Rule of Civil Procedure 20. (Dkt. 39 at 1). Specifically, Defendants assert that Zou failed to show that his claims against Defendants arise out of the same transaction, occurrence, or series of occurrences. (*Id*.). This argument is unavailing at this stage of the litigation.

Courts generally find that claims against different defendants arise out of the same transaction or occurrence if there is a logical relationship between the separate causes of action. *See In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (discussing the "same transaction or occurrence" requirement in the context of Rule 13). *See also* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed. 2001); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013).

Here, Zou has made well-pleaded allegations to satisfy Rule 20(a)(2)(A), which provides that joinder is proper if "any right to relief is asserted against [Defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." This test is flexible, and courts are encouraged to seek the "broadest possible scope of action consistent with fairness to the parties." *Gibbs*, 383 U.S. at 724, 86 S.Ct. 1130. Zou alleges that "all "Defendants are engag[ed] in [a] systematic approach of" selling infringing products under various aliases that allow Defendants to conceal their true identities." (Dkt. 2 at ¶¶ 51-53). Zou further claims that Defendants, acting in concert, employ and benefit from substantially similar advertising and marketing strategies. (*Id*. at ¶ 10).

Taking Zou's allegations as true, there is a clear logical relationship between Defendants' actions, as each Defendant copied Zou's work, manufactured counterfeit versions, and set up online stores to sell the counterfeits under a cloak of anonymity. Based on these allegations, Zou sufficiently alleged that each Defendants' infringement is part of the same series of occurrences.

Also, Zou alleges that Defendants each contracted with manufacturers and customers to produce and sell infringing products. (Dkt. 2 at ¶ 5). Thus, Defendants also participated in the same series of transactions which violated Zou's copyrights. Further, it bears mentioning that although

Defendants claim that they are not acting in concert, they move as one to sever the claims against them.

Zou's well-pleaded allegations also satisfy Rule 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." Against Defendants, Zou alleges use of third-party manufacturers and online retailers to facilitate their production and sale of infringing products. Consequently, the factual inquiry into the means and methods used in any alleged copyright infringement will be substantially identical, as the methods Zou uses to investigate, uncover, and collect evidence about any infringing activity will be the same as to each of the Defendants. The Court recognizes that each Defendant may later present different factual circumstances to support individual legal defenses. "Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011).

Finally, joinder at this stage is consistent with fairness to the parties and in the interest of judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for Zou and the remaining defendants. Joinder does not create any unnecessary delay, nor does it prejudice any party. If Defendants were severed, the ensuing additional cases would require their own proceedings. Zou would be prejudiced by such severance, as each resulting claim would require their own filing fees, a multiplication of expense that would further inhibit Zou's ability to protect his legal rights. Such obstacles would make it less likely that Zou could protect his copyrights in a cost-effective manner.

The Court has little reason to believe that any risk arises of unfairness or denial of individual justice to Defendants at this stage in the litigation. The case against each of them will be individually considered for purposes of any ruling on the merits. At this stage, joinder of Defendants promotes judicial economy while protecting the interests of the parties for a just, speedy, and inexpensive outcome. Joinder at this stage is therefore consistent with fairness to the parties. Additionally, the two requirements of permissive joinder under Rule 20(a)(2) have been satisfied. The motion to sever is therefore denied without prejudice.

## CONCLUSION

For these reasons, the Court denies Defendants' motion to sever [38] for improper joinder.

Virginia M. Kendall
United States District Judge

Date: March 8, 2024

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILUSTRATA SERVICOS DESIGN, LTDA.,  )
                                              )

        Plaintiff,                   )
                                              )

        v.                       )     No. 21-CV-05993
                                              )     Hon. Marvin E. Aspen

THE PARTNERSHIPS and            )
UNINCORPORATED ASSOCIATIONS  )
IDENTIFIED ON SCHEDULE "A,"    )
                                              )
        Defendants.           )

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Ilustrata Servicos Design, Ltda. ("Ilustrata") names 141 defendants in this single case. (Complaint ("Compl.") (Dkt. No. 1) at 1; Schedule A (Dkt. No. 2).) Ilustrata has three motions pending before us: (1) a motion for leave to file certain documents under seal, (2) an *ex parte* motion for entry of a temporary restraining order ("TRO"), and (3) a motion to exceed the page limit for its memorandum in support of the TRO. (Dkt. Nos. 8, 9, 10.) For the reasons set forth below, these motions are taken under advisement and Ilustrata is ordered to show cause, in writing, as to why the case should not be severed for misjoinder by December 2, 2021. Alternatively, Ilustrata may file an amended complaint by then if it can cure the joinder issues raised herein.

**BACKGROUND**

Ilustrata alleges that it is a Brazilian illustration studio that owns federal copyright registrations that protect the creative content of its famous images and illustrations. (*See* Compl. ¶¶ 4, 6, 17.) Ilustrata's creative content is known for its "retro and detailed style" and appears on

t-shirts, prints, packages, character designs, and ads, among other things. (*Id.* ¶ 17.) Ilustrata

alleges that Defendants operate interactive commercial internet stores under aliases to sell

products bearing infringing versions of Ilustrata's copyrighted works to customers in the United

States, including Illinois. (*Id.* ¶ 2.) Ilustrata claims that Defendants "have knowingly and

willfully pirate[d]" their intellectual property "without any authorization or license." (*Id.* ¶ 34.)

Ilustrata also alleges that Defendants' stores "share unique identifiers, such as design elements

and similarities of the unauthorized products offered for sale," which "establish[] a logical

relationship between them and suggest[] that Defendants' illegal operations arise out of the same

transaction, occurrence, or series of transactions or occurrences." (*Id.* ¶ 8.)

## ANALYSIS

Before deciding Ilustrata's pending motions, we *sua sponte*[1] address the issue of joinder.

Under Federal Rule of Civil Procedure 20(a)(2), Ilustrata bears the burden of showing that

joinder is appropriate. *See NFL Properties LLC v. The P'ships & Unincorporated Ass'ns*

*Identified on Schedule "A"*, No. 21-CV-05522, 2021 WL 4963600, at *1 (N.D. Ill. Oct. 26,

2021); *H-D U.S.A., LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,

No. 21-CV-01041, 2021 WL 780486, at *1 (N.D. Ill. Mar. 1, 2021); *see also Estée Lauder*, 334

F.R.D. at 185. "'In assessing whether the requirements of Rule 20(a)(2) are met, courts must

accept the factual allegations in a plaintiff's complaint as true.'" *Estée Lauder*, 334 F.R.D. at

185 (quoting *Desai v. ADT Sec. Servs., Inc.*, No. 11 C 1925, 2011 WL 2837435, at *3 (N.D. Ill.

---

[1] "[I]t is appropriate for federal courts to raise improper joinder on their own, especially when the sheer number of defendants waves a joinder red flag and ups the chances that the plaintiff should be paying separate filing fees for separate cases." *Estée Lauder Cosmetics Ltd. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 186 (N.D. Ill. 2020) (Chang, J.) (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (noting that the district court should have questioned joinder on its own in a 24-defendant case)).

July 18, 2011)).  However, courts need not accept conclusory or speculative statements that are not factual assertions.  *NFL Properties*, 2021 WL 4963600, at *1; *H-D U.S.A.*, 2021 WL 780486, at *1; *see also Estée Lauder*, 334 F.R.D. at 185.

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may only be joined in a single action if: (1) the claims against them are asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a)(2)(A)–(B).  When determining "whether the rights asserted arise out of the same transaction or occurrence, courts should 'consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds.'"  *Estée Lauder*, 334 F.R.D. at 185 (quoting *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007)).

Courts typically find that claims against different defendants arise out of the same transaction or occurrence when there is a "logical relationship between the separate causes of action."  *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (discussing the "same transaction or occurrence" requirement in the context of Rule 13); *Estée Lauder*, 334 F.R.D. at 185.  "Claims have a logical relationship when there is a 'substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant.'"  *Estée Lauder*, 334 F.R.D. at 185 (quoting *In re EMC Corp.*, 677 F.3d at 1358).

Where a court finds that joinder is not authorized by the Federal Rules of Civil Procedure, it may sever parties on its own or direct the plaintiff to remedy the issue.  *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2; *Estée Lauder*, 334

3

F.R.D. at 186.  District courts have broad discretion to remedy misjoinder, but in doing so, they must avoid unnecessary harm to the parties.  *Estée Lauder*, 334 F.R.D. at 186.

Courts in this District have held that plaintiffs cannot satisfy Rule 20's requirements by merely alleging that multiple defendants have infringed the same patent or trademark.  *See, e.g.*, *Estée Lauder*, 334 F.R.D. at 187; *Slep-Tone Ent. Corp. v. Roberto*, No. 12-cv-5750, 2013 WL 5748896, at *2–3 (N.D. Ill. Oct. 22, 2013); *ThermaPure, Inc. v. Temp-Air, Inc*., No. 10-cv-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010); *Spread Spectrum Screening, LLC v. Eastman Kodak Co*., No. 10 C 1101, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010); *SB Designs v. Reebok Int'l, Ltd*., 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004).  This is so because one defendant's alleged infringement does not necessarily arise "out of the same transaction, occurrence, or series of transactions of occurrences" as another defendant's unrelated infringement.  *See* Fed. R. Civ. P. 20(a)(2)(A).  Where defendants are not affiliated with one another, there is no evidentiary overlap in proving liability for the alleged infringement.  *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2; *Estée Lauder*, 334 F.R.D. at 187.  From the defense perspective, one defendant's defenses do not depend on that of an unrelated codefendant.  *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2; *Estée Lauder*, 334 F.R.D. at 187.

Ilustrata's allegations are insufficient to show that joining all 141 defendants in this single lawsuit is proper.  Ilustrata repeatedly alleges that "Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences." (Compl. ¶¶ 8, 11, 15.)  But similarities between websites do not suggest a logical relationship

4

between every Defendant. *See Bose Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19 C 7467, 2019 WL 6210939, at *2 (N.D. Ill. Nov. 21, 2019) (finding that nearly identical allegation regarding unique "design elements" did not support joinder). Nor are Defendants or their alleged infringement "interrelated" simply because the products sold by Defendants are similar. (Compl. ¶ 30); *see H-D U.S.A.*, 2021 WL 780486, at *3; *Bose*, 2019 WL 6210939, at *2; *Rudd v. Lux Prods. Corp.*, No. 09-cv-6957, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011) ("Simply alleging that Defendants manufacture or sell similar products does not support joinder under Rule 20."). Ilustrata also speculates that Defendants are "interrelated" because they share "other notable common features, including use of the user name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images." (Compl. ¶ 30.) But, as we have explained in prior opinions, similar conclusory statements are insufficient to support joinder. *See NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2–3; *see also Bose*, 2019 WL 6210939, at *2 (finding that similar "notable common features" allegation did not support joinder). Finally, the fact that Defendants allegedly "use a variety of other common tactics to evade enforcement efforts," such as "register[ing] new online marketplace accounts under new aliases once they receive notice of a lawsuit" (Compl ¶ 31), does nothing to support joinder either because these allegations are highly generic and apply equally to individuals and entities engaging in activities that are not the subject of this suit.

On the facts before us, we cannot conclude that joinder of all 141 defendants would promote judicial economy either. To the contrary, joinder in this case potentially yields

significant financial gains to Ilustrata at the judiciary's expense.  As discussed more fully in *H-D U.S.A.*, cases naming numerous unrelated defendants burden the courts.  *See H-D U.S.A.*, 2021 WL 780486, at *3 (citing *Estée Lauder*, 334 F.R.D. at 189–90 and *Purzel Video GMBH v. Does 1-91*, Case No. 4:12-cv-02292, 2013 WL 4775919, at *2 (E.D. Mo. Sept. 6, 2013).)  And by suing 141 defendants in a single suit rather than in as many as 141 separate suits, Ilustrata may save more than $56,000 in filing fees.  *See* Northern District of Illinois's Fee Schedule ("Civil Filing Fee $ 402.00"); *see also Patent Holder Identified in Exhibit 1 v. Does 1-254*, No. 21 C 514, 2021 WL 410661, at *3 (N.D. Ill. Feb. 6, 2021) ("[B]y suing 254 defendants in a single suit rather than 254 separate ones, the plaintiff will save, in one fell swoop, over $100,000 in filing fees.").

## CONCLUSION

For the reasons set forth above, Ilustrata's motion for leave to file certain documents under seal (Dkt. No. 8), *ex parte* motion for entry of a TRO (Dkt. No. 10), and motion to exceed the page limit for its memorandum in support of the TRO (Dkt. No. 9) are taken under advisement.  Ilustrata is ordered to show cause, in writing, as to why the case should not be severed for misjoinder by December 2, 2021.  Alternatively, Ilustrata may file an amended complaint by then if it can cure the joinder issues raised herein.  It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: November 18, 2021

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANDERSON DESIGN GROUP, INC.,

Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

Defendants.

Case No. 25-cv-11640

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anderson Design Group, Inc. ("Anderson Design Group") brings this action for copyright infringement. Defendants OP poster, Heartwarming Art Painting, reborn Tong, The Arts House Sc, RCposter, EJJ Decorative Painting Expert, khaki poster, JQ WallArtHaven, LJHPainting Shop, BJX Digital oil painting expert, KSF decorative painting, FFD Decorative paintings and posters, YCX PixelPalette, poster heaven, SCN decorative painting, Fantastic Wall Decoration, Bieautiful poster, and WY Digital oil painting poster (together, the "Group A Defendants") move to dismiss for misjoinder. [45].

For the reasons stated, the Court holds the Motion to Dismiss [45] in abeyance pending limited discovery as to the relationships among the Group A Defendants.

## I. Background

Anderson Design Group is the owner of United States Copyright Registration No. VA 2-429-051 (the "Anderson Design Group Work"). [1] ¶¶ 5, 10; [1-1]. Anderson

1

Design Group alleges that the Group A Defendants are foreign entities who sell pirated derivative works of the Anderson Design Group Work. *Id.* ¶ 20. Anderson Design Group maintains that such actions constitute copyright infringement. *Id.*

On September 25, 2025, Anderson Design Group filed this action naming 181 Defendants. [1] [2]. Since then, most Defendants have been terminated, [25] [39] [44], with only the Group A Defendants remaining.[50].

On December 10, 2025, the Group A Defendants moved to dismiss, pursuant to Rule 20(a)(2), for improper joinder.[1] [45]. Though they are represented by the same defense counsel, the Group A Defendants maintain they are "different and not affiliated to each other" and therefore forcing them to litigate in a single action together is improper. *Id.* at 4, 8.

## II.    Analysis

This case presents an unusual set of facts. Ordinarily, joint representation of multiple defendants by the same defense counsel does not automatically imply coordination for purposes of joinder. But the scale here is difficult to ignore. By this Court's count, counsel for the Group A Defendants represents roughly 290 Schedule A defendants across this case and at least ten[2] other cases in this district. And in at

---

[1]As all other Defendants (*i.e.*, non-Group A Defendants) have been terminated from this action, the Court does not consider improper joinder with respect to those other Defendants.

[2]*Susan Florence Comish v. The P'ships et al.*, No. 25-cv-07049 (N.D. Ill. 2025); *Susan Florence Comish v. The P'ships et al.*, No. 25-cv-07393 (N.D. Ill. July 24, 2025); *Angela Isabel Porter v. The P'ships et al.*, No. 25-cv-08071 (N.D. Ill. Sept. 29, 2025); *Elaine Kay Maier v. The P'ships et al.*, No. 25-cv-07534 (N.D. Ill. 2025); *Greg Alexander v. The P'ships et al.*, No. 25-cv-07026 (N.D. Ill. Sept. 4, 2025); *Laurie Snow Hein v. the P'ships et al.*, 1:25-cv-12608 (N.D. Ill. Dec. 15, 2025); *Michele Natale d/b/a Michael*

least eight of those other cases, nearly identical motions to dismiss for misjoinder have been filed. It is highly unlikely that 290 unaffiliated defendants independently reached the same counsel and then aligned on a joint defense strategy. The more plausible explanation is that some central entity is coordinating these filings and directing counsel on behalf of those defendants.

Counsel's own admissions confirm this. In the case before Judge Durkin, counsel for the Group A Defendants acknowledged that he communicates with a "single representative" for all of the Schedule A defendants he represents in that case. *Hein*, 1:25-cv-12608, [39] at 3:16–4:3. Though no such admission has been made here, when considered alongside the lockstep conduct across the eight cases, it suggests that the Group A Defendants are also being coordinated via a central entity. That arrangement is inconsistent with the notion that the Group A Defendants are unaffiliated.

Given the unique circumstances presented, the Court believes that limited discovery into the relationships among the Group A Defendants is the most prudent course of action. If discovery reveals a relationship among all of the Group A Defendants, this case can proceed with them together. If it instead reveals coordination among distinct groups of the Group A Defendants, the Court can sever those groups into separate cases. And, of course, if the Group A Defendants' assertion

---

*Christmas Art v. The P'ships et al.*, No. 25-cv-11164 (N.D. Ill. Dec. 10, 2025); *Elan Harris v. The P'ships et al.*, No. 25-cv-12180 (N.D. Ill. Dec. 15, 2025); *Caroline Valsaint v. The P'ships et al.*, No. 25-cv-12919 (N.D. Ill. Dec. 15, 2025); *Catherine Frances Raynor v. The P'ships et al.*, No. 25-cv-11809 (N.D. Ill. Dec. 10, 2025).

3

that they are "not affiliated with each other" holds true, the Court can pursue other remedies.

### III.    Conclusion

For the stated reasons, the Court will hold the Group A Defendants' Motion to Dismiss [45] in abeyance pending limited expedited discovery as to the relationships among the Group A Defendants. The Court grants Anderson Design Group 60 days to complete this discovery. By May 1, 2026, Anderson Design Group and the Group A Defendants shall submit a joint status report containing agreed upon dates for serving and answering written discovery and the parameters of such discovery.

E N T E R:

Dated: April 24, 2026

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| WOLVERINE GROUP PTY LTD, ) | Case No. 1:24-cv-3164 |
| WILD WOOL AUSTRALIA PTY ) | |
| LTD, WILD WOOL ) | |
| PRODUCTIONS PTY LTD, ) | Judge Sharon Johnson Coleman |
| WILD WOOL RETAIL PTY LTD, ) | |
| TODD MICHAEL WATTS, AND ) | Magistrate Judge Jeannice W. Appenteng |
| DOES 1-10, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| WILD WOOL PRODUCTIONS ) | |
| PTY LTD, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DECKERS OUTDOOR ) | |
| CORPORATION, ) | |
| ) | |
| Counter-Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deckers Outdoor Corporation designs and sells footwear and other

products under the UGG brand and holds multiple UGG trademark registrations

with the U.S. Patent and Trademark Office. In this lawsuit, plaintiff alleges that

Australian defendants Wolverine Group Pty Ltd ("Wolverine"), Wild Wool Australia

Pty Ltd ("WWA"), Wild Wool Productions Pty Ltd ("WWP"), Wild Wool Retail Pty

Ltd ("WWR"), and Todd Michael Watts, who is the Managing Director of each company, have infringed and diluted the UGG marks in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Patent Act, 35 U.S.C. § 1 *et seq.* Currently before the Court is plaintiff's motion to compel jurisdiction-related discovery it says is necessary to respond to defendants' motions to dismiss. For the reasons stated here, the motion to compel is granted in part and denied in part.

## **BACKGROUND**[1]

### I.     The Defendants

Wolverine, WWP, WWR, and WWA are closely held entities that are managed by defendant Watts and operate out of the same address in Queensland, Australia. Dkts. 102-1, 102-2, 102-3, 102-4. WWP, WWR, and WWA are owned by the Watts Parsons Family Trust, with Wolverine serving as Trustee. Dkt. 90-2, Watts 3/10/2025 Aff., ¶ 13. Wolverine was established in September 2015 as a holding company. Mr. Watts owns Wolverine's two shares of stock and his wife was Managing Director until he replaced her in November 2023. Dkt. 78, SAC, ¶ 18; Dkt. 102-1.

In May 2017, Mr. Watts formed WWP and WWR and became the Managing Director and Secretary of both companies, with his wife again serving as General Manager. Dkts. 102-3, 102-4. WWP and WWR each have a single share of stock which Mr. Watts owns. *Id.* On June 2, 2017, WWP and WWR purchased the

---

[1] In ruling on this motion the Court has considered defendants' sur-reply found at [122-1]. Accordingly, defendants' motion for leave to file a sur-reply [121], [122] is granted.

kangaroo fur and sheep skin business from a company called KF & S Pty Ltd, which was then liquidated. Dkt. 115 at 6; Dkt. 78, SAC, ¶ 28; Dkt. 115-7 at 9, ROG 22.

Wolverine separately purchased KF & S's intellectual property, including the following marks and logos relevant to this lawsuit: (1) UGG SINCE 1974, Australian Trademark Registration ("ATR") No. 1968822; (2) UGG AUSTRALIAN MADE SINCE 1974, ATR No. 1582832; and (3) UGG REPUBLIC, ATR No. 1366195. Dkt. 90-2, Watts 3/10/2025 Aff., ¶ 3; Dkt. 78, SAC, ¶¶ 28, 29. Wolverine claims that it started licensing those marks to WWP and WWR in June 2017, Dkt. 115-3 at 10, ROG 21, at which point WWP began making UGG-branded footwear and other products. Dkt. 115-3 at 11, ROG 23. WWP operates the websites and social media accounts used to market those products, Dkt. 115-7 at 5-6, ROGs 15, 16, but Wolverine is the registrant of the domain names. Dkt. 90-2 ¶ 12.

WWR sells the products that WWP manufactures. Prior to the global pandemic, WWR had several retail stores in Australia but currently has only one physical store located on the WWP premises in Australia. Dkt. 102-16, Watts 1/13/2025 Aff., ¶ 13. Mr. Watts claims that WWR "pays fair-market rent" to WWP for use of the retail space. *Id.* WWA was formed on March 19, 2021 with Mr. Watts as Managing Director and Secretary and owner of the company's single share of stock. Dkt. 102-2. According to defendants, WWA was organized to wholesale UGG-branded products made by WWP to third-party retailers in Australia. Dkt. 115-5 at 9, ROG 23. Defendants claim that WWA ceased operations following the Covid-19 pandemic and is "an inactive entity." *Id.*; Dkt. 115 at 7.

## II.     The Motion to Compel

Plaintiff filed suit alleging that each defendant has engaged in unlawful trademark infringement and dilution of its UGG marks. All of the defendants answered plaintiff's Amended Complaint, Dkt. 37, but seek dismissal of the Second Amended Complaint ("SAC") on various grounds. Dkt. 90, 93, 94, 95. Relevant here are arguments that this Court lacks personal jurisdiction over Wolverine and WWA, and that there is no basis to pierce the corporate veil to hold those entities or Mr. Watts liable for any actions by WWP and WWR. Dkts. 90, 93, 95. Plaintiff has moved to compel responses to several requests for production ("RFP") and a Rule 30(b)(6) deposition of Mr. Watts, arguing that the discovery is necessary to respond to defendants' jurisdictional and veil-piercing arguments. Defendants object that plaintiff cannot make the requisite showing of entitlement to jurisdictional discovery and say that they have fully responded to the RFPs in any event, making a deposition unnecessary and wasteful. Dkt. 115; Dkt. 122-1.

<strong><u>DISCUSSION</u></strong>

## I.     Standard of Review

"The Court has broad discretion to order jurisdictional discovery to ascertain whether it has personal jurisdiction over named defendants." *Esquivel v. Airbus Americas, Inc.*, No. 20 C 7525, 2021 WL 4395815, at \*1 (N.D. Ill. May 3, 2021). To secure jurisdictional discovery, plaintiff "must first make a 'colorable' showing of personal jurisdiction." *Dale v. Deutsche Telekom AG*, No. 22 C 3189, 2023 WL 7220054, at \*8 (N.D. Ill. Nov. 2, 2023); *see also Cent. States, Se. & Sw. Areas Pension*

4

*Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).[2] Courts generally grant jurisdictional discovery if the plaintiff "can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gillam v. Abro Kalamazoo 3, Inc.*, 712 F. Supp. 3d 1079, 1084 (N.D. Ill. 2024) (quoting *Gilman Opco LLC v. Lanman Oil Co., Inc.*, No. 13 C 7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014)). Though this standard is low, discovery will not be permitted based on "bare, attenuated, or unsupported assertions of personal jurisdiction." *Id.*

"In ruling on a motion to take jurisdictional discovery, the Court accepts as true the factual allegations relevant to jurisdiction made in Plaintiff's complaint and draws all reasonable inferences in Plaintiff's favor." *Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16 C 8656, 2017 WL 2985757, at *4 (N.D. Ill. July 13, 2017) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006)). However, if defendants submit affidavits opposing jurisdiction or contradicting plaintiff's allegations, plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Seventh Circuit has cautioned that "[f]oreign nationals

---

[2] In *Reimer*, the Seventh Circuit stated that a plaintiff must establish "a colorable *or prima facie* showing of personal jurisdiction before discovery should be permitted." 230 F.3d at 946 (emphasis added). Several district courts have noted that since "a 'prima facie' showing based on the written submissions is sufficient to establish personal jurisdiction, it seems illogical to apply this standard to a request for discovery." *Bradford Victor-Adams Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 18 C 4167, 2019 WL 3604594, at *4 n.4 (C.D. Ill. Aug. 6, 2019); *Dale*, 2023 WL 7220054, at *8 n.8; *Rebel Hospitality LLC v. Rebel Hospitality LLC*, No. 21 C 5132, 2022 WL 797035, at *6 n.4 (N.D. Ill. Mar. 16, 2022). This Court agrees that *Reimer's* "heightening of the standard to secure discovery seems to be unintentional" and so applies a "colorable" standard to plaintiff's request for jurisdictional discovery. *Id.*

usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer*, 230 F.3d at 946.

## II. Analysis

### A. Colorable Showing of Jurisdiction

Plaintiff's SAC alleges that Mr. Watts "personally directed, controlled, and participated in the manufacture, offering for sale and sale of Infringing Products to consumers in the United States bearing Deckers' UGG Trademarks and incorporating Deckers' Patented UGG Designs." Dkt. 78, SAC, ¶ 22. Plaintiff makes similar allegations that Mr. Watts has directed and controlled the "deliberate attempts to dilute and tarnish Deckers' UGG Trademarks and undermine Deckers' right to the exclusive use of Deckers' UGG Trademarks." *Id.*

With respect to the four corporate entities (the "Pty Ltd Defendants"), plaintiff alleges that they are alter egos of Mr. Watts and "there is such a unity of interest and ownership that the individuality or separateness of Mr. Watts and the Pty Ltd Defendants has ceased, and adherence to the fiction of the separate existence of the Pty Ltd Defendants would, under the circumstances presented by this case, sanction a fraud or promote injustice." *Id.* ¶ 23. Plaintiff claims that: the corporate defendants and Mr. Watts have commingled funds and other assets; Mr. Watts has treated assets of the corporations as his own; Mr. Watts has failed to adequately capitalize the corporate defendants; the corporations are "mere shells, instrumentalities, or conduits for the business of Mr. Watts"; and Mr. Watts has

6

disregarded corporate formalities and failed to maintain an arm's length relationship with the corporate defendants. *Id.*

Defendants argue that these allegations are insufficient to justify jurisdictional discovery, citing affidavits from Mr. Watts stating that Wolverine, WWA, WWP, and WWR are wholly independent entities that maintain all corporate formalities and are entirely independent of one other. Dkt. 102-14, Watts 10/25/2024 Aff.; Dkt. 102-16, Watts 1/13/2025 Aff.; Dkt. 90-2, Watts 3/10/2025 Aff.; Dkt. 93-2, Watts 3/10/2025 Aff. According to defendants: (1) WWP and WWR are the only entities that have been involved in the marketing and selling of accused UGG-branded products in the U.S.; (2) WWP is the only entity involved in the manufacture of the accused UGG-branded products; (3) Wolverine licenses the UGG trademarks to WWP and WWR but does not control how they use the marks; and (4) neither Wolverine nor WWA has any suit-related contacts with the United States. Dkt. 115 at 6, 12-13.

The Court agrees with defendants' general proposition that "[m]ere overlap in ownership or close control of a corporation is insufficient to pierce the corporate veil." Dkt. 115 at 13. *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008). But the question here is not whether plaintiff can affirmatively prove the corporate veil should be pierced, but whether plaintiff should be permitted some jurisdictional discovery to test defendants' assertions regarding corporate independence. *Cf. Helping Hand Caregivers, Ltd. V.*

*Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) (addressing proper scope of discovery for purposes of a Rule 56 motion for summary judgment).

Mr. Watts is the sole owner/shareholder of every one of the corporate entities. He serves as the corporate representative who both offered and accepted licensing agreements for UGG-branded products, and he runs the entities that manufacture and sell the licensed UGG-branded products. Given these overlapping relationships, plaintiff has made at least a colorable showing that Mr. Watts may be the alter ego of the corporate defendants and that the actions of one entity may be imputed to the others. This Court finds that targeted jurisdictional discovery is warranted to resolve ambiguities as to the corporate structures and operations of the defendants. *See, e.g., Nicks v. Koch Meat Co.*, No. 16 C 6446, 2016 WL 6277489, at \*5 (N.D. Ill. Oct. 27, 2016) ("It is within the Court's discretion . . . to permit targeted jurisdictional discovery on Plaintiffs' 'alter ego' theory as to Koch Foods of Mississippi."); *Esquivel*, 2021 WL 4395815, at \*2 (allowing jurisdictional discovery given ambiguity as to which entity was responsible for designing, manufacturing, and selling the allegedly defective product). *Compare Marks*, 2017 WL 2985757, at \*5 (denying request for jurisdictional discovery in part because companies maintained separate and non-overlapping boards); *Ilustrata Servicos Design, LTDA v. PDD Holdings, Inc.*, No. 23 C 4824, 2024 WL 3177901, at \*3, 5 (N.D. Ill. June 26, 2024) (disallowing jurisdictional discovery where the plaintiff alleged nothing more than "a generic parent-subsidiary relationship").

8

### B.    The Requested Discovery

Plaintiff seeks documents responsive to 11 RFPs[3] and a Rule 30(b)(6) deposition of Mr. Watts in the United States. Defendants insist that they have produced all relevant information and that a deposition would be unduly burdensome for Mr. Watts. The Court considers the requests in turn.

### 1.    RFPs 54 and 60

RFPs 54 and 60 seek documents reflecting agreements, including License Deeds, between WWP, WWR, Wolverine, and the Watts Parsons Family Trust ("Trust"). Dkt. 102-5 at 27, RFP 60; Dkt. 102-8 at 9, RFP 54. As noted, Wolverine started licensing its UGG-branded marks to WWP and WWR in June 2017. Dkt. 115-3 at 10, ROG 21. In response to discovery requests, however, defendants have produced only a December 6, 2023 License Deed between Wolverine (acting as Trustee for the Trust), WWP, and WWR, which Mr. Watts signed on behalf of all three entities. Dkt. 124 at 5. Plaintiff has reasonably requested copies of any previous License Deeds involving the UGG-branded marks. Dkt. 120 at 8-9. Defendants say they are "actively searching for and w[ill] produce chain of title documents, which would include any other license deeds should they exist." Dkt. 122-1 at 7-8. Based on this representation, plaintiff's motion to compel as to RFPs 54 and 60 is granted.

---

[3] Plaintiff's motion to compel included RFPs 14, 61, and 77 but those requests are not mentioned in the reply brief. Dkt. 120. The Court deems the motion to compel responses to those requests withdrawn.

### 2. RFP 40

RFP 40 seeks documents "sufficient to identify all facilities owned, operated, controlled or used by Defendants in connection with the manufacture, distribution and sales of the Defendants' UGG Products." Dkt. 102-8 at 7, RFP 40. As noted, Wolverine, WWP, WWR, and WWA all operate out of the same address in Queensland, Australia. Dkts. 102-1, 102-2, 102-3, 102-4. Mr. Watts represents that WWR "pays fair-market rent" to WWP for use of the retail space, Dkt. 102-16, Watts 1/13/2025 Aff., ¶ 13, but defendants have not produced any lease agreements. The existence (or lack) of a lease may be relevant to whether the defendant companies have an arm's length relationship with one another and defendant does not argue that the leases would be burdensome to produce. To the extent Wolverine, WWP, WWR, WWA, and/or the Trust have any lease agreements among them, plaintiff's motion to compel their production is granted. Dkt. 120 at 10. Defendants shall also produce documents reflecting any rental payments made among the entities.

### 3. RFPs 70-73

RFPs 70-73 are aimed at discerning who controls, manages, owns, and operates the websites and social media accounts used to market UGG-branded products. Defendants claim that the December 2023 License Deed establishes that all domain names and social media accounts owned by Wolverine have been licensed to WWP and WWR since 2017. Dkt. 122-1 at 8; Dkt. 124. Defendants have already agreed to search for and produce any additional license agreements, and

10

they must also produce documents reflecting ownership/registration of the domain names and social media accounts used to market and sell the accused UGG-branded products. As for "who creates the content" on the website and runs the social media accounts, plaintiff may issue an interrogatory requesting the name(s) of such individual(s). Plaintiff's motion to compel responses to these requests is otherwise denied.

### 4. RFPs 69 and 76

In response to RFPs 69 and 76, which seek information about defendants' governance and ownership, WWP produced its "Constitution" describing, among other things, protocols for the issuance of shares, rules regarding meetings of the company, bylaws regarding management of the company, and identification of the members of WWP. Dkt. 120 at 12. Defendants have declined to produce similar documentation for Wolverine, WWR, or WWA. *Id*. The existence or lack of such governance documents may be relevant to determining whether defendants have observed proper corporate formalities, which may speak to the existence of personal jurisdiction. Production of such documents would not be burdensome and plaintiff's motion to compel is granted.

### 5. RFPs 36 and 91

RFPs 36 and 91 seek information about the Watts Parsons Family Trust, including the Trust instrument, amendments to the instrument, and any assets controlled by the Trust. Dkt. 120 at 6; Dkt. 102-8 at 7, RFP 36; Dkt. 102-5 at 42, RFP 91. As plaintiff explains, it seeks to understand "the relationship of the Watts

11

Parsons Family Trust to each of the Defendants, its ownership of one or more of the Defendants, its ownership and license of the IP that is the subject of this action, and its involvement in or knowledge of any of the Defendants' operations that gave rise to the claims asserted in this action." Dkt. 120 at 7.

The Trust is not a named defendant in this case and the broad request for information about all of its assets is unduly burdensome and denied. Since the Trust owns WWP, WWR, and WWA and is identified as each entity's sole affiliate, however, defendants must produce documents evidencing the Trust's ownership of those companies and/or the UGG marks at issue in this case. Dkt. 120 at 6; Dkt. 90-2 ¶ 13. Unrelated information may be redacted.

### 6. 30(b)(6) Deposition

Finally, plaintiff seeks to compel Mr. Watts to travel to the United States for a Rule 30(b)(6) deposition in his capacity as the corporate representative of each entity. Dkt. 101 at 15; Dkt. 120 at 15-16. Plaintiff says the deposition is necessary to "provide clarity as to certain looming ambiguities," including: "(1) the existence or non-existence of Defendants WWA's, Wolverine's, and WWR's constitutions; (2) the ownership, operation, and control of Defendants' Website and social media accounts; (3) the ownership, licensing, and control over the IP assets at issue in this action; (4) the nature of each Defendant's occupancy at Defendants' Address; (5) the status of WWA, where he has alleged that it only continues to exist due to this lawsuit; (6) the purpose, operation, scope, reach, control, and ownership of each Entity Defendant; and (7) whether the Defendants are or were working together to engage

12

in the unlawful conduct that is the subject of this action and whether any or all of them have benefitted as a result." Dkt. 120 at 16. Defendants reiterate their flawed arguments about there being a lack of a colorable claim of jurisdiction, and object that plaintiff is attempting to "drive up costs and impose an undue burden on Mr. Watts" by insisting that he travel from Australia to the United States for a limited deposition on jurisdictional topics. Dkt. 115 at 17.

Plaintiff's motion to compel a Rule 30(b)(6) deposition is granted. The Court has already determined that some jurisdictional discovery is warranted, and Mr. Watts is best situated to address any questions concerning the corporate structures and operations of the defendant entities. The deposition will count against the 10-deposition limit and the parties shall meet and confer regarding the topics, timing, and location of the deposition. To minimize the burden on Mr. Watts, the parties shall keep in mind that the Court will not require Mr. Watts to travel to the United States for a deposition solely related to issues of jurisdiction absent a showing of unusual circumstances. *Tile Unlimited, Inc. v. Blanke Corp.*, No. 10 C 8031, 2013 WL 2451143, at *1 (N.D. Ill. June 5, 2013) (quoting *Chris–Craft Indus. Prods., Inc., v. Kuraray Co.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999)) ("When a corporation objects to a deposition being taken at a place other than its principal place of business, 'the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation.'").

13

## **CONCLUSION**

For the reasons stated above, plaintiff's motion to compel [101] is granted in part and denied in part. The stay of discovery is lifted solely for the purpose of conducting jurisdictional discovery in accordance with this ruling.

**So Ordered.**

**DATED: 4/28/2025**

_____

**Jeannice W. Appenteng**
**United States Magistrate Judge**

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY R. NICKS and JAMES EARL PATRICK, individually and on behalf of all persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16-cv-6446 |
| KOCH MEAT CO., INC., d/b/a KOCH FOODS, KOCH FOODS OF MISSISSIPPI, LLC, and JET POULTRY SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 21, 2016, Plaintiffs Jimmy R. Nicks ("Nicks") and James Earl Patrick

("Patrick"), individually and on behalf of all persons similarly situated, filed a Collective Class

Action Complaint against Defendants Koch Meat Co., Inc. d/b/a Koch Foods ("Koch Meat"),

Koch Foods of Mississippi, LLC ("Koch Foods of Mississippi"), and JET Poultry Services, Inc.

("JET"), seeking relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*

("FLSA"). (R.1). JET moved to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and/or improper venue. (R.37).

Koch Meat and Koch Foods of Mississippi (collectively, the "Koch Defendants") separately

moved to dismiss the Complaint on similar grounds. (R.40). In the alternative to dismissal, all

Defendants request a transfer to the Southern District of Mississippi pursuant to 28 U.S.C. §§

1404 or 1406.

The Court now considers the Koch Defendants' jurisdiction and venue challenge. (R.40). For the following reasons, the Court denies that motion without prejudice to refile after conducting the limited jurisdictional and venue discovery described herein.

**BACKGROUND**

**I.      FLSA Complaint Allegations**

Plaintiffs Nicks and Patrick are Mississippi residents who were "previously employed by Defendants to catch and cage chickens as . . . member[s] of a live-haul crew[.]" (R.1, Compl. ¶ 3-4). Plaintiffs allege that the Koch Defendants operate "one of the largest vertically integrated poultry processors in the United States, with locations across Alabama, Georgia, Illinois, Mississippi, Ohio and Tennessee." (*Id.* ¶ 16). As part of that enterprise, the Koch Defendants engage third-party contractors—such as JET—to employ chicken catchers—such as Plaintiffs—for their live-haul crews, who then "travel to [Koch] farms to capture Koch's chickens and place them in Koch's cages, for transport to the Koch poultry processing plants." (*Id.* ¶¶ 24-25, 31).[1] According to Plaintiffs, all three Defendants play a role in hiring live-haul crews, supervising live-haul crews, and determining and recording "the piece rate and number of loads captured in order to compensate the live-haul crews." (*Id.* ¶¶ 32-34, 41, 45-46). With respect to compensation in particular, Plaintiffs allege that "Defendants paid [them] and the FLSA Collective a piece rate basis, regardless of the number of hours worked, and failed to pay overtime as required by federal law." (*Id.* ¶ 59). Accordingly, Plaintiffs now bring a claim for overtime wage violations against the Koch Defendants and JET as joint employers under the FLSA. (*Id.* ¶¶ 47-48, 68, 72-73). Plaintiffs purport to bring this FLSA collective action on behalf of "[a]ll individuals employed by [Koch Meat, Koch Foods, and/or JET] as members of live-haul, chicken catching crews in the United States, and who were paid on a piece rate and did

---

[1] Throughout the Complaint, Plaintiffs refer to Koch Meat and Koch Foods as a collective, "Koch." (*Id.* ¶ 16).

2

not receive overtime compensation from the three years preceding the date of the filing of this Complaint." (*Id.* ¶ 14).

## II.      Jurisdictional Record

In terms of jurisdictional allegations, Plaintiffs allege that Defendant Koch Meat is "an Illinois corporation headquartered in Park Ridge, Illinois, with facilities in Alabama, Georgia, Mississippi, Tennessee, and Illinois[.]" (*Id.* ¶ 5).  Koch Foods of Mississippi "is a Mississippi entity headquartered in Morton, Mississippi, with processing plants in Mississippi." (*Id.* ¶ 7). JET, meanwhile, "is a Mississippi corporation headquartered in Summit, Mississippi, providing staffing of live-haul chicken-catcher crews for the Koch Defendants." (*Id.* ¶ 9).

As Mississippi citizens, Defendants JET and Koch Foods of Mississippi challenge the Court's personal jurisdiction over them under Federal Rule of Civil Procedure 12(b)(2).  (R.37, R.40).  JET has submitted an affidavit from its Director and Vice President, attesting that JET has never advertised in Illinois, conducted or solicited business in Illinois, or appointed an agent for service of process in Illinois.  (R.63-1, Corrected Armstreet Decl. ¶¶ 5-7).  Instead, all of JET's "employees, officers, agents and shareholders reside in Mississippi," where JET manages "a contract with Koch Farms of Mississippi to catch chickens in Morton, Mississippi." (*Id.* ¶¶ 9-11, 15).[2]  Koch Farms of Mississippi pays JET "for the chickens [JET's] workers catch in Mississippi[,]" while JET then "pays its workers, who are Mississippi residents, in Mississippi." (*Id.* ¶¶ 12-13).  According to its employment files, "the named Plaintiffs and each putative collective action member who has filed a consent in this action was also a resident of Mississippi when hired by [JET]." (*Id.* ¶ 14).  JET maintains its pay records and employment files in Mississippi.  (*Id.* ¶ 16).

---

[2]  The original Armstreet Declaration, submitted by JET, identified the relevant contracting party as named Defendant, Koch *Foods* of Mississippi.  (R.38-1, Armstreet Decl. ¶¶ 9-10).  The Corrected Armstreet Declaration clarified that the signatory was actually Koch *Farms* of Mississippi, another Mississippi-based Koch entity.

Koch Foods of Mississippi, too, has submitted several employee affidavits to contest personal jurisdiction in Illinois. (R.42-1). In particular, Lance Buckert—Chief Financial Officer of Koch Foods Incorporated, which is the sole member of Koch Foods of Mississippi and the sole stockholder of Koch Meat—attested that Koch Foods of Mississippi does not: (i) have an office in Illinois; (ii) own real property in Illinois; (iii) employ anyone in Illinois; (iv) pay income or property taxes in Illinois; or (v) have a telephone listing or phone number in Illinois. (R.42-1, Buckert Decl. ¶¶ 2-9). In addition, Laney White, Koch Foods of Mississippi's "Complex Manager," attested that its poultry processing business, including the operation of a slaughter plan in Morton, Mississippi (the "Slaughter Plant"), is limited to the State of Mississippi. (R.42-1, White Decl. ¶¶ 4-8). Ronnie Joe Keyes, its "Live Production Manager," meanwhile, explained that he "oversees the production of live broiler chickens before they are delivered to the Slaughter Plant for processing" – commonly referred to as "grow-out" operations. (R.42-1, Keyes Decl. ¶ 5). As part of the grow-out operations, JET "catches broiler chickens on the growers' farms and places them in cages that are loaded onto poultry transport vehicles for delivery to the Slaughter Plant." (*Id.* ¶ 7). All of these "live-haul services related to chickens supplied to the Slaughter Plant for processing take place in Mississippi." (*Id.* ¶ 8). In addition, Keyes appears to be a signatory on the "Poultry Catcher Agreement" between JET and "Koch Farms of Mississippi, LLC." (*Compare id. with* R.63-1 at 4).

For its part—although not contesting personal jurisdiction in Illinois—Koch Meat "does not have any business records relating to any services provided" by JET, and "does not control the pay policies or the day-to-day operations" of Koch Foods of Mississippi. (R.42-1, Buckert Decl. ¶ 12; R.62-4, Buckert Supplemental Decl. ¶ 4). Koch Meat, moreover, does not "engage in

4

any live haul operations" or "own any facilities that process any live chickens." (R.42-1, Buckert Decl. ¶¶ 10-11).

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Central States v. Phencorp. Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006). In analyzing a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without the benefit of an evidentiary hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). Under such circumstances, courts take "the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Id.* Where the plaintiff fails to refute facts contained in the defendant's affidavit, however, courts accept those facts in the affidavit as true. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. *See* Fed.R.Civ.P. 12(b)(3). Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, No. 14-2484, 2016 WL 4245497, at *5 (7th Cir. Aug. 11, 2016) (emphasis in original); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion). Against a Rule 12(b)(3)

5

challenge, the court must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor.  *See Gilman*, 2014 WL 1284499 at *2.  When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *See* 28 U.S.C. § 1406(a).

**ANALYSIS**

### I.     Personal Jurisdiction

#### A.     Applicable Legal Principles

"In a federal question case . . . a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant."  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  Here, the federal statute on which Plaintiffs rely—the FLSA—does not authorize nationwide service of process.  *See Berger v. PIKR, Ltd.*, No. 14 C 8543, 2015 WL 2208200, at *3 (N.D. Ill. May 8, 2015); 29 U.S.C. § 216(b) ("An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction").  Accordingly, the Court must analyze Defendants' amenability to personal jurisdiction under the Illinois long-arm statute.  *See Mobile Anesthesiologists*, 623 F.3d at 443.  That statute "permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution."  *Id.* (citing 735 ILCS 5/2-209(c)).  "Thus, the [Illinois] statutory question merges with the constitutional one[.]"  *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).  Because the Seventh Circuit has recognized that "there is no operative difference between these two constitutional limits," the key question is "whether the exercise of personal jurisdiction would violate federal due process."  *Mobile Anesthesiologists*, 623 F.3d at 443 (citations omitted).

6

Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler v. Bauman*, 134 S. Ct. 746, 753 (2014)). A court may assert general jurisdiction over a foreign corporation "to hear any and all claims against it" only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction, on the other hand, "is available for a suit that arises out of the forum-related activity." *Advanced Tactical*, 751 F.3d at 800. Three requirements exist to establish specific jurisdiction: "(1) the defendant must have purposely availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

### B. Koch Foods of Mississippi's Jurisdictional Challenge

#### 1. "Alter Ego" Jurisdiction

Plaintiffs argue that the Court may exercise both general and specific jurisdiction over Koch Foods of Mississippi because it "is so inextricably intertwined with Koch Meat that they are one in the same." (R.56, Response Br. at 1). As evidence of this purported "alter ego" relationship, Plaintiffs point to: (i) a webpage from "Koch Foods, Inc." stating that "Koch Foods is a leading poultry processor in the United States with [various] locations" and "13,000 employees across our corporate office, processing locations and distribution centers" (R.56-2); (ii) corporate communications stating that "Koch Foods [Inc.] will spend a total of $35 million to

expand two poultry processing plants in Mississippi" (R.56-1); (iii) documents reflecting an overlap in officers and directors, and external counsel, between Koch Foods, Inc., Koch Meat, and Koch Foods of Mississippi (R.56-3; R.56-4; R.56-5; R.56-6; R.56-7; R.56-8; and R.56-9); (iv) documents reflecting an Illinois mailing addresses for Koch Farms of Mississippi and/or Koch Foods of Mississippi (R.56-10 (real estate records); R.56-11 (UCC filings); R.71-1, Ex. A (OHSA News Release, "Headquartered in Park Ridge, Illinois, Koch Foods of Mississippi is a subsidiary of Koch Foods, Inc.")); and (v) litigation filings in which Koch Foods, Inc. prosecutes the claims of its affiliates, and/or its affiliates assume its jurisdictional ties (R.56-12; R.56-13).

Under Seventh Circuit law, "due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Against this presumption, Illinois courts recognize two methods by which plaintiffs may establish "minimum contacts" via imputation between related entities – (1) providing "evidence that would justify piercing the corporate veil[,]" or (2) demonstrating that one entity exercised an "unusually high degree of control" over the other. *See id.* at 945; *Salon Grp., Inc. v. Salberg*, 156 F. Supp. 2d 872, 876 (N.D. Ill. 2001); *see also Schultheis v. Cmty. Health Sys., Inc.*, No. 11-0435-DRH, 2012 WL 253366, at *2-3 (S.D. Ill. Jan. 26, 2012) (noting the same and observing that plaintiffs offered a "personnel policy" reflective of the "daily, operational control that is the sine qua non of an alter ego relationship").

Construing the Complaint "liberally, in its entirety, and with every inference drawn in favor" of Plaintiffs, *see Phencorp*, 440 F.3d at 877-78, Plaintiffs have demonstrated (i) an overlap in directors and officers among Koch entities; (ii) a tendency by "Koch Foods, Inc." to

8

issue corporate communications and filings on behalf of its affiliates; and (iii) the existence of a "vertically integrated" enterprise in which "Koch" exerts some control at each stage of the business. Thus, while Plaintiffs' allegations and exhibits support the inference that the Koch Defendants "work together as a vertically integrated enterprise[,]" they do not "raise reasonable inferences about the remaining [imputation] factors, including the several that have to do with the formal separation of Defendants' assets or with Defendants' internal governance structure." *See Mountain Link Associates, Inc. v. Chesapeake Energy Corp.*, No. 2:13-CV-16860, 2014 WL 4851993, at \*9 (S.D.W. Va. Sept. 29, 2014). The Court recognizes, however, that this information is within the Koch Defendants' control.

### 2. Jurisdictional Discovery over Koch Foods of Mississippi

Jurisdictional discovery is appropriate here. As the Seventh Circuit has observed, "[t]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) (citation omitted). Similarly, "having common officers and directors . . . is insufficient to justify disregarding the corporate form[.]" *Id.* It is within the Court's discretion, though, to permit targeted jurisdictional discovery on Plaintiffs' "alter ego" theory as to Koch Foods of Mississippi. *See Reimer*, 230 F.3d at 947; *see also Novo 1, Inc. v. Levendo, LLC*, No. 10-CV-892, 2011 WL 3047679, at \*2 (E.D. Wis. July 25, 2011) ("the court was not required to conclusively determine that Hines is the alter ego of Levendo before allowing Novo 1 to conduct a limited deposition of Hines and to make limited written discovery requests").

Here, the factual record is ambiguous as to the Koch Defendants' internal structure. *See Gilman*, 2014 WL 1284499 at \*6 (jurisdictional discovery is warranted where "the factual record

9

is at least ambiguous or unclear on the jurisdiction issue"). While Koch Foods of Mississippi represents that Koch Meat is *not* its parent (R.62, Reply Br. at 4), Plaintiffs are suing "Koch Meat Co., Inc., *d/b/a Koch Foods*." Lance Buckert, the Chief Financial Officer of Koch Foods Incorporated with "personal knowledge of the assets and operations of [its] subsidiaries," attested that "Koch Foods Incorporated is the sole member of Koch Foods of Mississippi, LLC and is the sole stockholder of Koch Meat Co., Inc." (R.42-1, Buckert Decl. ¶¶ 2-3). Koch Foods, Inc.—not Koch Meat—likewise appears in many of Plaintiffs' referenced exhibits. Given this ambiguity, the Court permits Plaintiffs to take the deposition of Lance Buckert concerning paragraphs 2-3 of his initial declaration. (*Id.*). Plaintiffs may inquire about the "assets and operations" of Koch Foods of Mississippi and/or Koch Farms of Mississippi as related to an "alter ego" showing.

In addition, the factual record is unclear as to the "control" exerted by "Koch Meat Co., Inc., d/b/a Koch Foods" over the chicken catching and/or caging business. *See Gilman*, 2014 WL 1284499 at *6. While Plaintiffs point to paragraphs 18-27 and 31-35 of the Complaint for their "control" allegations, (R.56, Response Br. at 7), these allegations conflate the two named Koch Defendants. Moreover, the submitted affidavits call into question the accuracy of these generalized "Koch" allegations as related to Koch Meat's control over and/or involvement in "the chicken catching operation." The Buckert Declaration, for example, states that "Koch Meat" does not "own any live chickens or engage in any live haul operations[,]" nor does it "own any facilities that process any live chickens." (R.42-1, Buckert Decl. ¶¶ 10-11). *Contra Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 454-55 (D. Md. 2000) (observing that "Defendant Perdue Farms, Inc.," not any affiliate, "at all times, retains ownership of chickens"). Rather, it is Koch Foods of Mississippi—a Mississippi entity—that oversees "grow-out" operations,

10

including the work of live-haul crews, and operates the relevant poultry processing facilities in Mississippi. (R.42-1, White Decl. ¶¶ 4-8; R.42-1, Keyes Decl. ¶¶ 3-9). The Supplemental Buckert Declaration, meanwhile, states that "Koch Meat does not control the pay policies or the day-to-day operations of Koch [Foods of] Mississippi." (R.62-4, Buckert Supplemental Decl. ¶ 4).

These declarations, however, do not speak to whether "Koch Meat Co., Inc., *d/b/a Koch Foods*"—that is, Koch Foods, Incorporated—exerts any operational control over Koch Foods of Mississippi and/or Koch Farms of Mississippi. *Contra Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014) (jurisdictional discovery is unwarranted where "the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction"). Given this ambiguity, and because Plaintiffs' jurisdictional assertions are not "clearly frivolous," the Court permits Plaintiffs to take the deposition of Lance Buckert concerning paragraphs 10-11 of his initial declaration, and paragraph 4 of his supplemental declaration. Plaintiffs may further examine Buckert concerning Koch Foods, Incorporated's control over and/or involvement in the chicken-catching operations of Koch Foods of Mississippi and/or Koch Farms of Mississippi. *See Gilman*, 2014 WL 1284499 at *6. The Court also grants Plaintiffs the opportunity to conduct a Rule 30(b)(6) deposition of Koch Foods of Mississippi concerning their "alter ego" theory of jurisdiction. In particular, Plaintiffs may examine the 30(b)(6) designee as to: (i) the "veil-piercing" factors identified by the Seventh Circuit in *Judson*, 529 F.3d at 379; and (ii) the "extraordinary control" factors identified by the district court in *Schultheis*, 2012 WL 253366 at *3. To the extent there is overlap between the two theories, *see Wells v. Edison Int'l, Inc.*, No. 09 C 1728, 2009 WL 1891801, at *5 (N.D. Ill. July 1, 2009), the Court prohibits the elicitation of duplicative testimony.

11

For the stated reasons, the Court permits limited jurisdictional discovery relevant to Plaintiffs' "alter ego" theory of jurisdiction. The parties shall complete these depositions by November 18, 2016. The Court therefore denies Koch Foods of Mississippi's Rule 12(b)(2) motion to dismiss, without prejudice to refile once this discovery is completed.

## II.    Venue

The Court next considers the Koch Defendants' venue challenge under Rule 12(b)(3).

### A.    28 U.S.C. § 1391(b)(1)

Plaintiffs first argue that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1). The Court reserves opinion on this issue until it determines the personal jurisdiction challenges brought by JET and, if it decides to refile, Koch Foods of Mississippi. *See* 28 § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, *if all defendants are residents of the State* in which the district is located") (emphasis added); *see also* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

### B.    28 U.S.C. § 1391(b)(2)

Plaintiffs next argue that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2). Section 1391(b)(2) provides that "a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" As the Court has previously recognized, the test "is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Allstate Life*

12

*Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015).

According to Plaintiffs, a "substantial portion" of the activities giving rise to their FLSA claim occurred in Illinois, where Koch Meat issues "[a]ll compensation policies, employment control and protocols" for its affiliates and contractors to use in poultry processing operations. (R.56, Response Br. at 1-2, 7, 12-13, 17). The Koch Defendants, on the other hand, argue that this case concerns Mississippi chicken catchers, hired by JET, who were allegedly denied overtime compensation in Mississippi. (R.1, Compl. ¶¶ 3-4, 7, 9, 14, 21, 31-35; R.63-1, Corrected Armstreet Decl. ¶¶ 13-21; R.42-1, Keyes Decl. ¶¶ 3-9; R.42-1, Buckert Decl. ¶ 12; R.62-4, Buckert Supplemental Decl. ¶ 4)). The operative activities giving rise to Plaintiffs' overtime compensation claims, the Koch Defendants argue, took place in Mississippi, and Mississippi is the situs of relevant witnesses and relevant payroll and employment records. (*Id.*).

Venue may be proper in more than one court. *See Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Thus, while the Rule 12(b)(3) record reflects that the Southern District of Mississippi may be a proper venue under 28 U.S.C. § 1391(b)(2), the Court cannot say—in light of Plaintiffs' position, and without the benefit of venue discovery—that Illinois was not *also* a situs of a "substantial portion of the activities giving rise" to their FLSA claim. In particular, Plaintiffs argue that the "primary defendant" in this case, Koch Meat, has a "corporate policy and practice of failing to give overtime pay to chicken catchers in violation of the FLSA." (R.56, Response Br. at 1). The Complaint, meanwhile, alleges that Defendants "determined and recorded the piece rate and number of loads captured in order to compensate the live-haul crews" and "failed to pay overtime as required by federal law" pursuant to "common pay practices." (R.1, Compl. ¶¶ 32, 44-46, 58-59). Viewing the Complaint "liberally, in its entirety, and with every inference drawn in favor" of Plaintiffs, *see Phencorp*, 440 F.3d at 877-

13

78, these allegations—combined with the "control" allegations discussed above—raise the inference that "Koch Meat, d/b/a Koch Foods," does set the relevant wage and employment policies.

Defendants' evidentiary submissions, moreover, do not conclusively refute this inference. While the Supplemental Buckert Declaration, for example, states that Koch Meat does not "control the pay policies" of Koch Foods of Mississippi, it does not speak to (i) whether Koch Foods, Incorporated plays any role in determining and/or controlling such pay policies; or (ii) whether Koch Meat has any role in determining and/or controlling the pay policies of Koch *Farms* of Mississippi. (R.62-4, Buckert Supplemental Decl. ¶ 4). JET's affidavits are likewise devoid of any indication that it—as opposed to any Koch entity—determined the relevant pay practices. (R.38-1; R.63-1). While the Poultry Catcher Agreement discusses compensation in consideration for JET's services, it does not discuss compensation between JET—or any Koch entity—and the individual chicken catchers. (R.63-1, Ex. A). Based on counsels' representations during a recent hearing, moreover, the record also reflects ambiguity concerning who pays, through JET, the individual chicken catchers in Mississippi – Koch *Foods* of Mississippi, or Koch *Farms* of Mississippi.

Given these ambiguities, the Court permits limited venue discovery concerning *who* sets and/or controls the relevant wage and employment policies for individual chicken catchers in Mississippi. *See Sanderson v. Spectrum Labs, Inc*., 248 F.3d 1159 (7th Cir. 2000) (recognizing district court discretion to permit limited venue discovery); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"). Plaintiffs may issue three targeted interrogatories on this topic to each of the Koch Defendants, in addition to examining

14

Lance Buckert concerning paragraph 4 of his supplemental declaration. Plaintiffs must issue these written interrogatories by November 1, 2016, and the Koch Defendants must provide written responses by November 11, 2016. The parties must complete the Buckert oral examination by November 18, 2016.

For the stated reasons, the Court denies the Koch Defendants' Rule 12(b)(3) motion, without prejudice to refile following the limited venue discovery described herein.[3]

**CONCLUSION**

For the foregoing reasons, the Court denies the Koch Defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), without prejudice to refile after conducting the limited jurisdictional and venue discovery described herein. (R.40).

**Dated:** October 27, 2016

_____
AMY J. ST. EVE
United States District Court Judge

---

[3] The Court reserves opinion on (i) JET's motion to dismiss and/or transfer (R.37) and (ii) the Koch Defendants' request for transfer pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

15

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.5)**
**Eastern Division**

Elaine Kay Maier

|                                                                                      |                                        |
|--------------------------------------------------------------------------------------|----------------------------------------|
|                                                                                      | Plaintiff,                             |
| v.                                                                                   | Case No.: 1:25–cv–07534                |
|                                                                                      | Honorable Jorge L. Alonso              |
| The Partnerships and Unincorporated Associations Identified on Schedule A, et al.    |                                        |
|                                                                                      | Defendant.                             |

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, March 25, 2026:

      MINUTE entry before the Honorable Jorge L. Alonso: The Court denies without prejudice Defendant's motion to dismiss [40] on the basis of improper joinder. The Court agrees with the logic set out by Judge Durkin in a recent oral ruling concerning a similar motion. Hein v. Schedule A, 25–cv–12608, ECF No. 39. Specifically, at this early stage of the case, the Court is satisfied that the complaint adequately pleads sufficient facts supporting permissive joinder. To the extent Defendants can point to prejudice of joinder at a later time in either discovery or at trial, or the facts elicited through discovery confirm that joinder is inappropriate, the Court will revisit this decision. Defendants shall file their answer to the complaint within 28 days. By 4/17/26 the parties shall file a joint status report. A template for the Initial Status Report, setting forth the information required, may be found at http://www.ilnd.uscourts.gov/Judges.aspx by clicking on Judge Alonso's name and then again on the link entitled 'Initial Status Hearings. The Court sets an initial status hearing for 4/22/26 at 9:30 AM. Members of the public and media will be able to call in to listen to this hearing. The call–in number is 650–479–3207 and the access code is 1804010308. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.Notice mailed by Judge's staff (lf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.5)
### Eastern Division

Naomi Claire Judd Tavares

                                 Plaintiff,

v.                                         Case No.:
                                         1:26−cv−00484
                                         Honorable Jorge L.
                                         Alonso

The Partnerships and Unincorporated Associations
Identified on Schedule A, et al.

                                 Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, March 27, 2026:

      MINUTE entry before the Honorable Jorge L. Alonso: The Court denies without prejudice Defendant's motion to dismiss [33] on the basis of improper joinder. The Court agrees with the logic set out by Judge Durkin in a recent oral ruling concerning a similar motion. Hein v. Schedule A, 25−cv−12608, ECF No. 39. Specifically, at this early stage of the case, the Court is satisfied that the complaint adequately pleads sufficient facts supporting permissive joinder. To the extent Defendants can point to prejudice of joinder at a later time in either discovery or at trial, or the facts elicited through discovery confirm that joinder is inappropriate, the Court will revisit this decision. Defendants shall file their answer to the complaint within 28 days. Notice mailed by Judge's staff (lf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.5)**
**Eastern Division**

Catherine Frances Rayner

        Plaintiff,

v.                            Case No.:
                                 1:25–cv–11809

                                 Honorable Robert W.
                                 Gettleman

The Partnerships And Unincorporated Associations
Identified On Schedule A,, et al.

        Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, April 9, 2026:

      MINUTE entry before the Honorable Robert W. Gettleman: The motion to dismiss for misjoinder [35] is denied without prejudice. Defendants 4, 7, 20, 22, 60, 67, 68 are to file their answer by 4/28/2026. By 5/5/2026 the parties are to submit a joint status report with a proposed discovery schedule. A telephone status hearing is set for 5/28/2026 at 9:15 a.m. To join the telephone conference, dial (650) 479–3207, Access Code 1809 88 3385. Throughout the hearing, each speaker will be expected to identify themselves for the record before speaking. Counsel must be in a quiet area while on the line. Please be sure to keep your phone on mute when you are not speaking. Counsel of record and other essential case participants will receive an email prior to the start of the hearing with instructions to join the hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (cn).

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Rachel Neville                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   No. 25-cv-14338
                                  )
                                  )
The Partnerships and              )
Unincorporated Associations       )
Identified on Schedule "A"        )
                                  )
          Defendants.             )

Order

Defendants posters ONE, Lucy poster design, and ArtNest Studio (collectively, "moving defendants") are the only defendants remaining in this action, which plaintiff asserted against sixty-eight entities she claims have infringed her copyrighted photographs. Moving defendants move to dismiss the complaint against them on the ground of improper joinder, or alternatively to sever them from the action. The motion is denied.

Moving defendants argue correctly that plaintiff bears the burden of showing that joinder is proper under Rule 20. *Fendi S.R.L. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 25-CV-14553, 2025 WL 3514467, at *2 (N.D. Ill. Dec. 8, 2025) (citing *In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018)). In response, plaintiff points to evidence that moving defendants are under common corporate ownership and that they engaged in similar infringing

1

conduct, using substantially the same product images on the same sales platform at around the same time. These similarities, plaintiff argues, raise an inference that moving defendants sourced the infringing products from the same supplier. Additionally, plaintiff notes that moving defendants have been named in multiple other lawsuits, in which they have pursued similar motions to dismiss or sever.

Moving defendants offer no countervailing evidence but merely argue that none of plaintiff's evidence or observations individually establishes a basis for joinder. Taken together, however, and in the absence of contrary evidence, I conclude that the record is sufficient to suggest that moving defendants are "tak[ing] advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [plaintiff's copyrights] with impunity." *Bose Corp. v. Schedule A*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Accordingly, their joinder in this action is not improper.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: April 17, 2026

2